UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

In re Application of Daniel Snyder
for an Order Directing Discovery from
Moag & Co., LLC Pursuant to
28 U.S.C. § 1782

Civil Action No. 1:20-cv-02705-ELH

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL RESPONDENT
MOAG & CO., LLC TO PRODUCE DOCUMENTS**

**INTRODUCTION**

Petitioner Daniel Snyder ("Mr. Snyder" or "Petitioner") commenced this action seeking Assistance in Aid of a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 on September 18, 2020, in order to request discovery from Respondent Moag & Co., LLC ("Moag" or "Respondent"). The discovery sought is intended to aid Petitioner in his litigation currently pending in The High Court of Delhi at New Delhi (the "Indian Court"), bearing the caption *Daniel Snyder Through His SPA Holder vs. Eleven Internet Services LLP & Ors.*, filed on August 7, 2020 (the "Indian Action"). *See* Dkt. No. 1.

Despite the Court's clear Order, dated September 29, 2020, granting Petitioner's request to issue subpoenas on Respondent and permitting Moag a procedural mechanism to challenge the requested discovery, Respondent has continually obstructed Petitioner's attempts to obtain the requested discovery and flouted its obligations to make a full and complete production of documents. Following a series of expletive-laden phone calls from Moag's counsel, Respondent has made no genuine or good faith effort to comply with the subpoenas duly served on it. In particular, Respondent has stonewalled Petitioner's requests for documents, including phone bills, text messages and other such documents, reflecting communications between Respondent and

third-parties Ms. Mary Ellen Blair ("Blair") and Mr. Bobby Potter ("Potter") in the time period leading up to and immediately following the publication of the Defamatory Articles that form the basis of the Indian Action. Petitioner has confirmed by documentary evidence obtained from third-party sources that these phone calls between Moag, Blair and Potter indisputably occurred – meaning that Moag either failed to properly search its records or is intentionally withholding these clearly responsive documents. And while Petitioner already has a set of such documents from third party sources, Petitioner is indisputably entitled, by Order of this Court, to receive them, as well as all other documents that Respondent is unlawfully, dishonestly and with profanity laden bravado withholding from Petitioner.

As set forth in detail in the underlying Petition, the discovery sought herein is critical to Petitioner's ability to litigate his defamation claims against MEA WorldWide and its related entities and employees in the Indian Action. The Defamatory Articles – which falsely accuse Petitioner of a broad array of acts of criminal sexual misconduct including, among other things, involvement in sex trafficking, and affiliating with sexual predator Jeffrey Epstein – formed part of a corrupt disinformation campaign being waged against Petitioner by certain minority owners of the Washington Football Team (the "Team") – of which Petitioner is the majority owner. Moag was hired directly by the minority owners of the Team to facilitate a sale of their shares, and – as detailed in the Petition – Mr. John Moag made numerous representations to third parties prior to the publication of the Defamatory Articles that Petitioner would soon be forced to sell his shares of the Team – demonstrating his advance knowledge of the publication and his participation in the broader scheme to discredit and defame Petitioner. Mr. John Moag also texted directly with Mr. Snyder on several occasions. Declaration of Rizwan Qureshi ("Qureshi Decl.") ¶ 9.

Petitioner has learned that Blair – a former employee of the Team and admitted agent of one of the parties engaging Moag – participated in the corrupt disinformation campaign by, among other things, spreading malicious lies about Petitioner to various third parties and media sources at the direct request of an instrumentally involved party. Qureshi Decl. ¶ 8. Petitioner has confirmed that Blair was in communication with Moag as of at least July 7, 2020 – nine (9) days prior to the publication of the Defamatory Articles – and that Blair also connected Potter, a media consultant also working on behalf of one of the same parties by whom Moag was engaged as part of the corrupt disinformation campaign, with Moag by providing Potter with Mr. John Moag's direct work and personal phone numbers on July 7. *Id*. Indeed, Moag's limited, bad faith production – consisting of all of 14 pages – contains at least one email communication with Potter, confirming that he was, indeed, in contact with Respondent – but that is just one of several that Petitioner already has from another source. Petitioner is entitled not only to all of the communications already received by Petitioner from others, but also to all additional communications that may exist, and are known only to Respondent.

In the days surrounding these calls, Blair was in near constant contact with one of the parties that engaged Moag, as well as with reporters at the Washington Post, and other third parties, including Moag, to expand on the scheme to force Petitioner to sell the Team. *Id*. Blair even admitted in communications to Potter that one of the parties that engaged Moag intended to "take on" Petitioner and wage war against Petitioner in order to achieve his goals at any cost. *Id*.

The importance and role of Moag in this scheme cannot be overstated. Moag was hired to sell the minority owners' interests in the Team, which would earn it a hefty commission. That sale would be at a substantial premium if the entire Team was sold – as opposed to selling a non-controlling, minority stake at a substantial discount – thus further enriching Moag. Furthermore,

there would be absolutely no reason for Mr. John Moag to be in touch with Blair – a 3 years-departed former Team employee – other than to perpetuate the corrupt disinformation scheme against Petitioner.

With the above context in mind, Moag's flat out refusal to produce its responsive phone records and withholding of additional responsive text messages and email communications with at least Blair and Potter is palpably improper and a clear red flag of bad faith misconduct. Moag's participation in the corrupt disinformation campaign against Petitioner is indisputable, and Petitioner is entitled to all such responsive documents.

Accordingly, for the reasons set forth herein, Petitioner respectfully requests that the Court issue an order compelling Moag to produce (1) any and all phone records, text messages, and/or emails reflecting communications with Blair, Potter and/or any other third party concerning Petitioner and/or the Defamatory Articles; and (2) granting an award of reasonable attorney's fees and such other and further relief as the Court deems appropriate.

## **RELEVANT PROCEDURAL HISTORY**

On September 29, 2020, the Court issued an order granting the petition and authorizing Petitioner to serve the subpoena for documents and the deposition subpoena attached thereto as Exhibits A (ECF 1-4) and B (ECF 1-5) (the "Order"). *See* Dkt. No. 3. On October 19, 2020, Petitioner caused copies of the subpoenas to be personally served on Mr. John Moag, a duly authorized representative of Moag and valid agent for service of process, whose business address is 3301 Boston Street, Suite 200, Baltimore, MD 21224. The subpoena for documents specified a document production date of November 6, 2020 at 10:00 AM at the office of Reed Smith LLP in Washington, DC. *See* Exh. 1. Furthermore, pursuant to the Order, Moag was permitted 21 days

from service of the subpoenas – until November 9, 2020 – to "move to quash or for a protective order." Dkt. No. 3.

On November 4, 2020, Petitioner's counsel contacted Moag's counsel to discuss Moag's upcoming return date of November 6, 2020 for the subject subpoena. On the November 4th call, Petitioner's counsel inquired of Moag's counsel as to whether Respondent anticipates producing documents in response to the subpoena and whether a discussion on scope was necessary. Moag's counsel was non-committal and stated on the call and in a subsequent email, dated November 5, 2020, that his client "has no records responsive to your subpoena . . . ."

On November 9, 2020, on the date of Respondent's deadline, Moag's counsel contacted Petitioner's counsel to discuss, among other things, proposed search terms for Moag to run on its files in connection with producing documents responsive to the subpoena for documents. *See* Qureshi Decl. at ¶ 7. Included in those proposed search terms was "Mary Ellen Blair OR Mary Ellen OR Blair," and "Bobby Potter OR Bobby OR Potter," of which Moag's counsel preliminarily agreed to run and produce any documents related to "Blair" by November 10, 2020. *Id.*; *see also* Exh. 5.

Later that same day, on November 9, 2020, Moag's counsel provided responses and objections to the subpoena for documents, as well as a paltry, bad faith production of documents of only 13 pages of documents (the "Objections and Production"). *See id.*; *see also* Exh. 6. Notably, Moag's counsel did not otherwise file a motion to quash or for protective order, the deadline for which expired on November 9, 2020. *See* Qureshi Decl. at ¶ 7; Exh. 5. As a part of the Objections and Production, Moag failed to produce any phone records, text messages, or email communications with third parties, including Blair, or any phone records or text messages with

Potter. Accordingly, on November 10, 2020, Petitioner's counsel sent an email to Moag's counsel setting forth the basis for Petitioner's knowledge that such documents exist and must be produced:

> We are aware that your client did communicate with Ms. [Mary Ellen] Blair both before and after publication of the defamatory articles from the following phone numbers: (1) 410-XXX-XXXX; and (2) 443-XXX-XXXX[1]. As such and discussed, we would also request any phone records, text or email communications, and other documents that reflect these communications with Ms. Blair.

*See id.*

That same day, Moag's counsel contacted Petitioner's counsel to convey that he perceived Petitioner's counsel's above-referenced email to be "bullshit" and to discuss the production of documents related to Ms. Blair. However, despite Petitioner's counsel's efforts to discuss Petitioner's request for phone records, Moag's counsel refused to engage in good faith discussions regarding such documents and instead belligerently told Petitioner's counsel to "file your fucking motion," falsely claiming that his client and Ms. Blair never spoke prior to the publication of the Defamatory Articles and that he did not believe the subpoena for documents was broad enough to request for phone records (another falsehood), and abruptly hung up on Petitioner's counsel because he and his wife were "hosting H.R. McMaster." *Id.*

Subsequently, Moag's counsel sent a follow-up email attaching a further production of a single email between Mr. Moag and NFL General Counsel Jeff Pash discussing Ms. Blair (the "Second Production"). *Id.*; *see also* Exh. 7. Moag's counsel otherwise stated that "there is no text, phone, email or otherwise referring to 'Blair,'" which is false, as demonstrated herein. *See* Qureshi Decl. at ¶ 7; Exh. 5. Petitioner's counsel sent a follow-up email asking whether Moag's counsel

---

[1] The foregoing cell phone numbers are redacted for privacy but were provided in full to Moag's counsel.

would produce "all phone records during the relevant period showing communications between your client and Ms. Blair," however, to date, he has failed to respond. *Id.*

## ARGUMENT

### I. LEGAL STANDARD FOR MOTION TO COMPEL

Federal Rule of Civil Procedure 37 provides that, where notice has been given, "a party may move for an order compelling disclosure or discovery." *See* Fed. R. Civ. P. 37(a). The motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court actions." *See* Fed. R. Civ. P. 37(a)(1); *see also* D. Md. Loc. R. 104.7. The motion must also be made "in the court where the action is pending." Fed. R. Civ. P. 37(a)(2). Document production requests are properly the subject of a motion to compel discovery under Federal Rule 37. *See* Fed. R. Civ. P. 37(a)(3)(B).

"Central to resolving any discovery dispute is determining whether the information sought is within the permissible scope of discovery, as stated in Fed. R. Civ. P. 26(b)(1)." *Lynn v. Monarch Recovery Mgmt.*, 285 F.R.D. 350, 355 (D. Md. 2012) (internal citations omitted); *see also EEOC v. Performance Food Grp., Inc.*, 2017 U.S. Dist. LEXIS 87131, at *8 (D. Md. June 6, 2017) ("[T]he scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26.") (internal citation omitted). Rule 26 allows a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See* Fed. R. Civ. P. 26(b)(1). If good cause is

shown, the court "may order discovery of any matter relevant to the subject matter involved in the action." *Lynn*, 285 F.R.D. at 355 (internal citation omitted).

That said, the federal rules caution "that all permissible discovery must be measured against the yardstick of proportionality." *Id.* (internal citation omitted); *see also* Fed. R. Civ. P. 26(b)(2)(C). "Under that rule, the court, acting *sua sponte* or at a party's request, 'must limit the frequency or extent of discovery' if: (i) 'the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive'; (ii) 'the party seeking discovery has had ample opportunity to obtain the information by discovery in the action'; or (iii) 'the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.'" *Lynn*, 285 F.R.D. at 355 (*citing* Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii)).

## II. MOAG FAILED TO COMPLY WITH ITS DISCOVERY OBLIGATIONS BY FAILING TO PRODUCE RESPONSIVE DOCUMENTS RELATING TO BLAIR AND POTTER

Document Request No. 4 in the subpoena specifically requests: "All Documents and Communications between You and any third party concerning Mr. Snyder, the Defamatory Articles and/or any actual or anticipated negative publicity concerning Mr. Snyder." *See* **Exhibit 1**. The instructions in the subpoena for documents broadly define "Documents" as "the broadest sense permissible under Rule 34 of the Federal Rules of Civil Procedure," and expressly includes "invoices" – which encompasses phone bills and records – in its scope. *Id.* Based on the plain language of this document request, any phone records evidencing or demonstrating calls or texts between Moag, on the one hand, and Blair and/or Potter, on the other hand, regarding Mr. Snyder, the Defamatory Articles, and/or any actual or anticipated negative publicity are directly responsive

to the subpoena. Critically, Petitioner is aware that Ms. Blair placed or received calls from the following two numbers associated with Moag: (1) 410-XXX-XXXX on July 7, 2020 – nine (9) days *before* the Defamatory Articles were published; and (2) 443-XXX-XXXX on August 4 and August 10, 2020. *See* Qureshi Decl. at ¶ 8. As noted above, Petitioner has confirmed Blair's and Potter's roles in the corrupt disinformation campaign being waged against him by one of the parties engaging Moag, through Respondent, Blair and Potter. Accordingly, Moag's records concerning these communications with other participants in the scheme are critical to Petitioner's ability to litigate his claims in the Indian Action concerning the Defamatory Articles. Absent intentional misconduct by Moag, such records must exist in Moag's files and must be produced immediately, along with any and all other documents and communications with Blair and/or Potter.

Finally, Petitioner's *narrow* requests for phone records, text messages, and other communications with all third parties, including but not limited to Blair and Potter, prior to and after the Defamatory Articles, concerning Snyder, the Defamatory Articles, and any other anticipated or actual negative publicity concerning Petitioner, are proportional to the needs of this case given the crucial importance of this discovery as compared to the very little burden on Moag to produce such easily obtained documents and information which should be maintained in the ordinary course of their business.

### III. CONCLUSION

For the reasons set forth herein, Petitioner respectfully requests that the Court grant Petitioner Daniel Snyder's Motion to Compel Respondent Moag & Co., LLC to Produce Documents in response to the duly served subpoena for documents within 7 days of the Court's Order, and to pay Petitioner's reasonable attorney's fees in the amount to be determined.

Dated: November 11, 2020

Respectfully Submitted,

REED SMITH LLP

By: /s/Andrew C. Bernasconi
    Andrew C. Bernasconi (MD Bar No. 15780)
    1301 K Street NW
    Suite 1000, East Tower
    Washington, DC 20005
    Tel: (202) 414-9200
    abernasconi@reedsmith.com

Rizwan A. Qureshi
*(Pro Hac Vice Motion Forthcoming)*
1301 K Street NW
Suite 1000, East Tower
Washington, DC 20005
Tel: (202) 414-9200
rqureshi@reedsmith.com

Jordan W. Siev
*(Pro Hac Vice Motion Forthcoming)*
599 Lexington Avenue, 22nd Floor
New York, NY 10022
Tel: (212) 521-5400
jsiev@reedsmith.com

TACOPINA, SEIGEL & DEOREO, P.C.
Joseph Tacopina
Chad D. Seigel
275 Madison Avenue, 35th Floor
New York, NY 10016
jtacopina@tacopinalaw.com
cseigel@tacopinalaw.com
*(Pro Hac Vice Motion Forthcoming)*

*Attorneys for Petitioner*
  *Daniel Snyder*