| | |
|---|---|
| In re Application of Daniel Snyder for an Order Directing Discovery from Moag & Co., LLC Pursuant to 28 U.S.C. § 1782 | Civil Action No. 1:20-cv-02705-ELH<br><br>**REDACTED VERSION** |

## PETITIONER DANIEL SNYDER'S OPPOSITION TO RESPONDENT'S MOTION FOR LEAVE TO FILE SURREPLY

Petitioner Daniel Snyder ("Petitioner" or "Mr. Snyder"), through undersigned counsel, hereby files this Opposition to Respondent's Motion for Leave to File Surreply, which was attached as Exhibit A to Respondent's Supplemental Rule 104.7 Certificate (Dkt. Nos. 15 & 16). As a threshold matter, Respondent Moag & Co., LLC's ("Respondent" or "Moag") motion to file a meritless surreply should be denied as procedurally and substantively deficient. Moag's Supplemental Rule 104.7 Certificate and its Motion for Leave to File Surreply pleadings – which improperly annexes the proposed surreply as an exhibit without being granted leave by the Court — consists of nothing more than blatant misrepresentations regarding Petitioner and his counsel, and is a transparent attempt by Moag to generate additional negative publicity about Petitioner, all the while purporting to deny any role in the underlying corrupt disinformation campaign for which Petitioner sought information and documents from Respondent. Moag's attempt to have a "second bite at the apple" by rehashing arguments and advancing equally flawed new arguments falls short, as Moag has failed to satisfy the standard set forth in the Federal and Local Rules to permit a party to file a surreply.

With respect to Moag's Supplemental Rule 104.7 Certificate, Moag grossly misstates the facts and the law to skew both in its favor. On the date of the parties' meet and confer on

December 11 2020, counsel for Moag provided counsel for Petitioner its 127 page Motion for Leave to File Surreply pleadings merely 30 minutes prior to the parties' conference. Doing so simply did not provide counsel for Petitioner with sufficient time to review the proposed pleadings to be in a position to even engage "in substantive discussion on the arguments Moag had raised," as Moag argues in its certificate. *See* Cert. (Dkt. Nos. 15 & 16) 1. In fact, the timing of counsel for Moag's disclosure suggests that Moag provided Petitioner its Motion for Leave to File Surreply pleadings in an effort to have them improperly included in Petitioner's renewed Motion to Compel — not for meet and confer purposes. Despite this, and as expressly stated in Petitioner's Certificate Required by D. Md. Local Civil Rule 104.7, Petitioner did not include Moag's Surreply as a part of its submission to the Court because the local rules explicitly state that "[u]nless otherwise ordered by the Court, **surreply memoranda are not permitted to be filed** . . . ." *See* D. Md. Local Civil Rule 105.2(a) (emphasis added). Because Moag neither sought nor obtained such relief, Petitioner was not permitted by the Court's local rules to include such pleading as a part of its filing.

Even if the Court were to look beyond Moag's egregious breach of this Court's rules, Moag's motion for leave still must be denied because it is improper on two dispositive bases. ***First***, Moag incorrectly accuses Petitioner of raising "new" allegations, arguments, and/or authorities in his Reply; however, all arguments addressed in Petitioner's Reply were properly raised in his initial motion and/or in direct response to Moag's Opposition. ***Second***, Moag uses its Surreply as another opportunity to generate negative publicity regarding Petitioner — which has been Moag's underlying motive since the beginning of this process and further reinforces the sheer lack of credibility to Moag's denials that it is in possession of further responsive information and/or phone records confirming the calls that Petitioner independently is aware

took place during the operative time period with key players in the underlying corrupt disinformation campaign. Accordingly, and as more fully described below, the Court should deny Moag's requested relief or, alternatively, permit Petitioner to file a "sur-surreply" under D. Md. Local Civil Rule 105.2(a) so that Petitioner has an opportunity to respond to Moag's false statements.[1]

## I. THE STANDARD SET FORTH IN THE FEDERAL AND LOCAL RULES FOR REQUESTING LEAVE TO FILE A SURREPLY

The Federal Rules of Civil Procedure do not contemplate surreplies or other responses to reply briefs, however styled. *See Maccaferri Gabions, Inc. v. U.S. Dep't of Justice*, 1996 U.S. Dist. LEXIS 22969, at *22 (D. Md. Mar. 26, 1996) ("The Federal Rules of Civil Procedure do not contemplate responses to reply memoranda. Counsel should brief their cases fully in the pleadings permitted as of right.") (*citing Hurt v. U.S.*, 889 F. Supp. 248, 249 n. 1 (S.D. W. Va. 1995)); *see also Franklin v. BWW Law Grp.*, 2016 U.S. Dist. LEXIS 63265, at *6 n. 3 (D. Md. May 12, 2016) (denying plaintiff's motion for a surreply, though "styled as a motion to dismiss the reply[,]" and noting that "the Federal Rules of Civil Procedure do not contain a mechanism permitting parties to dismiss reply memoranda"). Moreover, the Local Rules make clear that surreplies are strongly disfavored. *See* D. Md. Local Civil Rule 105.2(a); *see also Roach v. Navient Solutions, Inc.*, 165 F. Supp. 3d 343, 351 (D. Md. 2015) ("Surreplies are highly disfavored in this District."). As a result, a party must obtain a Court order before being permitted to file a surreply. *See* D. Md. Local Civil Rule 105.2(a) ("Unless otherwise ordered by the Court, surreply memoranda ***are not permitted to be filed***.") (emphasis added).

---

[1] Should the Court grant Respondent leave to file its surreply, Petitioner does not waive and hereby expressly reserves the right to move this Court to seal portions of Respondent's highly inflammatory surreply. For these reasons, should the Court grant Respondent leave to file its surreply, Petitioner respectfully requests that the Court's order prohibit the actual filing of the surreply until such times as the Court rules on Petitioner's motion to seek to have the surreply redacted or sealed.

Whether to grant a surreply is a decision that rests within the discretion of the trial court. *See*, *e.g.*, *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013) (citing *Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 679 (D. Md. 2013)). Indeed, the only time when surreplies may be considered is "when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply" — which did not occur here. *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004) (per curiam) (citing *Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D.D.C. 2001)). Thus if the party seeking to file a surreply could have raised in its opposition the same arguments that it intends to present in the surreply, leave should be denied. *See Myles v. Rent-A-Ctr., Inc.*, 2016 U.S. Dist. LEXIS 71028, at *16 n. 5 (D. Md. May 31, 2016) ("Defendants' proposed surreply is not directed to any contentions appearing for the first time in Plaintiffs' reply brief . . . . Defendants could have raised [their desired argument] in their opposition brief, and the Court declines to consider it now."). Accordingly, the party who seeks to file a surreply must show that some part of the reply brief raises a new matter, outside the scope of the previous briefs. *See Pedersen v. Geschwind*, 141 F. Supp. 3d 405, 410 (D. Md. 2015) ("Plaintiff has not demonstrated that any aspect of Defendants' reply memorandum falls outside the scope of argument framed by the earlier papers. Consequently, Plaintiff's Request for Leave to File a Surreply will be denied.").

Merely asserting that a reply brief is wrong and should be corrected is not, by itself, reason to justify a surreply. *See Khoury*, 268 F. Supp. 2d at 605-06. Precedent also dictates that surreplies should not be permitted where they would not affect the outcome of the motion if considered. *See, e.g., Chubb & Son*, 919 F. Supp. 2d at 679 (granting motion to strike surreply in part because "the surreply would not alter the Court's analysis."); *see also Roach*, 165 F. Supp.

3d at 351 (noting that even if a surreply were permitted, the "proposed surreply would be of little use to [the Court]").

## II. MOAG IMPROPERLY USES THE SURREPLY TO REARGUE ITS PREVIOUSLY STATED POSITIONS, NOT TO ADDRESS ANY "NEW" ARGUMENTS

Moag falsely asserts that Petitioner raised a laundry list of entirely "new" issues in its Reply, thus justifying a surreply because these matters have not previously been raised and Moag has had no opportunity to state its position. This claim is entirely false and blatantly misstates the record.

As set forth in Petitioner's Motion to Compel, Petitioner demanded that Moag produce "phone records, text messages, and other communications with all third parties, including but not limited to ▮▮▮▮▮ and ▮▮▮▮▮, prior to and after the Defamatory Articles, concerning Snyder, the Defamatory Articles, and any other anticipated or actual negative publicity concerning Petitioner." *See* Exh. A (Dkt. No. 12-1) 2. This request was plainly within the scope of the subpoena that was issued to Moag, and was a proper area of inquiry related to the Indian Proceeding.

In response to Petitioner's arguments in its moving papers, Moag conceded in its Opposition and supporting documents that its principal, Mr. John Moag, communicated with ▮▮▮▮▮ by text message: *See* Exhibit B (Dkt. No. 12-2) 13, 11-141 (stating that its principal, John Moag, "knows he and ▮▮▮▮▮ exchanged a few texts, including ▮ family pictures."). Moag also conceded that relevant phone records reflecting the time period requested by Petitioner could in fact be obtained through Moag's phone carrier, Comcast. *Id.* at 12. Notwithstanding these admissions that responsive documents exist and are within Moag's exclusive control to access and obtain, Moag conditioned further attempts to actually obtain such

records on Petitioner's production of "purported proof" — which would require Petitioner to disclose his own confidential investigative material and evidence — to either Moag or the Court. *Id.* Moag's absurd attempt to shift the burden onto Petitioner to "prove" that Moag had such admitted communications lacks any logical sense. Furthermore, as noted in Petitioner's Reply, Moag's "supplemental production" contained heavily redacted phone records that rendered them largely useless to Petitioner. *See id.* at 37-141.

Petitioner's Reply responded directly to Moag's Opposition by requesting (a) unredacted phone records (which have been requested since his initial motion) and (b) documents Moag addressed in its own discovery letter. *See* Exh. C (Dkt. No. 12-3) 9-10. First, Petitioner requested Moag to produce its previously redacted phone records without any redactions and without a protective order. *Id.* at 9. Petitioner has repeatedly made this request since his initial motion to compel and when Moag did produce such documents along with its Opposition, they contained numerous redactions which prompted Petitioner's request in his Reply.

The remaining two requests in Petitioner's Reply are based on statements made in Moag's own discovery letter: (1) the text messages Moag explicitly referenced between its principal, John Moag, and ███████; and (2) additional phone records from Moag's carrier for the requested time period given that it clearly has the capability to do so. *Id.* a 10. In direct contrast to Moag's representations in its pleadings, Moag raised the topics of text messages and phone records, which Petitioner responded to — and requested — in his Reply.

In fact, in Moag's Surreply, it incorrectly asserts that Petitioner raised a laundry list of entirely new issues in its Reply, thus justifying a surreply because these matters have not previously been raised and Moag has had no opportunity to state its position. Cert. (Dkt. No 16)

10. However, of the nine (9) points delineated in Moag's Surreply, only three (3) involve even potentially "new" requests (with Petitioner's response in bold):

- **1. Complete Production.** Moag argues that Petitioner has "never mentioned" his request for "full and complete production of phone records, text messages and emails." **This is false given Petitioner's initial request in his Motion to Compel for "phone records, text messages, and other communications with all third parties . . . ." *See* Exh. A (Dkt. No. 12-1) 2.**

- **2. Unredacted Phone Records.** Moag argues that Petitioner seeks, for the first time in its reply, Moag's "<u>entire</u>, unredacted phone bills . . . ." **Petitioner has repeatedly requested Moag to produce phone records since his Motion to Compel. *See id.* Petitioner could not have previously raised the issue of the phone records being unredacted given that Moag produced such records for the first time concurrent with filing his Opposition. Accordingly, Petitioner duly responded to the contents of Moag's Opposition in his Reply. *See Khoury*, 268 F. Supp. 2d at 605-06 (finding that a surreply is generally not permitted where the reply is merely responsive to an issue raised in the opposition).**

- **3. Other Phone Records.** Moag argues that Petitioner requests, for the first time in his reply, it to "retrieve and produce <u>all</u> of his phone records from the phone company from January 2020 to October 2020, even though Respondent has produced his copies of those records in that time frame." **This is incorrect: in Moag's discovery letter, it stated that "COMCAST has refused" to produce phone records dating back to July 7, 2020 but if Petitioner would produce "proof," then it would "revisit discussions with COMCAST as necessary." *See* Exh. B (Dkt. No. 12-2) 12. Given that Moag raised its ability to request those records from COMCAST for the first time in its Opposition, Petitioner had to request such documents in its Reply.**

The remaining allegations in Moag's list include baseless claims of "[u]nsupported assertions," "[t]wisting Respondent's request for evidence . . . into a demand," "[f]alsely contending that Respondent did not use the search terms provided," "[m]isrepresenting Respondent's conditional release of the unredacted phone records," and "[a]sserting that Respondent's document production is somehow incomplete[.]" These are garden-variety objections to the tone and substance of Petitioner's arguments: they are *not* a conclusive demonstration that Petitioner raised wholly new topics on reply, as would be required to justify a surreply.

Notwithstanding Moag's conclusory label that these are new items, it is clear that the thrust of Moag's position is that Petitioner's arguments purportedly are incorrect, not that they are new.[2]  *See Khoury*, 268 F. Supp. 2d at 606 (stating, where a party sought surreply partly on the basis that the other party misstated the law and the facts in its reply, that this was not "a new matter").  Thus, the bulk of Moag's argument is entirely unresponsive to the proper standard to justify a surreply, and Moag has not carried its burden as a result.  Further, Moag has had ample opportunity to defend the merits of its position on these matters in its Opposition.  The items Moag challenges simply do not amount to Petitioner veering into entirely new topics, as would be required to establish that a surreply is warranted.

*Khoury v. Meserve* is one of this Court's leading cases on the determination of whether a surreply is proper, and is highly instructive in this instance.  In *Khoury*, the plaintiff sought review of administrative decisions upholding the termination of her employment, and the defendant subsequently moved for summary judgment.  268 F. Supp. 2d at 605.  The plaintiff opposed the defendant's motion by arguing that further discovery was needed under Fed. R. Civ. P. 56(f); the defendant properly replied; and the plaintiff sought the Court's leave to file a surreply, arguing that the defendant had raised new arguments in its opposition.  *Id.*

The *Khoury* Court denied plaintiff's request, for several reasons.  First, the Court found that the plaintiff herself introduced the Rule 56(f) matter of additional discovery; thus, the defendant's reply was not raising a new subject, and since plaintiff already had the opportunity to support her 56(f) argument when she initially raised it, she would not be denied the chance to address the issue without a surreply.  *Id.* at 606.  Second, one of the intended topics of the plaintiff's surreply — exhaustion of administrative remedies — had already been raised in

---

[2] For the reasons already briefed by the parties, including in the Reply, Moag's objections to the merits of Petitioner's arguments are meritless; but in any event, the Court is amply equipped to weigh these disputes without need for a surreply.

defendant's moving papers, and thus plaintiff had had fair opportunity to challenge it in ordinary briefing. *Id.* Third, although the plaintiff contended that the defendant's reply mischaracterized the administrative record and the proper standard of review, which the Court found that such an argument that the reply got certain issues wrong is not an argument that the reply raises new matter and therefore does not justify a surreply. *Id.*

Moag's Motion for Leave to File Surreply suffers from similar flaws as that in *Khoury*. As a threshold matter, most if not all of the items that Moag finds fault with are simply elaborations on the arguments already raised in Petitioner's moving brief, which is entirely typical and proper for a reply. New phrasings of previously-made arguments are hardly "extraordinary" and by definition are not "matters presented to the court for the first time in . . . reply." *Maccaferri*, 1996 U.S. Dist. LEXIS 22969, at *22; *Khoury*, 268 F. Supp. 2d at 606. Because Petitioner's arguments were made on reply, they naturally reflect points raised in Moag's Opposition; as noted by the *Khoury* Court, this shows that a surreply is not warranted, because the party seeking the surreply itself introduced the "new" subject matter, and thus already had an opportunity to state its position. Simply put, the mere fact that Petitioner has further developed his original arguments, as replies exist to permit, does not justify a surreply.

Consistent with the demanding standard required for a surreply, this Court's precedents clearly and consistently hold that a respondent, such as Moag, does not get a second bite at the apple by way of a surreply merely because it disputes points in the moving party's reply. *See, e.g.*, *McClain v. Wells Fargo Bank*, 2018 U.S. Dist. LEXIS 39197, at *24 (D. Md. Mar. 8, 2018) ("In her Motion, McClain seeks leave to [file a surreply] because she disagrees with various arguments and terminology used in the reply brief. Having reviewed McClain's arguments for a sur-reply, the Court concludes that no exceptional circumstances exist necessitating the filing of

a sur-reply."); *Maccaferri*, 1996 U.S. Dist. LEXIS 22969, at *23 (denying surreply because plaintiff "seeks to reargue points that it had already addressed in previous briefs"). This is the central, fatal flaw in Moag's motion.

In sum, the Federal Rules and Local Rules contemplate one sequence for motion practice: a moving brief, an opposition, and a reply. *See* D. Md. Local Civil Rule 104.8(a) (setting forth briefing schedule for a motion, opposition, and reply). Indeed, numerous courts disfavor even the reply. *See*, *e.g.*, E.D.N.C. R. 7.1(g) (replies not permitted for discovery motions and discouraged as to non-discovery motions). This Court's Local Rules admit the rare possibility of a surreply, but the text itself and the Court's precedents are clear that it is "highly disfavored." *Roach*, 165 F. Supp. 3d at 351; *see also Chubb & Son*, 919 F. Supp. 2d at 679 ("surreplies are disfavored in this District"); *Maccaferri*, 1996 U.S. Dist. LEXIS 22969, at *22 ("in certain *extraordinary* cases rebuttal briefs may be appropriate but counsel must be able to explain why they were unable to brief the issues of the case fully in the briefs that were permitted.") (emphasis added) (internal citation omitted).[3] Here, Moag is not asking for a minor indulgence, but a rare and exceptional departure from ordinary practice. It bears a correspondingly heavy burden to show that a surreply is justified here, and it has not carried that burden.

---

[3] Moag incorrectly claims in its Motion for Leave to File Surreply that surreplies are "routinely permit[ted]." On the contrary, this Court "generally does not permit surreply memoranda to be filed," *Cullison v. Queen Anne's Cty.*, 2016 U.S. Dist. LEXIS 120383, at *11 (D. Md. Sept. 6, 2016), consistent with its repeated statements that surreplies are disfavored. Review of the Court's many precedents denying leave to file a surreply underscores that, while there are exceptional circumstances that justify granting leave, a surreply is never "routinely" granted. To wit, the very case Moag cites for its incorrect position said nothing about routine, made clear that surreplies are rarely granted, and denied the request for a surreply. *Marshall v. Capital View Mut. Homes*, 2013 U.S. Dist. LEXIS 92597, at *6-7 (D. Md. July 2, 2013).

### III. MOAG USES THE SURREPLY AS ANOTHER OPPORTUNITY TO GENERATE NEGATIVE PUBLICITY

Since the inception of this 1782 proceeding, Moag's principal, John Moag, has threatened to create a chaos for Petitioner unless he withdraws his legal action. In a text message sent from John Moag to Dan Snyder on September 17, 2020, Mr. Moag states the following:

> Hey Dan—My lawyers sent me your filing in which you are representing yourself Pro Se. I'd be glad to represent myself Pro Se but only private discussions with you as well. That requires a business deal, not a legal process. If you continue your game, you know what I know and what I have never spoken about. And you know it has nothing to do about the media shit . . . . . it's the more serious shit.
>
> If you want to get a clean conclusion, let me know. If you want a shit show, we are on for that too.
>
> John

*See* Exh. B (Dkt. No. 12-2) 31-32.

Moag's Surreply attempts to accomplish the very "shit show" Mr. Moag threatened from the outset: it is inundated with citations and references to both negative publicity and false allegations against Petitioner and his counsel. For instance, Moag claims in its Surreply: "the deluge of negative publicity Snyder generates daily . . . ."; that the proceeding "cannot be allowed to expand into a fishing witch hunt for Snyder to 'investigate' literally thousands of articles and pervasive adverse bad publicity that surround him daily, whether about Washington Football Team cheerleaders or abused employees, unhappy neighbors or business dealing"; that in "the last three months . . . [there has] been more negative press about Dan Snyder than perhaps any other public figure in Washington, D.C., negative press includes allegations of prior sexual misconduct; allegations of salacious behavior involving the Washington Cheerleaders, lurid misconduct during calendar shoots and offsite promotions"; and cites various articles that discuss negative publicity in footnotes. *See* Cert. (Dkt. No. 16) 9-18. **Critically, Moag attaches an**

**Appendix of 110 pages of "negative" publicity regarding Petitioner.** *Id.* at 22-132. There is no other reason to include such references or that appendix except to attempt to create such premeditated "chaos" for Petitioner and to further the corrupt disinformation campaign in which Moag disingenuously denies playing any part.

Moag further uses the Surreply as an opportunity to paint Petitioner in a dis-favorable light by going outside the bounds of this proceeding. For instance, Moag cites to Petitioner's other 1782 proceedings in support of its argument that Petitioner's requests are "fishing expeditions." However, Petitioner's separate proceedings have absolutely no bearing on the instant discovery dispute, in which ***Moag has admitted that it has additional responsive documents but refuses to produce them***.[4] Moag also falsely interjects Petitioner's purported "animosity" toward Moag's principal, John Moag, as the basis for the instant proceeding to find a way to "blame" Moag "for his own bad reputation." This is another unfounded statement that is not relevant to the Court's consideration of the discovery dispute but instead is strategically placed to cast Petitioner in a bad light.

Not only does Moag's Surreply not meet the procedural and meritorious standards set forth in the Federal and Local Rules, Moag uses this pleading as an opportunity to advance its own agenda of generating negative publicity about and otherwise casting Petitioner in a bad light. In fact, doing so only reinforces to Moag's efforts to further the corrupt disinformation

---

[4] It bears noting that four other District Courts have recently granted Petitioner's Section 1782 petitions seeking discovery in aid of the Indian Proceeding – and by doing so, confirmed that Petitioner's requests are meritorious and justified, not "fishing expeditions" as Moag claims. *See In re Application of Daniel Snyder for an Order Directing Discovery from New Content Media Inc. d/b/a MEA WorldWide Pursuant to 28 U.S.C. § 1782* (C.D. Cal., Misc. Action No. 2:20-mc-00076); *In re Application of Daniel Snyder for an Order Directing Discovery from Mary Ellen Blair and Comstock Holding Companies, Inc. Pursuant to 28 U.S.C. § 1782* (E.D. Va., Misc. Action No. 1:20-mc-00023-LO-TCB); *In re Application of Daniel Snyder for an Order Directing Discovery from Jessica McCloughan and Friday Night Lights LLC Pursuant to 28 U.S.C. § 1782* (D. Col., Misc. Action No. 20-mc-00199-NRN); *In re Application of Daniel Snyder for an Order Directing Discovery from Precision Creations LLC Pursuant to 28 U.S.C. § 1782* (S.D. Tex., Case No. 4:20-mc-02665); *In re Application of Daniel Snyder for an Order Directing Discovery from The Ardent Group LLC Pursuant to 28 U.S.C. § 1782* (S.D. Tex., Case No. 4:20-mc-02867).

campaign in which it disingenuously denies playing any part. On this basis alone, the Court should deny Moag's requested relief.

## IV. CONCLUSION

Accordingly, for the reasons fully set forth above, the Court should deny Moag's requested relief or, alternatively, permit Petitioner to file a "surreply" under D. Md. Local Civil Rule 105.2(a).

Dated: December 17, 2020

Respectfully Submitted,

REED SMITH LLP

By: /s/Andrew C. Bernasconi
    Andrew C. Bernasconi (MD Bar No. 15780)
    1301 K Street NW
    Suite 1000, East Tower
    Washington, DC 20005
    Tel: (202) 414-9200
    abernasconi@reedsmith.com

Rizwan A. Qureshi
*(Pro Hac Vice Motion Forthcoming)*
1301 K Street NW
Suite 1000, East Tower
Washington, DC 20005
Tel: (202) 414-9200
rqureshi@reedsmith.com

Jordan W. Siev
*(Pro Hac Vice Motion Forthcoming)*
599 Lexington Avenue, 22nd Floor
New York, NY 10022
Tel: (212) 521-5400
jsiev@reedsmith.com

TACOPINA, SEIGEL & DEOREO, P.C.
Joseph Tacopina
Chad D. Seigel
275 Madison Avenue, 35th Floor
New York, NY 10016

jtacopina@tacopinalaw.com
cseigel@tacopinalaw.com
*(Pro Hac Vice Motion Forthcoming)*

*Attorneys for Petitioner
  Daniel Snyder*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of December 2020, a copy of the foregoing *Opposition to Respondent's Motion for Leave* was electronically filed with the Court and served upon all counsel of record, and the unredacted versions of the documents filed under seal were sent via email to all counsel of record.

/s/Andrew C. Bernasconi
Andrew C. Bernasconi