IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| In Re Application of Daniel Snyder<br>For an Order Directing Discovery from<br>Moag & Co., LLC Pursuant to<br>28 U.S.C. § 1782 | Case No. 20-CV-02705-ELH |

**RESPONDENT'S RULE 72(a) OBJECTIONS**
**TO MAGISTRATE'S DECEMBER 17, 2020 DISCOVERY RULING**

Respondent Moag & Co. ("Respondent" or "Moag"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636, files these Objections to the Honorable Magistrate Judge Copperthite's December 17, 2020 Order granting Petitioner's Motion to Compel (ECF 23), and is submitting a Proposed Order for this Court's consideration. Despite Respondent's consistent and repeated assurances that it possesses no knowledge of or documents that relate to the allegations in litigation now pending in India, referred to as the "Indian Action," and without resolving Respondent's timely objections, the Order, in error as set forth below, compels document production that far exceeds the original petition granted by this Court under 28 U.S.C. §1782. The Order appears to be based on a one-sided and inaccurate presentation of the parties' dispute. It is said that no matter how thin the paper, there are always two sides. This filing presents the other side so the Court, armed with the context and history of Respondent's compliance efforts to date, can justly modify the Magistrate's Order to limit discovery to parameters that fully support, but do not extend beyond the issues in the India Litigation.

**SUMMARY OF OBJECTIONS**

Respondent for the following reasons objects to the December 17, 2020 Order: (1) The Order (*see* slip op. at 3) directing Respondent to respond to Petitioner's discovery requests as described in Petitioner's Proposed Order (ECF 13-8) requires production of documents beyond the

1

scope of the §1782 subpoena authorized by this Court, and would require production of non-responsive and confidential documents notwithstanding Respondent's timely served objections; (2) Contrary to the Order (at ¶ 8), the scope of discoverable information under the §1782 subpoena as ordered by the Court (ECF 3) is confined to those matters pertaining to the allegations in the Indian Action; (3) Respondent's timely objections served on November 9, 2020, articulated the proper scope of Petitioner's requests and sought to protect from production nonresponsive, privileged and/or proprietary documents. The Order, in error, concluded that Respondent's election not to file a motion to quash the subpoena or seek a protective order results in a waiver of Respondent's as yet unaddressed objections to the discovery requests, *see* slip op. at 2; (4) the Order also factually misstates several key points, including misstating the magnitude of Respondent's production of documents as only thirteen documents when, in fact, Respondent, had in three successive waves of production, produced 122 documents; (5) the Order relied on Petitioner's declaration, which seriously misstated Respondent's efforts to resolve this discovery dispute with Petitioner's counsel; and (6) upon receiving Petitioner's Reply brief which set forth numerous new claims and arguments not previously raised, Respondent submitted a sur-reply (with an accompanying Motion for Leave) responding to these new claims, yet the December 17 Order deemed the sur-reply moot (ECF 22), without any consideration. Respondent objects to this ruling as the sur-reply clarifies and corrects certain key findings in the Order.

As explained below, Respondent's attached Proposed Order seeks to capture accurately the scope of discovery ordered by this Court. Respondent asks that its objections be sustained and that it be accorded the protections of the Court and the Rules from improper discovery.

2

## LEGAL STANDARD

An Order compelling discovery is generally viewed as a non-dispositive matter, and thus reviewable under Rule 72(a). *See Alston v. Wells Fargo Home Mortg.*, No. CV TDC-13-3147, 2016 WL 816733, at *5 (D. Md. Feb. 26, 2016). Legal errors like those presented to this Court, are reviewed *de novo*. *See HSBC Bank v. Resh*, 2014 U.S. Dist. LEXIS 10176, at *19 (S.D. W. Va. Jan. 28, 2014) ("for questions of law, there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and a *de novo* standard.") (*quoting Powershare, Inc. v. Syntel, Inc.*, 593 F.3d 10, 15 (1st Cir. 2010). When reviewing an objection to a magistrate judge's order on a non-dispositive matter, the district court should set aside or modify any portion of that order which is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a).

## RELEVANT BACKGROUND OF PETITIONER'S MOTION TO COMPEL

### A. Respondent Moag and Company

Respondent Moag and Company, a Baltimore-based company of four employees, for two decades has represented sellers and buyers of professional sports teams. In 2019, the minority owners of the Washington Football Team ("WFT") engaged Moag to sell their 40% ownership stake in Washington Football Inc. ("WFI"). *See* Declaration of John Andrew Moag, Jr. ("Moag Decl.") Exh. 1 at ¶¶6-8[1]. To achieve this, Respondent has had countless confidential, business-

---

[1]This filing, and the Reeder and Moag sworn Declarations filed in support, include references to a small sample of press links that are provided to dispel the false narrative suggested in Petitioner's Section 1782 Petition that before July 16, 2020—or even after—anyone who anticipated negative publicity had to be thinking about what became the Indian publications. Even a cursory perusal of these links will confirm the near daily publication of other issues surrounding Petitioner and the Washington Football Team that has nothing to do with and makes no mention of the Indian Action allegations. Two recent Sunday December 27, 2020, Washington Post articles, including that paper's lead editorial, summarize a smattering of what has appeared in the press. *See* https://www.washingtonpost.com/opinions/dan-snyder-promised-transparency-about-his-teams-work-culture-why-are-there-still-so-many-secrets/2020/12/25/19d5f2aa-4564-11eb-a277-49a6d1f9dff1_story.html (print version, Dec. 28, 2020); https://www.washingtonpost.com/sports/2020/12/27/ron-rivera-dwayne-haskins-decision/ These links are provided, not as evidence that what's being reported is true, but rather, for the Court to know that simmering below the surface but increasingly becoming public are a myriad negative press stories.

3

related communications that mention WFI's majority owner, Petitioner Dan Snyder, none of which is related in any way to the allegations in the Indian Action or the source of those allegations.

### B. The Indian Action Regarding Defamatory Articles about Snyder

Petitioner Dan Snyder's ("Snyder") Indian Action, filed on August 7, 2020, alleges that two tabloids in India published "false, highly defamatory and malicious news against the Plaintiff" in two articles accusing Snyder of "sexual misconduct, such as involvement in sex trafficking, and a purported affiliation with sexual predator Jeffrey Epstein." The suit identified two entities involved in defaming Snyder—Eleven Internet Services, LLP and meaww.com—and four persons working for or otherwise associated with those entities—Nirnay Chowdhary, Anay Chowdhary, Prarthna Sarkar and Jyotsna Basotia. The Indian Action neither mentions Mary Ellen Blair nor Bobby Potter, let alone Moag, and their names were not mentioned in the initial discovery here.

### C. The Scope of the § 1782 Subpoena Seeking Discovery for the Indian Action

According to the docket sheet, Petitioner on September 18, 2020, opened this proceeding, filed *ex parte* and placed under seal, pursuant to 28 U.S.C. § 1782, seeking letters rogatory to aid in discovery relating to the Indian Action described above. The Court granted the motion and entered an order permitting the issuance of a subpoena on September 29, 2020. The petition sought four categories of discovery: (1) Moag's communications with third parties concerning the meaww.com articles; (2) Moag's communications with the Indian Defendants, or their representatives; (3) the identities of any other third parties involved in directing, coordinating with or supporting the negative information campaign about Petitioner; and (4) other documents and information that are relevant to the Indian Action and are available solely through Respondent. Petitioner first served Moag with a subpoena on October 19, 2020, and, despite repeated efforts,

4

neither Moag nor his counsel were provided a copy of the petition that provided the context for the subpoena until November 24, 2020, on the eve of Thanksgiving.[2]

### D. Respondent's Objections Properly Defined the Scope of Discovery

The discovery Petitioner initially sought came in four numbered requests. At this juncture, only the fourth request is at issue, which incorporates Respondent's objection to Request 1, and the stipulation of the Parties to the proper scope of the responses, emphasized below. These requests and Moag's November 9, 2020 Responses and Objections to it are recapped below:

**Request 1:**

All documents and communications concerning Mr. Snyder.

**ANSWER:**

> In response to Defendant's objection to this overbroad Request, and subject to the agreed time window, Parties have compromised, and Defendant will produce communications as described above. As is long known by Plaintiff and has been explained in some detail to the Snyder lawyers, the Company and Mr. Moag for years have represented minority owners of the Washington Football team, and therefore have had myriad occasions—for reasons wholly unrelated to the Indian litigation—to have exchanges that "concern" the majority owner. **Parties have further agreed to production that is limited to anticipated or actual negative publicity, and not communications unrelated to that, which is highly proprietary in nature.** (Emphasis added.)

**Request 4:**

> All documents and communications between you and any third party concerning Mr. Snyder, the Defamatory Articles and/or any actual or anticipated negative publicity concerning Mr. Snyder.

**ANSWER:**

> Defendant reads this Request as wholly duplicative of other Requests previously imposed upon Defendant and is thus unnecessarily cumulative, and thus requires the same observations and objections. To the extent it includes records relevant to the so-called Defamatory Articles, Defendant knows of no such records pre-July 16, 2020, but will produce a post-July 16, 2020 transmittal of the article

---

[2] Respondent's efforts to obtain the Petition, first from the Court, and then from Petitioner's counsel, are detailed in the Declaration of Joe R. Reeder ("Reeder Decl.") Exh. 2 at ¶ 4; and Moag Decl. at ¶ 3.

5

itself. As already explained, "concerning Mr. Snyder" is hopelessly broad, and seek records that have no conceivable relevance to Plaintiff's Indian Lawsuit.

Petitioner's reason – submitted under oath – for seeking discovery under 28 U.S.C. § 1782 was to let Petitioner determine the "source" of the two very specific allegations made in the Defamatory Articles on July 16, 2020, *i.e.*, "being an Epstein buddy" and "sex-trafficking." No more, no less. The request, however, for actual or anticipated negative publicity concerning Mr. Snyder goes far beyond the Indian Action. Moag's responsibilities to his clients—the minority owners of WFI–require that he and his staff be aware in real real-time of all reports that could have an impact on the value of their interest and be able, when needed, to parry inquiries that injure his clients. The many reports on Petitioner makes tracking and otherwise policing negative reports a full-time undertaking. *See* Moag Decl. Exh. 1 at ¶15.

E. **Respondent's Ongoing Efforts to Provide Responsive Discovery Were Cut Short**

Once served with the subpoena, Moag's counsel sought to determine what, if any, responsive documents Moag had, and informed Petitioner up front that Moag had nothing to do with the Indian Action or its sources, and, further, offered to provide a sworn Petitioner-drafted affidavit that would satisfy Petitioner of this. To this day there remains no response to this offer.

Ultimately, to satisfy Petitioner that there was nothing Moag could provide that was relevant to the Indian Action, Moag's counsel suggested that search terms might satisfy Petitioner of this fact. Late on November 9, Petitioner for the first time provided such search terms, including two names—Blair and Potter—names nowhere connected to the Indian Action or mentioned in the §1782 Petition. Respondent nevertheless agreed to cooperate: "You've added Blair and Potter to your 'ask,' so anything we don't get today will be supplemented hopefully by no later than tomorrow." *See* Email, Monday, November 9 at 4:46 p.m.[3]

---

[3] The email reads, in its entirety: "Dear Rizzy, Per our call, and your note below, Michael is conforming our production and Objections to your request. Basically, we've agreed per your note below, to do the search you've asked below, and you've agreed to limit "Snyder" references to (a) the time period May 1-Sept 1,

6

On Tuesday, November 10 at 1:52 pm Snyder's counsel emailed that Snyder was:

> ... interested in any documents or communications regarding Ms. Blair, among other items listed in my email of yesterday. We are aware that your client did communicate with Ms. Blair both before and after publication of the defamatory articles from the following phone numbers: (1) 410-230-0105; and (2) 443-253-9992. As such and discussed, we would also request any phone records, text or email communications, and other documents that reflect these communications with Ms. Blair. *Given your production to date and what we anticipate today, we are hopeful that we can resolve this subpoena without Court intervention.*

On November 11, before rushing to an evening Veteran's Day commitment, Moag's counsel responded by email, committing to supplement production by the next day, Thursday November 12. *See* Reeder Decl. at ¶ 8, attached as Exh. B.[4] At least two of Snyder's attorneys, within 2 minutes, received and read this email. And then, late on a Holiday, and with written assurance that additional documents were coming, Petitioner hastily filed the initial motion to compel.[5] Petitioner's statement and sworn declaration, not only fails to disclose the November 11 email; it inexplicably denies such an email was received, which portrayed Respondent's cooperation and good faith in a false light. *See* Reeder Decl. at ¶¶ 7 & 8. Because Snyder's Reply contained several

---

2020, and (b) those records that appear to anticipate negative publicity. You've added Blair and Potter to your "ask," so anything we don't get today will be supplemented hopefully by no later than tomorrow. With this understanding, believe we are in agreement. We'll provide you our Objections, but not filing with Judge Hollander, as there's no need for a Protective Order. Trust this captures our understanding from your end. Kind regards, Joe[.]"

[4] That email reads: "Rizzy, Happy Veterans Day. Sorry I couldn't discuss more with you last evening; as I explained, I was racing home late hosting an event with Gen. HR McMaster. Like me, John's never seen his phone records, and has asked his secretary to come in tomorrow to help him try to retrieve, so we should be able to supplement tomorrow. Questions, call in the morning; numbers all forwarded as we've stopped going in for a while hoping the COVID dies down. Thanks, JR[.]" As the Reeder Declaration explains (at ¶8), Snyder's lawyers, knowing that this November 11, 2020 6:20 pm email rendered their sworn Declaration false, instead of correcting the untruth, chose instead to be able to profess later that they had not "read" it before filing, not knowing that there were telltale email receipts of their opening the emails, both within 2 minutes of this 6:20 pm email, sent on Veteran's Day evening. This email literally destroyed Petitioner's false narrative, a narrative that concealed that Petitioner had reaffirmed agreement to a rolling production. Courts historically frown on gamesmanship by either party, and victims of gamesmanship should not be expected to bear the cost of responding to it.

[5] This Motion was dismissed *sua sponte* for non-compliance with LR 104.8 and then promptly refiled without further effort to resolve the matter.

7

misstatements and mischaracterizations, Moag was entitled to and had no choice but to seek leave to sur-reply. (ECF 16).

F.     **The Magistrate Judge's December 17, 2020 Order Contains Material Statements and Findings Contrary to the Record**

Discovery rulings quite often turn on what the Court perceives to be parties' good faith in promulgating and responding to legitimate requests which advance the cause of justice. This Rule 72 Motion in part is necessitated by the complete mischaracterization of what in truth, have been Moag's extraordinary efforts to cooperate, even to the point of access and production that goes well beyond anything sought in discovery. That was done with the understanding that discovery would be limited to that which would have some remote bearing on the Indian Action at issue. This Court without the truth as to the context and history of Moag's efforts, cannot fairly adjudicate what is and is not legitimately fair game discovery for the courts of India, given the many other wholly unrelated but now highly publicized issues that pit Petitioner against Respondent here—issues having nothing to do with the Indian Action. Given Petitioner's representations, we understand why the December 17 order accepted as truthful that Respondent had provided "13 pages of documents," when, in fact, Moag's production, with two successive productions, was nearly tenfold more than that. After all, Petitioner alleged that Respondent "steadfastly refused" to produce more. Slip op. at 1. The Order calls for production of "all phone records, text messages, and other communications with all third parties, including but not limited to Ms. Mary Ellen Blair and Mr. Bobby Potter, dated prior to and after the Defamatory Articles concerning Snyder, the Defamatory Articles, and/or any other anticipated or actual negative publicity concerning Petitioner, within 7 days of this Order."[6]

---

[6] Moag's Declaration, along with his fourth production of documents today (December 28), confirms the absence of any pre-July 16, 2020 documents relating to Mary Ellen Blair or, as to Bobby Potter, anything remotely related to the Indian Action or its allegations.

8

Beyond misleading the Magistrate Judge by insinuating Moag's involvement in promoting rumors about Snyder, Petitioner may have even persuaded the District Court's decision to grant the *ex parte* §1782 petition (*i.e.* the "Order of this Court") in the first place.[7] Whether done carelessly or intentionally, Petitioner constructed a highly misleading narrative for the Court that led to clear errors of law and fact that require modification and/or clarification, given the obvious conflicting breadth reading Respondent's as yet unruled upon November 9 Objections, and the Petitioner's Proposed Order. Apart from reasonably accommodating Petitioner's legitimate India-related discovery needs, until ruled upon, we respectfully believe those Objections to be operative.

## DISCUSSION

Rule 72(a) allows the Court to modify and/or set aside those parts of a Magistrate Judge's order that deserve reconsideration. Fed. R. Civ. P. 72(a); *Berman v. Congressional Towers Ltd.*, 325 F. Supp. 2d 590, 592 (D. Md. 2004). A factual "finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948); *accord Harman v. Levin*, 772 F.2d 1150, 1152 (4th Cir. 1985). Provided facts are fairly considered in context, factual findings, if based on a complete record, deserve deference. Questions of law warrant *de novo* review. "An order is contrary to law 'when it fails to apply or misapplies relevant legal statutes, case law, or rules of procedure.'" *Attard Indus. v. United States Fire Ins. Co.*, 2010 U.S. Dist LEXIS 80785, at *5 (E.D. Va. Aug 5, 2010) (quotation omitted). *See also HSBC Bank v. Resh*, 2014 U.S. Dist. LEXIS 10176, at *19 (S.D. W. Va. Jan. 28, 2014) (*quoting Powershare, Inc. v. Syntel*, Inc., 593 F.3d 10, 15 (1st Cir. 2010).

---

[7] General suspicion and rumor are no more valid a basis for permitting discovery than they are a basis for filing a complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Unless the rumor involved some conduct by Moag relevant to the Indian Action, it falls outside the scope of the § 1782 Petition even assuming it is a proper basis for discovery in any proceeding. That Snyder believes that Moag has promoted rumors about Snyder (of which there are many) in some other context does not make this proceeding the proper vehicle to investigate it.

9

Adherence to procedural rules raises a question of law. *See, e.g., Myers v. Califano*, 611 F.2d 980, 892 (4th Cir. 1980).

**I.     Not Considering Respondent's Objections or Sur-Reply Deserves Rule 72 Relief**

The Magistrate Judge notes that the absence of a motion to quash or motion for a protective order leaves Respondent no basis to "untimely now challenge the requested discovery." Slip op. at 2. It appears from the face of the Order that the Judge may not have seen Respondent's timely served Objections, but not ruling thereon is contrary to the protections afforded a recipient of a non-party subpoena under Rule 26 and Rule 45.

Petitioner never challenged Respondent's November 9 objections in substance, form, timing, or otherwise, which courts invariably deem a waiver of such challenges. *See Wagner v. St. Paul Fire*, 238 F.R.D. 418, 423-24 (N.D. W.Va. 2006); *see also Sherrod v. Harkleroad*, 791 Fed. Appx. 377, 382 n.4 (4th Cir. Nov. 5, 2019) ("When a party fails to raise an issue…it is considered waived or abandoned.") *(citing Grayson O Co. v. Agadir, Int'l, LLC*, 856 F.3d 307, 316 (4th Cir. 2017) *and Brown v. Nucor Corp.*, 785 F. 3d 895, 923 (4th Cir. 2015). At the time of Respondent's written responses and objections, along with an initial production of documents, parties were engaged in ongoing negotiations, with Petitioner's counsel referring repeatedly to (and agreeing to) a "rolling production." *See* Reeder Decl. Exh. 1 at ¶16. Consistent with Rule 1 of the Federal Rules of Civil Procedure, surely this undisputed state of affairs evidenced no "up front" need for protective motions practice, when Petitioner still hadn't even provided Moag a copy of his Petition. As such, the Magistrate Judge's Order seemingly overruling Respondent's objections is in error, and does not give Respondent a fair ruling on his unchallenged objections.

The Proposed Order accompanying this Rule 72 filing, consistent with Rule 26 and Respondent's Objections, provides for Snyder to receive everything available that is conceivably related to the issues in the Indian Action, while at the same time, protecting Respondent Moag and

others from the disclosure of wholly unrelated materials that could cause untold injury to innocent parties who have no interest in or knowledge of the allegations in the Indian Action. The Magistrate Judge enjoys "wide latitude in controlling discovery" but that power here should remain within the bounds intended by section 1782—to assist with discovery concerning the Indian Action, and not beyond. The Magistrate correctly notes the inherent (and quite proper) power of India's courts to decide what is admissible in India, but India's courts have no authority to determine what is properly discoverable here in the U.S., or what more properly would be the basis for discovery in some other litigation.

A second legal error warrants relief under Rule 72. The Court's Order recounts the mischaracterized and misstated communications with counsel set out in Petitioner's Reply, which Respondent's sur-reply sought to address. Fairness and justice required the Court to consider all the documents exchanged by the parties under the LR 104.8 discovery dispute process. By rendering the sur-reply moot and not considering it when ruling on the Motion to Compel, the Respondent's good faith efforts and cooperation have not been fully or fairly adjudicated. This is particularly true if, in ruling, the Court considered any aspect of Petitioner's Reply. Snyder's Reply complains that Moag had "continued to engage in tactics to frustrate the [discovery] process for almost three weeks." *See* ECF 13-7 at 8. This is inaccurate (*see* n. 4, *supra*) and one example of why Respondent's sur-reply should have been considered so that the record would more accurately reflect Moag's diligent efforts to provide reasonable responses to the subpoena requests. In fairness, Respondent's sur-reply should have been considered by the Court as part of the Motion to Compel.

## II. Compelling Discovery Beyond That Sought by the Subpoena Was Legal Error

The Magistrate Judge's Order, by adopting in its entirety the proposed Order submitted by Petitioner, if meant to include anything unconnected to the Indian Action, would compel discovery that falls clearly outside the scope of the subpoena at issue and outside what was represented to be tailored to reach information to assist in the Indian Action, and no more. Permitting the Petitioner to shift beyond his foreign complaint, his §1782 petition, or his subpoena through a motion to compel, and ordering Respondent to respond to discovery outside the clearly defined scope of the subpoena, would constitute legal error. *See Blazek v. Capital Recovery Associates, Inc.*, 222 F.R.D. 360, 361–62 (E.D. Wis. July 15, 2004) (motion to compel discovery denied where party's subpoena did not request same); Fed. R. Civ. P. 34(c) and 45; *see also Shipes v. Amurcon Corp.*, No. 10-14943, 2012 WL 1183686, at *1 (E.D. Mich. Apr. 9, 2012) (motions to compel are "procedurally improper" if not based on requests appearing in a subpoena).

Requests for communications with Mary-Ellen Blair or Bobby Potter, for instance, are nowhere within the four corners of the subpoena. And for good reason—those individuals are nowhere mentioned in the Indian Action, or relevant to it.[8] Rather, those third-parties were identified for counsel, for the first time, in response to Moag's offer to use "search terms," in a late-day, November 9, 2020 email. While the Magistrate's ruling compelling all communications with those individuals has been honored in full, the ruling now could be read to extend to all other third parties "concerning Snyder," an extension dramatically beyond any legitimate needs for the Indian Action,

---

[8] Blair and Potter do, however, take center stage in Petitioner's Motion to Compel, appearing at least 73 times in that document (Blair appears 49 times, and Potter 24 times). Petitioner's focus on these two is highly misleading; neither Blair nor Potter has been sued by Petitioner, nor even deposed, but Petitioner obtained a § 1782 petition against Blair and now knows that that this former low-level Snyder employee has nothing whatever to do with the Indian Action allegations. Recent reports reflect Petitioner's animus towards ex-employee Blair, not having anything to do with the Indian Action allegations, but rather, due to her relationship with the WFT minority owners now litigating against Snyder. *See* https://www.washingtonpost.com/sports/2020/12/23/daniel-snyder-response-allegations/). That may permit discovery in those proceedings, in the unlikely event warranted, but that hardly justifies expanding the scope of discovery in this proceeding.

12

that threatens to compromise business dealings and other sensitive information unconnected to allegations in that action. Aside from the burden it imposes, the extension, if not corrected, threatens to incurably prejudice unrelated entities and individuals for no valid reason. Such an extension is unwarranted as a matter of law, given the targeted discovery this Court authorized when it granted the §1782 petition for discovery. This is consistent with the rulings of several local federal courts, including the proceeding presided over by Judge Messitte, when reviewing and keeping under seal sensitive business-related information regarding the near billion-dollar minority ownership sale now in bitter dispute. (*see* https://www.washingtonpost.com/sports/2020/12/19/dan-snyder-minority-owners-feud/) Respectfully, Petitioner has discovery rights, but Respondent also deserves protection, not only because of burden, but more important here, because sensitive issues unconnected to India, can, if legitimate, be sought in other ongoing litigations. The section 1782 here should be limited to the India Action.

### III. The Magistrate's Ruling on the Scope of Discovery, Unless Clarified, Exceeds the Order Permitting §1782 Discovery

In granting the §1782 petition, this Court provided Petitioner ex parte and "under cover" filing, and also the right to seek discovery relating to the Indian Action and its two sensational, false and defamatory allegations about Petitioner by meaww.com and Eleven Internet Services, LLP, linking Petitioner to Jeffrey Epstein and sex-trafficking. The December 17 Order eliminates the connection between the information Petitioner now seeks and the Indian Action that justified the §1782 relief in the first place. The Magistrate's ruling that "the information sought....[is] within the scope of discoverable information and within the Order of this Court," slip op. at 2, misstates the scope of discovery set forth in the Court's 9/29/20 Order granting discovery, refers to the Local Rule Discovery Guidelines, but gives no consideration as to relevance, proportionality, burden of such discovery, confidentiality, or potential for grievous injury that could result from disclosure of information having no bearing on the Indian Action.

This Court granted the 28 U.S.C. § 1782 petition to aid the India courts; it did not authorize a fishing expedition into Snyder's disputes, real or imagined, with Moag. The observation in the Magistrate's Order that the foreign court will determine "admissibility," slip op. at 2, appears to shift to India the policing of our own Federal Rules of Civil Procedure to ensure what is ordered to produce falls within the proper scope of discovery under §1782. (*See* Reeder Decl. Exh. 1 at ¶12). "In the context of 28 U.S.C. § 1782 proceedings, however, 'the role of the district courts as gatekeepers is paramount.'" *In re Hornbeam Corp.*, No. 14-MC-424, 2020 WL 4698955, at *2 (S.D.N.Y. Aug. 13, 2020).

The Court should not permit discovery that is totally outside the outer raggedy bounds of Rule 26's reasonable limits and proportionality requirements, and inconsistent with the defined scope of this §1782 discovery. Respondent's Proposed Order seeks to accord Petitioner his due, but within proper section 1982 boundaries. *See Intel Corp.*, 542 U.S. at 245 (in ruling on a section 1782 petition, district court should reject or "trim" overly "intrusive or burdensome requests"); *Al-Ghanim v. IAP Worldwide Servs., Inc.*, No. 11-cv-467, 2012 WL 13102517, at *11 (M.D. Fla. Jan. 18, 2012) (rejecting overly broad discovery request in section 1782 dispute); *see also Kulzer v. Biomet*, 633 F.3d 591, 594-95 (7th Cir. 2011) (applying Rule 26 to section 1782 discovery dispute to avoid section 1782 "abuses," including discovery of documents the foreign court would never "admit into evidence," and "clogging" foreign courts with the "random harvest of the American discovery").

## CONCLUSION

Respondent has done its best to demonstrate good faith in responding to discovery, and further, the lack of any knowledge as to the source or any other aspect of the Indian Action allegations, or anyone who does. In return, after coaxing and receiving full cooperation, Petitioner has threatened depositions and what counsel refers to as "motion practice," and "litigation." Respondent's Sworn Declaration (Moag Decl. at ¶ 5 and throughout) affirms that he has no connection to the Defamatory Articles, and no documents that would assist in the Indian Action. Respondent respectfully submits based on the explanations above and accompanying declarations, that he is entitled to this Court's protection from any further discovery that goes beyond the clearly defined scope of the §1782 subpoena.

## REQUEST FOR ORAL ARGUMENT

Respondent hereby requests oral argument before the Court on these Rule 72 objections.

Respectfully submitted,

Joe R. Reeder
USDC MD#06701
Stephen T. Fowler
USDC MD# 16881
Greenberg Traurig, LLP
2101 L Street N.W.
Washington, D.C. 20037
(202) 331-3100
reederj@gtlaw.com

*Attorneys for Respondent*

# CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of December 2020, a copy of the foregoing was electronically filed with the Court and served upon all Counsel of record by first class mail and electronic mail to the following:

>Rizwan (Rizzy) Qureshi, Esq.
>rqureshi@reedsmith.com
>Reed Smith LLP
>1301 K Street, N.W.
>Suite 1000 – East Tower
>Washington, D.C. 20005-3373
>*Counsel for Petitioner*

/s Joe R. Reeder
Joe R. Reeder