UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

In re Application of Daniel Snyder
for an Order Directing Discovery from
Moag & Co., LLC Pursuant to
28 U.S.C. § 1782

Civil Action No. 1:20-cv-02705-ELH

**FILED UNDER SEAL**

### REPLY IN FURTHER SUPPORT OF PETITIONER'S APPLICATION, MADE BY ORDER TO SHOW CAUSE, FOR ENTRY OF AN ORDER HOLDING RESPONDENT IN CONTEMPT; AWARDING SANCTIONS; STRIKING DECLARATION OF JOHN A. MOAG, JR.; AND ISSUING A GAG ORDER

In direct defiance of numerous Orders of this Court, not to mention common sense and decency, Respondent Moag & Co., LLC's ("Moag & Co." or "Respondent") principal John A. Moag Jr. – whom Mr. Snyder has never even met – persists in his ongoing attempts to extort and harass petitioner Daniel Snyder ("Petitioner" or "Mr. Snyder"), including in a recent threat to open "Pandora's box" if Mr. Snyder does not reach a "business deal."

While claiming to cooperate in good faith – despite refusing to produce documents plainly responsive to this Court's Order – and defending Mr. Moag's slanderous claims in his wholly irrelevant and inflammatory Declaration, behind the scenes Mr. Moag has revealed his true defiance of this Court's clear Orders by sending text messages to Petitioner and his representatives threatening to make things "uglier" for him if he does not discontinue in his efforts to enforce the duly served subpoena. This January 8, 2021 threat to Petitioner is merely the latest in a string of harassing messages Mr. Moag has sent, all the while trying to paint *himself* as the victim of supposedly overreaching discovery requests. However, as these messages and Moag & Co.'s Opposition to Petitioner's Application and continued failure to produce all documents responsive to this Court's Order make clear, Respondent has no intention of genuinely complying with the Court's directives, or with its obligation to produce plainly responsive documents to Petitioner,

and an award of sanctions, along with an order striking Mr. Moag's declaration and restraining him from continuing to harass Petitioner, are warranted.

Respondent's Opposition fails to provide any valid defense to its failure to comply with the Court's Order, and instead reveals yet more examples of Respondent's ongoing gamesmanship in these proceedings. Critically here, Moag & Co.'s Opposition does nothing to explain why it failed to produce full and unredacted copies of responsive documents, and otherwise failed to cure its deficient declarations by Mr. Moag and Mr. Wilson – which fail to articulate how they performed searches for and collected responsive documents to the subpoena and, in the case of the Moag Declaration, consists of irrelevant and wholly defamatory claims.

With respect to the failure to produce unredacted copies of the phone records that admittedly contain responsive information, Moag & Co. incorrectly argues that its Rule 72(a) Objections will moot the instant Motion for Contempt because it will either be required to produce such documents at that time or have that obligation lifted. However, Moag & Co. cannot cleanse its failure to comply with the Court's Order because it filed Rule 72(a) Objections but failed to timely seek a stay of the Court's prior Order pending the Court's ruling on its Objections. Its attempt to request such relief in a footnote in its Opposition – long after the compliance deadline with the Order had passed – was not sufficient.[1]  *See* Opp'n (Dkt. No. 42) 7 n. 3.

With respect to the Moag Declaration, Moag & Co. inappropriately attempts to justify its decision to file his declaration by arguing that the allegations "were true" – which they are not – instead of addressing the real issue: *why* an entirely irrelevant declaration was even filed – and publicly filed – in the first place. The obvious reason is that Moag & Co., and specifically Mr.

---

[1] The Court may recall that this is a pattern for Moag & Co. – it also failed to timely move for a protective order or to quash. Moag & Co. also reargues many of its positions in its Rule 72(a) Objections, which is inappropriate and not relevant to the instant motion for contempt before the Court.

Moag, has seized any opportunity to inflict harm upon Petitioner and to generate negative publicity regarding Petitioner, including through his false, gratuitous and harassing Declaration.

In fact, Mr. Moag – whom Petitioner has never even met – continues to engage in such improper tactics even outside of these proceedings. On January 8, 2021 – the day after Mr. Moag was compelled to testify before Judge Messitte in the District of Maryland about alleged leaks to the media – Mr. Moag sent a text message to Petitioner's business representative, Greg Owens, threatening to disclose unspecified negative information about Petitioner in an attempt to extort him into dropping the instant Section 1782 proceeding, among other litigation in which Mr. Snyder is involved, and reaching an unspecified "business deal":

> Don't know whether you got a read of the lengthy hearing yesterday. Lawyers went pretty light but I was asked by the judge and answered honestly about my convos with you and DS on the subject of the "shit show". Namely, the show that happened yesterday and will happen again and probably uglier when this Pandora's box is unwrapped by more litigation and discovery. We've talked about that.
> If you are brought back under the tent, maybe you can help a return to the basics of a business deal.

Siev Declr., Ex. A.

As this Court is fully aware, this threat is merely the latest in a much longer history of Mr. Moag taking every opportunity to publicly disparage Petitioner, including jabs made on the record to the media, such as a September 2020 quip to Front Office Sports that "it has been a couple days now since [Snyder] sued somebody" and a December 2020 comment to *The Washington Post* standing behind his "shit show" threats towards Petitioner by stating "Dan [Snyder] knows what it's about. I'll leave it at that."

Due to Moag & Co. and Mr. Moag's ongoing disparaging conduct, Petitioner also requests the Court to issue a gag order prohibiting Moag & Co. and its representatives from publicly addressing this Section 1782 Action and continuing to disparage Petitioner. This Court has entered a similar order in another civil action, *see, e.g.*, *Robert Rothman v. Daniel Snyder*, 8:20-cv-3290-PJM (Dkt No. 89) (issuing an order requiring that the parties in that action file under seal any papers that might have disparaging information about other parties), and indeed the hearing to which Mr. Moag refers in his January 8 text above was a hearing in that very proceeding where Mr. Moag was summoned to testify before Judge Messitte to explain whether he and/or his clients had violated Judge Messitte's gag order.

Accordingly, for the reasons set forth herein and in Petitioner's moving brief, Petitioner's request for an award of sanctions, along with an order directing Respondent to immediately produce the unredacted phone records and restraining Mr. Moag from further defaming and publicly maligning Petitioner, should be granted, along with such other and further relief as the Court deems just, fair and equitable.

**Argument**

I. **Moag & Co.'s Opposition Fails to Rebut Respondent's Misconduct**

A. **The Court's Order Was Clear and Unambiguous**

Moag & Co. argues unsuccessfully that the Court's Order – with which Moag & Co. failed to comply – is "far too unclear to support a contempt finding" because the Order does "not describe what documents must be produced." *See* Opp'n (Dkt. No. 42) 9. In support of this wholly meritless argument, Moag & Co. relies on the fact that the Court cited to Petitioner's Reply brief instead of a Proposed Order. *Id.* This argument is incorrect and fails on all levels.

Based on Moag & Co.'s prior claims in opposition to Petitioner's motion to compel that "it has no further documents" and Petitioner's demonstration that Moag & Co.'s claim was inaccurate, the Court ordered as follows: if Moag & Co. is correct – and it had no further documents – then it was required to provide by an affidavit under oath attesting to the fact that the documents produced are the only responsive documents; or, if Petitioner is correct, then Moag & Co. was required to produce responsive documents. *Id.* at 2. Accordingly, the Court ordered Moag to "file responses to Petitioner's discovery requests as described in Petitioner's Proposed Order (ECF 13-8 *Under Seal*) within 10 days of this Order." *Id.* at 3. This direction is clear and unequivocal.

Petitioner requested the following categories of documents in its Proposed Order (Dkt. No. 13-8): ***unredacted*** copies of phone records that previously had been produced with extensive redactions; text messages between Mr. John Moag and third parties including, without limitation, Ms. Mary Ellen Blair and Mr. Bobby Potter; and phone records from Moag & Co.'s carrier, Comcast, during the relevant time period. *See* Reply (ECF No. 13-8) 8-9. This request is

consistent with the parties' negotiations,[2] and leaves no room for misunderstanding. Even if Respondent was unclear as to the scope of its obligations, it failed to request further clarification from the Court or Petitioner, and instead opted to ignore the Order entirely. Given that Moag & Co. did in fact produce some additional documents – albeit insufficiently – Respondent clearly was not confused as to the responsive unredacted documents that it was required to produce; it simply refuses to produce them.

Finally, Moag & Co.'s misplaced reliance on Federal Rule of Civil Procedure 65, which "requires injunctions and restraining orders to 'describe in reasonable detail—and not by referring to the complaint or other documents—the act or acts restrained or required," fails to justify Respondent's decision to ignore the Court's Order. *Id.* The Court's Order arose from Petitioner's motion to compel, not an independent injunction or restraining order. Therefore, Rule 65 is inapplicable to the present dispute, and this argument is yet another attempt by Respondent to evade its obligations.

Moag & Co.'s ongoing refusal to comply with the Court's Order and assertion of frivolous defenses demonstrates once again that Moag & Co. is employing bad faith tactics in order to shirk its discovery obligations.

**B. Moag & Co.'s Collateral Attack on the Underlying Document Requests is Untimely and Improper**

In an attempt to justify its refusal to comply with the Court's Order, Moag & Co. once again tries to reargue its failed positions as to why it objects to the content of the discovery requests. This includes extensively rehashing Moag & Co.'s arguments in its currently pending

---

[2] Since the inception of this Section 1782 Petition, Petitioner has repeatedly requested phone records and text messages exchanged with third parties – including third parties Mary Ellen Blair and Bobby Potter. The parties' negotiations regarding these types of documents is accurately reflected in Petitioner's Reply in further support of his Motion to Compel. *See* Reply (ECF No. 13-8) 8-9.

Rule 72(a) Objections, which in turn consisted of arguments already raised with the Court in connection with briefing Petitioner's underlying Motion to Compel.  For the sake of judicial economy, Petitioner respectfully refers the Court to Petitioner's Opposition to Respondent's Rule 72(a) Objections (Dkt. No. 42) for his full explanation as to why those Objections fail.  Regardless, Moag & Co. cannot unilaterally ignore the Court's Order subject to resolution of its still pending Objections – particularly when those Objections were not filed until December 28, 2020 – *the same day* as Moag & Co.'s deadline to comply with the Court Order.

Additionally, Moag & Co.'s newly fabricated argument that it need not produce admittedly responsive documents because Mr. Moag lacks "personal" knowledge of the sources underlying the Defamatory Articles is equally unavailing.  Not only has Moag & Co. waived the right to assert any such objections by failing to move for a protective order or to quash the duly served subpoenas – as the Court explicitly held in the Order – but these objections are entirely nonsensical and insufficient to justify Moag & Co.'s ongoing discovery failures.

In particular, Moag & Co. argues in its Opposition that because Mr. Moag very carefully and circumspectly stated under oath that "he has no personal knowledge of those allegations [in the Indian Action]" and "he was not a source, directly or indirectly, of the stories that appeared in India" this somehow absolves Respondent of its obligations to produce documents responsive to Petitioner's subpoena.  Opp'n (Dkt. No. 42) 2.  However, as set forth in the underlying Petition, Mr. Moag indisputably had advance notice of the publication of the Defamatory Articles and other negative forthcoming publicity concerning Petitioner, and Petitioner's documents requests are designed to assist Petitioner in discovering how Mr. Moag obtained that information and which third parties were the sources in directing the publication of the Defamatory Articles and the other

information – not just whether Moag & Co. itself was a source. Put simply: Mr. Moag's statements under oath do not fulfill Moag & Co.'s discovery obligations in this action.

Accordingly, the Court should award sanctions for Moag & Co.'s ongoing refusal to comply with the Court's Order.

### C. Moag & Co.'s Supplemental Document Production Fails to Satisfy the Court's Order

Moag & Co. also points to its inadequate supplemental production as supposed evidence of its compliance. However, its further supplemental document production remains incomplete, as Moag & Co. is well aware. *Id.* at 7. Moag & Co. fails to address this deficiency in its document production and in fact *admitted* that it has not produced all responsive documents.

Specifically, despite Petitioner's numerous requests since November 2020 and the Court's clear Order, Respondent still refuses to produce ***unredacted*** versions of its phone records from both Verizon and Comcast, which it concedes contain responsive information as evidenced by the single-line entries that were left unredacted. Instead, Moag & Co. attempts to play even more games and waste the Court's time and resources by claiming: "If this Court requires that the [telephone records] be produced, Respondent will produce them . . . .". *See* Opp. (Dkt. No. 42) 1. However, **the Court has *already* required Moag & Co. to do so**, holding that Respondent waived the right to raise such objections on relevancy and confidentiality grounds by failing to move for a protective order or to quash the subpoenas by the deadline set by the Court. Respondent is not entitled to cherry pick which portions of the Court's Order that it will obey.

This non-compliance with the Court's Order and failure to produce responsive documents is precisely why Moag & Co.'s cited cases are inapposite. For example, in *Pension Benefit Guar. Corp. v. Members First Fed. Credit Union*, 2015 U.S. Dist. LEXIS 64345, at *4-5 (D. Md. May 18, 2015), this Court declined to hold a party in contempt because the requesting party "has

obtained the relief that is sought in its petition." That plainly is different from the instant case, where Respondent has failed to complete its discovery obligations. Likewise, *Farm Fresh Direct LLC v. Downey*, 2018 U.S. Dist. LEXIS 73816, at *38-39 (D. Md. May 1, 2018) is inapposite to these proceedings, as that matter involved a *pro se* litigant who submitted filings on behalf of other parties in the action – conduct which, while in violation of the Court's Order, did not deprive the moving party of its own rights, which Moag & Co.'s actions have done here.

Accordingly, Moag & Co. has failed to act in good faith compliance with the Court's Order and is subject to sanctions for such conduct.

### D. The Wilson and Moag Declarations Fail to Satisfy the Court's Order

Moag & Co. incorrectly relies on the fact that it produced the improper and slanderous Moag Declaration and the incomplete Wilson Declaration setting forth its supposed compliance with the scope of the subpoena as supposed evidence of its compliance with the Court's Order. *See* Opp'n (Dkt. No. 42) 8-9. Moag & Co. argues that these declarations somehow demonstrate that it engaged in "extraordinary, good-faith efforts" to comply with the Court's Order. This is patently false.

As set forth in Petitioner's Motion for Contempt, the Moag Declaration and Wilson Declaration are deficient in that they fail to explain protocols used to locate and collect responsive documents. *See* Mot. (Dkt. No. 35-1) 8-9. Moag & Co. fails to address these deficiencies and further failed to supplement either the Wilson Declaration or the Moag Declaration to clarify what protocols were used to locate responsive documents and why certain responsive documents were not previously located and timely produced. Without this information, neither the Court nor Petitioner can appropriately evaluate what steps Moag & Co. took to locate and collect responsive documents to the subpoena. Regardless, even without this further information it is clear that

Respondent is withholding responsive documents and has no intention of complying with its discovery obligations or the Court's orders.

### E. Moag's Declaration is Inappropriate and Should Be Stricken

Instead of attempting to explain *why* Moag & Co. filed the Moag Declaration that is entirely irrelevant to the instant action and contains allegations disparaging Petitioner, Moag & Co. uses its Opposition to try to backpedal on the slanderous comments contained therein and impose non-existent burdens on Petitioner to disprove Mr. Moag's false and harassing claims. This is a red herring and attempt to distract from the glaring issue with this declaration: the contents of the Declaration have no bearing on the proceedings in this matter and were only filed for the purpose of further spreading negative publicity concerning Petitioner (Dkt. No. 23).

As stated above, the Moag Declaration is blatantly deficient with respect to addressing how Mr. Moag searched for and collected documents, and especially with respect to why he never searched his iPad for responsive messages prior to December 13, 2020, which resulted in deleted messages. Contrary to Moag & Co.'s proposition, the Moag Declaration also fails to provide "context" to the parties' discovery discussions, which still would be inappropriate and wholly irrelevant to question of whether Moag & Co. violated the Court's Order – which it indisputably did. Instead, the Moag Declaration is wholly immaterial to the proceeding and was filed for the *sole* purpose of introducing defamatory, harassing, and other inflammatory allegations about Petitioner in both a professional and personal capacity. For the avoidance of doubt, Petitioner denies any allegations of wrongdoing and reserves all rights as to Mr. Moag's other slanderous and harassing claims, but declines to "take the bait" and turn the focus from the wrongdoer here as Respondent's misconduct is clear and unequivocal.

Accordingly, the Court should strike the scandalous and wholly defamatory Moag Declaration.

**F. The Court Should Issue a Gag Order Prohibiting Moag & Co.'s Ongoing Misconduct**

In addition to the filing of the highly defamatory and inappropriate declaration, since the commencement of this Section 1782 proceeding, Moag & Co.'s principal, Mr. Moag, has sent inappropriate text messages to Petitioner and his representatives attempting to blackmail and intimidate Petitioner into withdrawing his basic discovery demands. As previously noted to the Court, starting on September 17, 2020, Mr. Moag sent a text message to Petitioner stating:

> Hey Dan—My lawyers sent me your filing in which you are representing yourself Pro Se. I'd be glad to represent myself Pro Se but only private discussions with you as well. That requires a business deal, not a legal process. **If you continue your game, you know what I know and what I have never spoken about. And you know it has nothing to do about the media shit . . . . . it's the more serious shit.**
>
> **If you want to get a clean conclusion, let me know. If you want a shit show, we are on for that too.**
>
> John

*See* Mot. Compel, Exh. B (Dkt. No. 12-2) 31-32 (emphasis added). After Petitioner refused to cow to Mr. Moag's improper threats, Mr. Moag and his company have taken every opportunity to improperly block and frustrate Petitioner's efforts to obtain basic discovery that is clearly related to the pending Indian action. Mr. Moag's ongoing misconduct also included disparaging remarks about Petitioner and the Team to the media. *See supra* at 2. All of these improper attempts to intimidate and slander Petitioner are even more egregious following on the Court's blunt warning to Respondent's counsel and the parties to refrain from engaging in such "unsavory" conduct.

As recently as January 8, 2021 – more than a week after Petitioner moved to strike Mr. Moag's disparaging and wholly irrelevant Declaration – Mr. Moag sent the following threatening text message to an associate of Petitioner, Mr. Greg Owens:

> Don't know whether you got a read of the lengthy hearing yesterday. Lawyers went pretty light but I was asked by the judge and answered honestly about my convos with you and DS on the subject of the "shit show". Namely, the show that happened yesterday and will happen again and probably uglier when this Pandora's box is unwrapped by more litigation and discovery. We've talked about that.
>
> If you are brought back under the tent, maybe you can help a return to the basics of a business deal.

*See* Siev Declr., Ex. A. Mr. Moag's threats to Petitioner that the "shit show" will get "uglier" and that Petitioner is purportedly "unwrap[ing]" a "Pandora's box" by continuing to pursue the production of documents to which he is rightly entitled – and which the Court directed Respondent to produce – is indisputably further sanctionable conduct and absolutely refutes any attempts by Respondent's counsel to downplay Mr. Moag's wrongful actions.

Mr. Moag's conduct is not only limited to text messages to Petitioner and members of the Team, but he has also made salacious statements to the press. *Id.* As noted above, he made a December 2020 threat to Petitioner through *The Washington Post* standing behind his "shit show" threats towards Petitioner by stating "Dan [Snyder] knows what it's about. I'll leave it at that."

Moag & Co.'s conduct is further amplified by the Moag Declaration, which is rife with scandalous and willfully defamatory statements regarding Petitioner, as fully set forth above. Although Petitioner has requested that the Court award sanctions by striking the Moag Declaration, further relief is required to ensure that Moag & Co. and its representatives do not continue to engage in such conduct.

"Orders restricting parties, witnesses and attorneys from discussing a pending case with the press are not unusual." *United States v. Blankenship*, 79 F. Supp. 3d 613, 618 (S.D. W. Va. Jan. 7, 2015) (internal citation omitted). The Supreme Court has found that a narrow gag order may be appropriate in certain circumstances, including where: (1) there is a compelling interest that will be harmed without intervention; (2) no alternative measures can adequately protect that

interest; and (3) the injunction would effectively prevent the threatened harm. *See Nebraska Press Association v. Stuart*, 427 U.S. 539, 570 (1976) (ultimately reversing a Nebraska state court gag order but noting that "trial courts in appropriate cases [could] limit what the contending lawyers, the police, and witnesses may say to anyone").

Here, Moag & Co. and its representatives' ongoing scandalous and willfully defamatory remarks about Petitioner both personal and professional indisputably cause harm to Petitioner. Despite the Court's Order admonishing counsel from engaging in such "unsavory" practices, Moag & Co. and its representatives still continue to harass Petitioner and members of the Team in complete defiance of the Court's instructions. There are no alternative measures to protect Petitioner from Moag & Co.'s ongoing conduct. Instead, the only remedy to prevent Moag & Co. and its representatives from engaging in disparaging conduct is for the Court to issue an order prohibiting Moag & Co. from publicly speaking about this Section 1782 Action and from disparaging Petitioner.

In fact, this Court has similarly entered such an order in a related proceeding in which Mr. Moag recently testified – and which Respondent submitted to this Court as a supplemental authority on January 13, 2021. *See, e.g.*, *Robert Rothman v. Daniel Snyder*, 8:20-cv-3290-PJM (Dkt No. 89) (issuing an order requiring that the parties in that action file under seal any papers that might have disparaging information about other parties).

Accordingly, to prevent Moag & Co. and its representatives from further threatening harm to Petitioner and from engaging in such disparaging and unlawful conduct, the Court should enter an order prohibiting Moag & Co. and its representatives from publicly speaking about this Section 1782 action and from making threatening or disparaging remarks to or about Petitioner.

**Conclusion**

For the reasons set forth above and in Petitioner's Memorandum in Support (Dkt. No. 35-1), the Court should grant Petitioner's Motion for Contempt and issue an Order finding Moag & Co. to be in civil contempt; requiring Moag & Co. to comply with the Court's December 17 Order; awarding Petitioner sanctions in the form of payment in full of his reasonable attorneys' fees incurred in bringing this application, as well as his prior Motion to Compel pleadings; striking from the docket the harassing and defamatory Moag Declaration; issuing a Gag Order prohibiting Moag & Co. and any of its representatives from publicly discussing the Section 1782 Action and from making threatening or disparaging remarks to or about Petitioner; and awarding Petitioner such other and further relief as the Court may deem appropriate.

Dated: January 26, 2021

Respectfully Submitted,

REED SMITH LLP

By: /s/Andrew C. Bernasconi
    Andrew C. Bernasconi (MD Bar No. 15780)
    1301 K Street NW, Suite 1000, East Tower
    Washington, DC 20005
    Tel: (202) 414-9200
    abernasconi@reedsmith.com

    Jordan W. Siev
    *(Pro Hac Vice Motion Forthcoming)*
    599 Lexington Avenue, 22nd Floor
    New York, NY 10022
    Tel: (212) 521-5400
    jsiev@reedsmith.com

    TACOPINA, SEIGEL & DEOREO, P.C.
    Joseph Tacopina *(Admitted Pro Hac Vice)*
    Chad D. Seigel *(Admitted Pro Hac Vice)*
    275 Madison Avenue, 35th Floor
    New York, NY 10016
    jtacopina@tacopinalaw.com
    cseigel@tacopinalaw.com

    *Attorneys for Petitioner Daniel Snyder*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 26th day of January 2021, a copy of the foregoing *Reply* was electronically filed under seal with the Court and served upon all counsel of record via email.

/s/ Andrew C. Bernasconi
Andrew C. Bernasconi