UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| In re Application of Daniel Snyder for an Order Directing Discovery from Moag & Co., LLC Pursuant to 28 U.S.C. § 1782 | Civil Action No. 1:20-cv-02705-ELH |

**MEMORANDUM IN SUPPORT OF PETITIONER'S APPLICATION FOR SANCTIONS AGAINST RESPONDENT MOAG & CO., LLC**

Petitioner Daniel Snyder ("Mr. Snyder" or "Petitioner") brings this Motion for Spoliation Sanctions against Moag & Co., LLC ("Respondent") for its intentional spoliation of evidence.

**PRELIMINARY STATEMENT**

Pursuant to Federal Rules of Civil Procedure 37 and 45(g), Petitioner Daniel Snyder ("Mr. Snyder" or "Petitioner") brings this Application for entry of an Order awarding Petitioner sanctions against respondent Moag & Co., LLC ("Moag & Co." or "Respondent") as a result of Moag & Co. principal, Mr. John Moag's ("Mr. Moag"), purposeful and egregious destruction of materials responsive to Mr. Snyder's *subpoena duces tecum* in this matter.

Despite being aware of his obligations to preserve and produce documents responsive to Petitioner's subpoena – which was authorized by this Court and with which an order compelling Mr. Moag's compliance previously was issued – Mr. Moag has **deliberately** and **knowingly** destroyed crucial documents and grievously injured Petitioner's abilities to prosecute his defamation claims pending in The High Court of Delhi at New Delhi (the "Indian Action"). Petitioner previously has made this Court aware of Moag & Co.'s ongoing bad faith conduct in this proceeding, which has included refusing to comply with the subject subpoena, withholding responsive documents and threatening Petitioner with further slander if Petitioner did not withdraw this proceeding. Now, Petitioner has learned that Mr. Moag was in possession of numerous

1

additional documents responsive to Petitioner's subpoena – specifically, Mr. Moag's communications with third parties about Mr. Snyder and the Defamatory Articles that are at the heart of the Indian Action and other related matters – but that Mr. Moag purposefully deleted those documents *after* being duly served with the Subpoena and *after* this Court issued its Order compelling the production of those very same documents.

After learning of Mr. Moag's sanctionable conduct, Petitioner has taken all possible steps to attempt to recover the deleted documents from Mr. Moag's devices – and avoid having to burden this Court with further motion practice – including engaging a third-party forensic vendor to examine the devices. However, Petitioner has confirmed that the documents are now irretrievably lost, thus prejudicing Petitioner's ability to fully prosecute his defamation claims in the Indian Action.

An award of sanctions is appropriate where, as here, (1) Mr. Moag had a duty to preserve documents relevant to the Indian Action as of October 19, 2020, when he was personally served with the subpoena in this proceeding; (2) Respondent acted in bad faith by purposefully continuing to "routinely" delete evidence responsive to the Subpoena after that duty arose; and (3) the documents that Mr. Moag knowingly and intentionally deleted were relevant to Petitioners' claims in the Indian Action. *First*, Mr. Moag's duty to preserve responsive documents arose well before his spoliation. Mr. Moag indisputably was aware of the specific documents demanded of him pursuant to the underlying subpoena when he was personally served with that legal document on October 19, 2020. Thus, Mr. Moag had an affirmative duty not to continue his manual deletions of responsive documents, and certainly to avoid taking steps to intentionally delete documents that he knew were responsive to the subpoena.

***Second***, there can be no question that Mr. Moag's conduct in knowingly deleting responsive documents was done in bad faith and prejudicial to Petitioner's ability to prosecute his claims in the Indian Action. Mr. Moag – a former practicing attorney – admits that he continued his supposed "routine" deletion of documents from his devices after being served with the subpoena herein. However, this "routine" deletion was nothing of the sort. Mr. Moag ***selectively*** and ***manually*** deleted messages from his devices, while keeping others for long periods of time – as evidenced by the handful of responsive text messages Respondent produced dating back to May 2020. Mr. Moag's bad faith intentions are further demonstrated by his admission that, upon learning that additional responsive documents were accessible on his iPad in December 2020, he proceeded to cause those messages to be deleted without properly preserving them. This conduct is a textbook case of bad faith spoliation.

***Third***, the documents and communications that Mr. Moag deleted were directly responsive to the underlying subpoena, and thus relevant to Petitioner's claims in the Indian Action. This Court, in granting Petitioner's Section 1782 application [Dkt. 2] and motion to compel [Dkt. 23], has held that the discovery sought from Moag & Co. via the underlying subpoena was relevant to the Indian Action. Mr. Moag admitted in a sworn statement to this Court that he deleted communications with third parties that discussed Mr. Snyder, the Washington Football Team (the "Team"), and the Defamatory Articles at the heart of the Indian Action – precisely the documents sought through the subpoena. [Dkt. 30]. Given that Mr. Moag demonstrated advance knowledge of the Defamatory Articles and the corrupt misinformation campaign against Petitioner – as detailed in Petitioner's original Section 1782 Application – the loss of these documents plainly is prejudicial to Petitioner's ability to trace the sources of the Defamatory Articles for use in the Indian Action.

In sum, Respondent's egregious spoliation – which followed months of dilatory and obstructive conduct, and an ongoing refusal to comply with the Court's unequivocal orders – meets the threshold for sanctionable conduct and must result in a monetary sanction against Respondent.

## **RELEVANT BACKGROUND**

Following this Court's issuance of an order granting Petitioner's underlying Application [Dkt. 2], Petitioner served Moag & Co. with a *subpoena duces tecum* (the "Subpoena") on October 19, 2020 by causing the subpoena to be personally served on Mr. Moag, the principal of Moag & Co., at his residence. *See* Siev. Decl., Exs. A (Subpoena), B (Cert. of Service). The Subpoena sought the production of, *inter alia*, copies of emails and text communications between Moag & Co. – which, by definition, includes Mr. Moag – and any third party concerning Mr. Snyder, the Team and/or the Defamatory Articles (as defined in Petitioner's Application). *Id.*, Ex. A (Subpoena).

Moag & Co. made its first paltry production of documents on November 9, 2020, followed by subsequent productions on November 10, December 2, and December 27, 2020. Siev Decl. ¶ 8. On December 17, 2020, this Court granted Petitioner's motion to compel the production of all documents responsive to Petitioner's Subpoena, holding, in relevant part, that the documents and communications sought in the Subpoena were properly within the scope of discoverable information, that Moag & Co. was compelled to produce all responsive documents, and that any failure by Moag & Co. to comply with the Subpoena would result in an award of sanctions [Dkt. 23]. Siev Decl., Ex. C at pp. 2-3.

In a failed attempt to overturn this Court's order granting Petitioner's motion to compel, Respondent filed a Rule 72(a) Objection, annexing a declaration on behalf of Mr. Moag in which he admitted, for the first time, that he "routinely delete[s] all text messages unless needed for

4

business records."[1]  Siev Decl., Ex. D at ¶ 12.  Mr. Moag further admitted that, on December 13, 2020 – nearly two months after receiving the subpoena and while Petitioner's motion to compel was fully briefed and pending – Mr. Moag located additional responsive text messages, but then knowingly caused them to be deleted after his counsel instructed him to merely take a photograph of those responsive text conversations, rather than taking any steps to preserve those full conversations and produce all responsive portions thereof to Petitioner as required by the Subpoena. *Id*.

Petitioner has since undertaken extensive and costly efforts to attempt to recover the messages that Mr. Moag knowingly deleted, including engaging a third-party forensic technician to attempt to locate the deleted files on Mr. Moag's personal devices.  [Dkt. 58]; Siev Decl. ¶ 9.  However, the vendor has confirmed not only that those files are irrevocably lost, but that nearly 90% of the text messages that Mr. Moag produced in incomplete and improper form during discovery also have been deleted from his devices and are irretrievable.  *Id*. ¶ 10.  Mr. Moag has not proffered any valid explanation as to why his records as of the time of Respondent's December 2020 document productions still contained certain text messages dating back to May 2020 – at odds with his prior claim that he routinely deletes all text messages after receiving and reading them unless needed for undefined "business reasons" – nor does he have a legitimate excuse as to why the few documents that were in his possession as of at least December 2020 no longer existed on his devices as of March 2021 when the forensic examination took place.

---

[1] As discussed *infra* (Part II.B), Mr. Moag's claim that these deletions occurred in the regular course, as opposed to selectively and intentionally, is contradicted by Respondent's productions to date.

5

**ARGUMENT**

I. **LEGAL STANDARD**

Spoliation is the "destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. GMC*, 271 F.3d 583, 590 (4th Cir. 2001). Spoliation jeopardizes "the integrity of the judicial process" and erodes "confidence that the process works to uncover the truth." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 517 (D. Md. 2010) (quoting *Silvestri*, 271 F.3d at 590). Given the threats posed by spoliation, it is well-recognized that courts possess the "inherent power" to impose sanctions as a general deterrence and means of redress against a spoliator engaged in the bad faith destruction or alteration of evidence. *Id.* at 517-18; *see also Davis v. Uhh Wee, We Care Inc.*, No. CV ELH-17-494, 2019 WL 3457609, at *7 (D. Md. July 31, 2019) (courts may order sanctions "to punish bad-faith conduct intended to delay or disrupt the course of litigation or impede the enforcement of a court order."). Indeed, "[t]he ability to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on the other Branches." *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 796 (1987).

Spoliation sanctions are appropriate in proceedings commenced under 28 U.S.C. § 1782 – such as this proceeding. *See In re Gorsoan Ltd.*, 2020 Dist. LEXIS 104025, at *25 (S.D.N.Y. June 15, 2020) (holding that all three spoliation elements have been met and sanctions may be imposed in a 1782 proceeding). That is because recipients of a subpoena in a Section 1782 proceeding "are subject to the same preservation obligations" and therefore may be sanctioned for spoliation. *In re Hulley Enters. Ltd.*, 2017 U.S. Dist. LEXIS 221134, at *3-4 (D.D.C. June 23, 2017); *In re Setraco Nig. Ltd.*, 2013 U.S. Dist. LEXIS 56441, at *9, FN 3 (M.D. Fla. April 19,

6

2013) (noting that in the context of a 1782 proceeding there is a duty to preserve evidence relating to the matter).

Sanctions are warranted where the moving party shows:

> (1) [T]he party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a culpable state of mind; and (3) the evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

*Victor Stanley*, 269 F.R.D. at 520-21. As set forth below, each of these elements is easily satisfied.

## II. THE COURT SHOULD IMPOSE MONETARY SANCTIONS AGAINST RESPONDENT FOR DESTROYING EVIDENCE

Petitioner is able to establish each element for spoliation through clear and convincing evidence. Here, (1) Respondent had a duty to preserve such evidence by no later than October 19, 2020, (2) Respondent acted in bad faith by "routinely" and purposefully deleting evidence subject to the Subpoena, and (3) the deleted evidence was relevant to Petitioner's claims in the Indian Action.

### a. Respondent Had a Duty to Preserve Evidence

As a general matter, a duty to preserve evidence arises the moment that litigation is reasonably anticipated. *See Victor Stanley*, 269 F.R.D. at 521 (citing *Silvestri*, 271 F.3d at 591); *see also Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (noting the duty to preserve exists when there is "some notice that the documents were potentially relevant to the litigation before they were destroyed."). Here, Mr. Moag was placed on notice that he and Moag & Co. may have documents subject to discovery for use in the Indian Action by no later than October 19, 2020, the date that he was personally served with the Subpoena. Siev Decl., Ex. B. Thus, Respondent had a duty to preserve the evidence by October 19, 2020. *Cf. Steves & Sons, Inc. v.*

*Jeld-Wen, Inc.*, 327 F.R.D. 96, 106 (E.D. Va. 2018) ("[C]ourts in the Fourth Circuit have found that the receipt of a demand letter, a request for evidence preservation, a threat of litigation, or a decision to pursue a claim will all trigger the duty to preserve evidence.").

### b. Respondent Acted in Bad Faith by Intentionally Deleting Evidence

A court may exercise its inherent authority to protect the integrity of the judicial process and award sanctions for the spoliation of evidence where the spoliating party has engaged in "bad-faith conduct"—*i.e.*, willful destruction designed to deprive an adversary of the evidence. *See Victor Stanley, Inc.*, 269 F.R.D. at 531.

This Court has found bad faith where a party intentionally destroyed evidence and where the surrounding circumstances raised an inference that the destruction was designed to prevent the discovery of such evidence. In *Hugler v. Chimes Dist. of Columbia Inc.*, this Court found a reasonable basis to infer that a party spoliated evidence in bad faith where the party's claim that "all" emails were deleted was inconsistent with certain documentary evidence that had been produced. No. CV RDB-15-3315, 2018 WL 11201365, at *3 (D. Md. Feb. 6, 2018). Similarly, in *Victor Stanley, Inc. v. Creative Pipe, Inc.*, this Court found bad faith where a party lied about its production and provided inconsistent explanations for its intentional ESI deletions. 269 F.R.D. at 531; *see also Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 644 (S.D. Tx. 2010) (finding a reasonable jury could find that defendants acted in bad faith when they deleted emails and offered an inconsistent explanation for why the emails were deleted).

Here, there is a reasonable basis to infer that Respondent acted in bad faith, as Mr. Moag admits that he intentionally disposed of evidence discoverable for use in the Indian Action. Mr. Moag admitted that he "routinely delete[s] all text messages unless needed for business records" and continued to do so after becoming aware of his obligation to preserve responsive documents.

Siev Decl., Ex. D (Moag Aff.) ¶ 12. Critically, these deletions were performed manually and selectively, not as a result of any automated deletion process. *Id.* Likewise, the forensic examination of Mr. Moag's personal devices confirmed that nearly 90% of the text messages that were previously produced – many in incomplete form, excluding highly relevant portions of those communications – also were deleted and could not be recovered. *Id.* ¶¶ 9-10.

Furthermore, although Mr. Moag claims that he "routinely" deletes his text messages after receiving them – which in and of itself exposes him to sanctions for spoliation – Respondent's production nonetheless contains certain text messages dating as far back as May 15, 2020 – a fact which refutes Mr. Moag's claim that his deletion practices were uniformly applied and that such messages were deleted immediately after receipt, as opposed to after Mr. Moag was served with the Subpoena. For example, Moag & Co.'s production of documents contains the following text message conversations that, if Mr. Moag's claims were true, would not still be in Mr. Moag's possession as of December 13, 2020 when he claims to have compiled those documents:

- A group text message, dated May 15, 2020 (MOAG0000123);
- A text message chain with Petitioner, dating from May 26, 2020 to September 25, 2020 (MOAG0000015-18);
- A text message chain with a third party, dating from July 3, 2020 to November 16, 2020 (MOAG0000124);
- Photographs of a partial text message chain dating from July 16, 2020 – the day the Defamatory Articles were published – to August 1, 2020 (MOAG0000127-28);
- A photograph of a text conversation dated October 2-3, 2020 (MOAG0000126); and
- Screenshots of text conversation with Petitioner's associate, dating from October 2 to December 7, 2020 (MOAG0000130-34).

Siev Decl., Ex. E.

If Respondent's deletions were "routine," these earlier messages presumably would have been deleted sometime in the five months before Respondent was served with the Subpoena. The

9

very existence of these earlier text messages suggests that the deletions were not "routine" but purposeful and selective. As in *Hugler* and *Victor Stanley*, Respondent's intentional destruction of evidence, coupled with the apparent inconsistency of Moag's explanation for the deletions, suggests that the evidence at issue was destroyed purposefully so as to deprive Petitioner of relevant discovery.

Accordingly, Respondent had the culpable mindset of bad faith in deleting the relevant evidence.

### c. The Evidence Destroyed by Mr. Moag is Relevant to the Indian Action and Its Loss Prejudices Petitioner

Destroyed evidence is relevant if "a reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it." *Victor Stanley, Inc.*, 269 F.R.D. at 531. Recognizing that a party should not benefit from its own destruction of evidence, which effectively precludes an objective evaluation of the relevancy of such evidence, the Fourth Circuit presumes the relevancy of evidence when the spoliator acted in bad faith. *Id*. at 532.

As discussed above, Respondent's deletion of evidence was done in bad faith for the purpose of depriving Petitioner of critical evidence. As set forth in Mr. Snyder's Petition, Moag & Co. demonstrated advance knowledge of the Defamatory Article before their publication, as evidenced by Mr. Moag's remarks to third parties about forthcoming negative press concerning Mr. Snyder in early July 2020. Mr. Moag's written communications with third parties concerning those articles, Mr. Snyder and the Team – which, as discussed above, were included among the documents that Mr. Moag deleted – are highly relevant to Petitioner's defamation claims and identifying the underlying sources of the Defamatory Articles. Accordingly, the documents that Mr. Moag deleted indisputably were relevant to the Indian Action, as well as responsive to the

10

Subpoena with which this Court ordered Respondent's compliance. Siev Decl, Exs. A, C. As such, this Court may presume the relevancy of the evidence and the prejudice imposed on Petitioner by Mr. Moag's deletion thereof. *See Victor Stanley, Inc.* 269 F.R.D. at 531 ("Defendants' willful, bad faith conduct allows this Court to presume relevance and prejudice."); *see also Thompson v. United States HUD*, 219 F.R.D. 93, 101 (D. Md. 2003); *Sampson v. City of Cambridge*, 251 F.R.D. 172, 179 (D. Md. 2008).

### d. The Court Should Impose Monetary Sanctions on Respondent for its Intentional Spoliation

Where a party has spoliated relevant evidence in bad faith, courts may exercise their inherent authority and impose monetary sanctions upon the spoliator. *Victor Stanley*, 269 F.R.D. at 518 ("[C]ourts may impose fines … and enforce 'the observance of order'" as a sanction for spoliation."); *Taylor v. Mitre,* 2012 U.S. Dist. LEXIS 163854, at *16 (E.D. Va. Sept. 10 2012) (spoliation sanctions may include "a monetary fine, and/or an assessment of attorney's fees and costs."); *see also Krumwiede v. Brighton Assocs., L.L.C.*, 2006 U.S. Dist. LEXIS 31669, at *24 (N.D. Ill. May 8, 2006) (noting the court has discretion pursuant to its inherent power to impose sanctions for spoliation of evidence including "awarding reasonable expenses."). In *Victor Stanley*, for example, the deliberate, bad faith spoliation of evidence resulted in a monetary sanction consisting of fees and costs not only in association with spoliation motion itself "but also with respect to all efforts expended throughout this case to demonstrate the nature and effect of [defendant's] spoliation." 269 F.R.D. at 540-41.

Here, Petitioner is entitled to at least the same measure of monetary sanctions against Respondent based upon Respondent's repeated and deliberate acts of spoliation — all of which Respondent has admitted under oath. Petitioner will be prepared to further address the amount of such monetary sanctions in subsequent filings should the Court so desire.

# CONCLUSION

Accordingly, Petitioner requests the Court to grant his Motion for Sanctions against Respondent for its intentional spoliation of evidence.

Dated: April 22, 2021

Respectfully Submitted,

REED SMITH LLP

By: /s/Andrew C. Bernasconi
  Andrew C. Bernasconi (MD Bar No. 15780)
  1301 K Street NW
  Suite 1000, East Tower
  Washington, DC 20005
  Tel: (202) 414-9200
  abernasconi@reedsmith.com

  *Attorneys for Petitioner Daniel Snyder*