# EXHIBIT 7

Alex J. Shepard, CA Bar No. 295058
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Telephone: 702-420-2001
ecf@randazza.com

Attorneys for Proposed Intervenor
Marc J. Randazza

# IN THE UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re:*<br><br>Application of Daniel Snyder for an Order Directing Discovery from New Content Media Inc. d/b/a MEA WorldWide Pursuant to 28 U.S.C. § 1782 | Misc. Action No.<br>2:20-mc-00076-MWF-MRW<br><br>**DECLARATION OF MARC J. RANDAZZA IN SUPPORT OF EMERGENCY MOTION TO INTERVENE AND STRIKE**<br><br>*The Honorable Michael R. Wilner* |

I, Marc J. Randazza, declare:

1.     I am over 18 years of age and have never been convicted of a crime involving fraud or dishonesty. I have first-hand knowledge of the facts set forth herein, and if called as a witness, could and would testify competently thereto.

2.     I am the Managing Partner of Randazza Legal Group, PLLC, and I am an attorney licensed to practice in the States of Massachusetts, Florida, California, Nevada, and Arizona.

3.     I have reviewed Petitioner's *Supplemental Ex Parte Petition for Assistance in Aid of a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 to Serve Additional Document Requests and Deposition Topics Identified in Exhibits T and U Hereto,* filed as Dkt. No. 13.

RANDAZZA | LEGAL GROUP

1    4.    Petitioner's Supplemental *Ex Parte* Petition contains a number of false and

2    misleading statements about me which I must correct.

3    5.    The Supplemental *Ex Parte* Petition makes a number of dishonest and

4    defamatory claims, including the facts that I have "worked extensively with [Ari] Bass,"

5    that Mr. Bass and I "have a well-documented history together, much of which has led

6    to this litigation," that Mr. Bass and I "launched a music production label named

7    Randazza Records, which was alleged to have 'breached copyright legislation and

8    stole … an audio track of a musical piece' from an individual named Alexandra Mayers,"

9    and that Mr. Bass and I "stalk[ed], intimidate[ed] and harass[ed]" Alexandra Mayers.

10    6.    These claims are false, and their inclusion in the Supplemental *Ex Parte*

11    Petition are misleading to the Court.

12    7.    Further, even a "moron in a hurry"[1] could not have made these errors

13    innocently.  I am firmly of the opinion that the attorneys who signed this document

14    had to have knowingly misled the court and have attempted, perhaps at their client's

15    behest, to circumvent the defamation laws by engaging in defamation under the shield

16    of the litigation privilege.

17    8.    First, I have not "worked extensively with Mr. Bass."  I have met Mr. Bass

18    a total of three times: once, briefly at an adult film industry convention in Las Vegas,

19    another time, briefly, at another such convention in Los Angeles, and once, when he

20    asked me for comment on a hearing he was observing in Las Vegas.  I declined to

21    comment.

22

23    _____

[1]    See *Morning Star Cooperative Society v Express Newspapers Limited* [1979] FSR 113 for
the first known use of this term in British jurisprudence.  It is quite apt here.

RANDAZZA | LEGAL GROUP

9.     The only other time I can recall ever even speaking to Mr. Bass was on 2 Sept. 2020 when I reached out to him via an email address I found for his public relations company and asked him to call me to discuss this matter.  I believe that this was the most extensive conversation I have ever had with him.  We spent most of the call mocking the lawyers who relied upon the patently unreliable Crystal Cox and Alexandra Mayers as their sources of information.

10.     I have never worked for or with Mr. Bass, and he has never worked for or with me.  We have never collaborated on anything together.  We know of each other and are cordial when we have bumped into each other at conferences.  We most certainly drank one cocktail together, perhaps in or around 2012 or 2013, at the Circle Bar in the Hard Rock hotel during the AVN conference.  That is the extent of our "conspiratorial actions" together.

11.     I am aware that Mr. Bass published a tweet that mentioned "Randazza Records."  This tweet was not serious, and was merely mocking Alexandra Mayers – a stalker against whom my then-wife secured a defamation judgment.  Any person who read it should be able to tell it was not serious.

12.     There is no such thing as "Randazza Records."  The extent of my musical career and endeavors is that in about 1991, I was a member of a band called Frömündä – whose name was derived from a vulgar humorous expression.  The band was about as good as its name.

13.     Mr. Bass and I have never had any business relationship, personal relationship, nor any other relationship whatsoever, aside from what is described in this declaration.

14. Aside from discussing this petition via telephone, after I emailed him a copy of the Supplemental *Ex Parte* Petition, we have hardly ever spoken.

15. Perhaps the only thing that Mr. Bass and I have in common is a stalker, Alexandra Mayers a/k/a Monica Foster.

16. The sources that the petition purports to rely upon are Crystal Cox and Alexandra Mayers.

17. Cox is an extortionist. I have written extensively about that fact, and even someone with the most rudimentary investigative skills or curiosity would have been able to find that fact. (*See, e.g.,* Marc Randazza, "Judge rules, again, that blogger Crystal Cox is not a journalist. You know why? Because she ISN'T a journalist," THE LEGAL SATYRICON (Mar. 30, 2012), attached as **Exhibit A**.)[2]

18. Cox initially tried to extort me to the tune of $5,000 per month.

19. When I refused to pay her, she registered a domain name that corresponded to my then-wife's name and posted insulting information on that website.

20. When that did not have the desired effect, Cox then registered a domain name that corresponded to my then 3 year old daughter's name. (*See* Kashmir Hill, "Ugly New Reputation-Smearing Tactic: Going After a Toddler's Internet Footprint," FORBES (Apr. 2, 2012), attached as **Exhibit B**.)[3]

---

[2] Available at: <https://randazza.wordpress.com/2012/03/30/judge-rules-again-that-blogger-crystal-cox-is-not-a-journalist-you-know-why-because-she-isnt-a-journalist/> (last accessed Sept. 3, 2020).

[3] Available at: <https://www.forbes.com/sites/kashmirhill/2012/04/02/ugly-new-reputation-smearing-tactic-going-after-a-toddlers-internet-footprint/#688b3ab911cd> (last accessed Sept. 3, 2020).

RANDAZZA | LEGAL GROUP

21.     I then sued her.  Early on in the suit, I obtained a preliminary injunction which gave control of many of the domains Ms. Cox was using for her extortion scheme to me.  I wrote about this when it happened.  (*See* Marc Randazza, "This Domain Name Seized from Crystal Cox," THE LEGAL SATYRICON (Dec. 17, 2020), attached as **Exhibit C**.)[4]

22.     Alexandra Mayers did not seek payment from me, but I believe the appropriate term for her is "bat-guano-crazy."  I sued her for defamation, on behalf of my then-wife, and we got a judgment against her.  She, too, is so obviously unreliable that nobody who is even *trying* to be honest would proffer her as a source to the Court.

23.     As to the substance of Petitioner's Supplemental *Ex Parte* Petition, I have had no contact with either New Content Media Inc. or MEAWW.  In fact, I had never even heard of the meaww.com website until Mr. Snyder's private investigators came to my office to inquire as to my relationship with the website.

24.     I informed Petitioner's private investigator, Jim Conklin, of this fact prior to the filing of the Supplemental *Ex Parte* Petition.  I then told him to tell his client to "go fuck himself."  I presume he relayed that message, because I can see no other reason for the retaliatory conduct in this petition.  Mr. Conklin did not tell me on whose behalf he was working.

25.     I have a much stronger tie to Mr. Snyder's private investigators than I have with anyone else in this entire matter –Mr. Conklin was apparently accompanied by a Tony Ricevuto.  Mr. Ricevuto and I have spent quite a bit of time together at Italian

---

[4]     Available at:  <https://randazza.wordpress.com/2012/12/17/this-domain-name-seized-from-crystal-cox/> (last accessed Sept. 3, 2020).

American events, and we have worked together on scholarship matters for Italian students. I have eaten meals with him and would consider him to be a friend, although not a close one.

26. When I did a search of my emails, I found 26 emails that were with Mr. Ricevuto or where he was included in the conversation.

27. So, for all this utterly disingenuous "connection" that Snyder's investigators and lawyers claim to have discovered, it is bizarre that they do not disclose that the only real connection to anyone in this case is with their own investigation team.

28. The only involvement I have with the Petitioner is having once written an article on my blog about a frivolous lawsuit filed by Mr. Snyder. In that article, I rightly mocked him. (*See* Marc J. Randazza, "Dan Snyder is butthurt, SLAPP suit ensues, Ironymeter pegged", THE LEGAL SATYRICON (Feb. 6, 2011), attached as **Exhibit D**.) [5]

29. I also authored an amicus curiae brief on behalf of the First Amendment Lawyers Association in support of the "Washington Football Team," of which Mr. Snyder is the majority owner; *see also Pro-Football, Inc. v. Amanda Blackhorse*, No. 15-1874, Brief of First Amendment Lawyers Association as Amicus Curiae in Support of Plaintiff-Appellant Pro-Football, Inc. (4th Cir. Nov. 6, 2015).

30. The problem with this petition, aside from it being a fraud on the court, is that it is now being picked up by the media as if it is all true. (*See* Mike Florio, "Daniel Snyder pursues a new angle in his defamation case," NBC SPORTS (Sept. 2, 2020), attached to Declaration of Ronald D. Green as *Exhibit B*.)

---

[5] Available at: <https://randazza.wordpress.com/2011/02/06/dan-snyder-is-butthurt-slapp-suit-ensues-irony-meter-pegged/> (last accessed Sept. 3, 2020).

RANDAZZA | LEGAL GROUP

1    31.    While I understand that there is litigation privilege, and thus I might be

2   prohibited from suing these hacks, the Court should act to manage its docket honestly

3   and not tolerate the "creative defamer" that we have encountered here in this case.

4        I declare under penalty of perjury that the foregoing is true and correct.

5        Dated: September 3, 2020.

6                        /s/ Marc J. Randazza
                         Marc J. Randazza

# EXHIBIT A

Marc Randazza

"Judge rules, again, that blogger
Crystal Cox is not a journalist.
You know why?
Because she ISN'T a journalist,"

THE LEGAL SATYRICON
(Mar. 30, 2012)

9/3/20... Judge rules, again, that blogger Crystal Cox is not a journalist. You know why? Because she isn't a journalist. | The Legal Satyricon

Case 2:20-mc-00076-MWF-MRW Document 16-1 Filed 09/03/20 Page 9 of 38 Page ID #:561
Case 1:20-cv-02705-ELH Document 61-7 Filed 05/06/21 Page 10 of 39

# The Legal Satyricon

Occasionally irreverent thoughts on law, liberty, tech, and politics.

## Judge rules, again, that blogger Crystal Cox is not a journalist. You know why? Because she ISN'T a journalist.

For those of you not familiar with the the Crystal Cox "bloggers are not journalists" case, it was a bit of a blogosphere kerfuffle when U.S. District Judge Marco Hernandez ruled that Cox is not a journalist under the definition of Oregon's Shield Law. A number of poorly-researched blog posts went up thereafter, with the blogosphere rallying behind her cause. After all, are bloggers not journalists? (Of course they are, but some are "not like us (http://blog.simplejustice.us/2012/03/30/a-blogger-not-like-us.aspx)" says Simple Justice).

Unfortunately, not very many bloggers/journalists did their homework the first time around. They were sloppy. They read the simple version "Oregon Judge Says Bloggers are not Journalists" and lost their minds to rally around the cause. Had this **actually** been the case, the rally would have been for a good cause. Unfortunately, the rally was sloppy work by sloppy reporters.

Kashmir Hill, unsurprisingly, was not one of the sloppy ones. Her piece is here (http://www.forbes.com/sites/kashmirhill/2011/12/07/investment-firm-awarded-2-5-million-after-being-defamed-by-blogger/).

Kash summed it up well:

> Yes, there are bloggers who are journalists. But just because you have a blog doesn't mean that what you do is journalism.

The back story is this: Oregon attorney Kevin Padrick filed a defamation lawsuit against Crystal L. Cox, a "blogger" from Eureka, Montana (who, is now in Spokane, WA), who operated the website obsidianfinancesucks.com. On that site, she called out Obsidian Finance, LLC, of which Padrick is senior principal. Cox referred to Padrick as a "thug" and a "thief" and accused him of all sorts of conspiratorial wrongdoing. A jury awarded Obsidian Finance $~~2.3~~ $2.5 million in damages—the amount of profits Padrick says his company lost as a result of the blog posts. She claimed to be a journalist, and thus entitled to protection under Oregon's journalist shield law. The court rejected that claim. She moved for a new trial, and lost that motion yesterday. (Order here (http://ia700403.us.archive.org/9/items/gov.uscourts.ord.101036/gov.uscourts.ord.101036.123.0.pdf))

This is normally the kind of thing that raises my hackles. But, only Sith think in absolutes. And only a sloppy lawyer or sloppy blogger/journalist doesn't do a little more research before making the call.

9/3/2020    Case 2:20-mc-00076-MWF-MRW Document 16-1 Filed 09/03/20 Page 10 of 38 Page ID
Case 1:20-cv-02705-ELH    Document 61-7    Filed 05/06/21    Page 11 of 39
#361

According to Kash (http://www.forbes.com/sites/kashmirhill/2011/12/07/investment-firm-awarded-2-5-million-after-being-defamed-by-blogger/), Padrick's firm found that Cox had created nearly 2,000 websites used to write about other companies. Padrick then said that Cox attempted to offer her "PR and search engine services" in order to fix Obsidian Finance's reputation. Sort of like a protection racket.

The message was clear. *Shame about your messed up reputation. I can fix it for you. Never mind that I'm the one who messed it up.*

Hernandez reasoned in his opinion that Cox did not qualify as a journalist. Go figure, given the fact that her writing is barely comprehensible. The only thing clear about it is that she does not seem to write as a journalist or an essayist, but more as an extortionist trying to hide among the bloggers.

In his most recent order, Hernandez lays it out:

> In my discussion, I did not state that a person who "blogs" could never be considered "media." I also did not state that to be considered "media," one had to possess all or most of the characteristics I recited. Rather, I confined my conclusion to the record defendant created in this case and noted that defendant had presented no evidence as to any single one of the characteristics which would tend to establish oneself as a member of the "media." In addition, the uncontroverted evidence at trial was that after receiving a demand to stop posting what plaintiffs believed to be false and defamatory material on several websites, including allegations that Padrick had committed tax fraud, defendant offered "PR," "search engine management," and online reputation repair services to Obsidian Finance, for a price of $2,500 per month. Ex. 33. The suggestion was that defendant offered to repair the very damage she caused for a small but tasteful monthly fee. This feature, along with the absence of other media features, led me to conclude that defendant was not media. (Op. at 13-14 (http://ia700403.us.archive.org/9/items/gov.uscourts.ord.101036/gov.uscourts.ord.101036.123.0.pdf

While many journalists are "off" in their own quirky way, any reasonable person viewing Cox's conduct would conclude that it borders on derangement. Hernandez was right to draw a line, and where he drew it leaves plenty of room for even the most casual blogger to find protection. Hernandez' decision does not say that bloggers are not journalists, it merely says that Crystal Cox is no journalist.

The blogosphere should come to the same conclusion.  The Court's decision does not require one to go to journalism school in order to be deemed a journalist.  It does not require access to sophisticated and expensive research tools or news wires.  Nor does it require writers to have advertisers, the backing of physically printed papers, or affiliation with sizable web portals like the Huffington Post to be considered journalists.  All that is needed is some indicia that the writer discharges the normal duties of reporting – investigation and distribution.

Cox did none of these things.  Therefore, Hernandez denied her the title of "journalist."

What she did do was far worse.  I should know.

Why?

Because she has tried to do the same thing to me that she did to Kevin Padrick.

Without my knowledge, consent or permission, Cox registered the domain name marcrandazza.com. Having learned a thing or two from losing a $2.5 million defamation case, she was slick about her stated rationale — claiming she did so to "control the search, and pr" on her case. (She initially asked me to handle the appeal on her case).

9/3/2020                Case 2:20-mc-00076-MWF-MRW Document 16-1 Filed 09/03/20 Page 11 of 38 Page ID
                                      Case 1:20-cv-02705-ELH   Document 61-7   Filed 05/06/21   Page 12 of 39
                                                                   #:161

Initially, she registered the domain under someone else's name, as she was trying to evade Kevin
Padrick's $2.5 million judgment. She wrote "ownership is well... a different story now due to my current
judgment."

(https://randazza.files.wordpress.com/2011/12/screen-shot-2012-03-29-at-11-09-31-am.png)

Crystal cox "need[ed] to make money" so she asked me if I needed a "very good search engine
reputation manager."  Apparently she offered these same dubious services to David Aman – counsel for
Kevin Padrick and Obsidian Finance – and he accused her of extortion.  I can't imagine why.

Apparently I was not sufficiently threatened by this tactic, so Cox went on to register:

fuckmarcrandazza.com
marcrandazzasucks.com
marcjrandazza.com
marcjohnrandazza.com

She also registered a great many Blogger accounts bearing my name, including
markrandazza.blogger.com.

You know, just like a "journalist" would, right?

Fortunately for me, the work I do is not particularly sensitive to public perception – I am roundly
criticized by both the political right and the left; copyright maximalists and minimalists, and every stripe
of individual in-between.  Fortunately, though, I have friends that understand who I am
(http://www.popehat.com/2012/03/15/marc-randazza-first-amendment-badass/) and what I stand
for.

I understand that others' personal and professional reputations may not be able to weather such a storm.
 Mine could, though, so I continued to ignore Cox.

Then, she pursued my family.

Crystal Cox registered JenniferRandazza.com.

She then registered jenniferrandazza.blogspot.com

9/3/2020　Case 2:20-mc-00076-MWF-MRW　Document 16-1 Filed 09/03/20 Page 12 of 38　Page ID
Case 1:20-cv-02705-ELH　Document 61-7　Filed 05/06/21　Page 13 of 39
#:564

You see a pattern here?

Jennifer is my wife.

(https://randazza.files.wordpress.com/2011/12/screen-shot-2012-03-29-at-11-05-28-am.png)
When this didn't get the desired response, Cox turned to a place where even the lowest of the low would
not stoop — she focused her stalkerish attention on **my three-year-old daughter** and registered
NataliaRandazza.com.

(https://randazza.files.wordpress.com/2011/12/screen-shot-2012-03-29-at-11-05-55-am1.png)



(https://randazza.files.wordpress.com/2011/12/screen-shot-2012-03-29-
at-11-08-23-am.png)
Natalia, living incognito

Just like a "journalist," right?

Being three years old, Natalia naturally has no accomplishments to speak of. To date, she has drawn her
father a bunch of "happys" (which is what she calls smiley faces), and this week, she started being able
to read short words. "DORA" was the first word she read where the concept of letters, sounds, and
words all came together. She can also tackle me when I'm on the floor, and she's progressing well in her
little girls' dance class. While I find these accomplishments mind-blowing, she has attained no notoriety
of which I am aware.

Yet Crystal Cox, "investigative blogger" has turned her attention to this innocent three year old.

This is the kind of person Crystal Cox is, and these are the depths she will sink to when one of her victims spurns her offers to do "search engine reputation management" for them.  This is why she lost her case — not because Judge Hernandez has it in for bloggers.

Crystal Cox claims that David Aman, Plaintiff's counsel in the Obsidian Finance case, accused her of extortion too. A real journalist, David Carr of the New York Times, exposed her conduct in this well-written piece (http://www.nytimes.com/2011/12/12/business/media/when-truth-survives-free-speech.html?pagewanted=all).

The Internet has irreversibly changed the face of news reporting and journalism on the whole.  Many bloggers produce better content than many small, local newspapers, and may even have superior resources.  Regardless of size, bloggers who aspire to journalistic integrity, even if not completely reaching it, should and likely will receive the same protections as reporters if and when the day comes that they need to assert those rights.

In the short run, a "we're all in this together" mentality among bloggers is appealing.  In principle, I agree that the distinction between bloggers and journalists is thin, if it exists at all.  But as uneducated extortionist stalkers like Cox try to wrap themselves in the cloak of journalistic privilege, an outraged public – the people who *elect* the judiciary in much of the country, and certainly vote for representatives who legislate press protections in certain states – will demand that lawmakers roll back these privileges from bloggers and traditional journalists alike.  This is not a case where bloggers should be holding their nose to protect the rights of an unpopular speaker like Glen Beck, Rush Limbaugh, or Andrea Dworkin.  Here, a bad apple must be kept out of the cart, before it spoils the entire crop. Judge Hernandez' opinion "has done real journalists a favor," says David Coursey at Forbes (http://www.forbes.com/sites/davidcoursey/2012/03/29/are-bloggers-really-journalists-not-if-they-ask-for-money/). I agree.

I considered keeping my mouth shut about this idiot. The old maxim says not to wrestle in the mud with a pig. You both get dirty, and the pig likes it.

When she wrote about me, trying to do to me what she did to Kevin Padrick (http://www.nytimes.com/2011/12/12/business/media/when-truth-survives-free-speech.html?pagewanted=all), the blogosphere proved that the cure for bad speech is more speech. Rather, a lot of people proved that maxim, by writing what they thought of me. Fortunately, I had a large enough public reputation and the Google juice to withstand her attacks.

Kevin Padrick didn't have that luxury.

Other people won't have that luxury.

My three year old daughter doesn't have that luxury.

I don't now wrestle with Crystal Cox because I care about her insane, grammatically challenged and barely literate scrawling. Anyone who reads it universally reacts by calling it "batshit crazy." I don't need to defend myself against the likes of her.

I wrestle with her now because I realized that I have a responsibility to. When she attacked me, it had no effect. Then she turned to my innocent wife. Then she turned to my even more innocent three year old daughter. Then, I realized that there were other innocent people out there who she tried to extort, harm, and smear. Some of them contacted me. I needed to speak up for them.

I realized then, thanks to Natalia, that even if I had to wrestle with a pig, I had to do it before Cox causes harm to anyone else. The reason she was able to do what she did to Kevin Padrick was, in part, because nobody had pushed back and put a spotlight on her behavior before. Her loss in the District of Oregon, and the sloppy blogging about the case elevated her credibility.

She needs to be exposed, and bloggers need to reject her.

There is no doubt that the blogging community needs as many protections as it can get, and I believe many bloggers who I read, talk to and work with would qualify for protection under Oregon's shield statute. Crystal Cox did not, does not, and cannot advance this goal. If the blogging community wishes to stand among those with the title of "journalist," then it must reject people like Crystal Cox, and relegate them to their own bizarre, obsessive and child-targeting corner of the Internet.

She is not one of us.

She harms us.

UPDATE: If there is any doubt, Stephanie Studebaker-DeYoung (an apparent acquaintance of Cox's) had this to say about her:

(https://randazza.files.wordpress.com/2012/03/screen-shot-2012-03-31-at-12-28-38-pm.png)

Studebaker-DeYoung was Cox's main source of information in her attacks against Kevin Padrick.

This entry was posted on Friday, March 30th, 2012 at 10:36 am and is filed under misc. You can follow any responses to this entry through the RSS 2.0 feed. Both comments and pings are currently closed.

# 39 Responses to *Judge rules, again, that blogger Crystal Cox is not a journalist. You know why? Because she ISN'T a journalist.*

**Clint says:**
March 30, 2012 at 10:47 am
I hate it when I agree with you.

**Eddie says:**
March 30, 2012 at 11:36 am
Wow. Now I see why there were so many blogs dedicated to you being a "First Amendment bad ass". This woman must really be crazy to spend not only the time and effort but the money that she does to register all those domain names. Pretty sad.

**Dan says:**
March 30, 2012 at 11:55 am
Woah. I did not expect the post to unfold the way it did. I have three children, all six and under. I can imagine the fury you felt when you saw that your daughter's name was used this way. This is a well-thought out, restrained response to a rather deplorable effort to get a rise out of you. Good job.

**Talon's Point says:**
March 30, 2012 at 11:57 am
The ruling was flawed. The result will be a later use as precedence for chilling speech. Understand that I do not believe her "protection racket" was protected speech. However, the judge had no need to define "journalist" as if the courts have jurisdiction in defining the terms of free speech and commerce.

When all is said and done the judge could have sidestepped her claim of protection by saying "no matter what you define yourself as, you were acting to harm someone else for financial gain from them, making your action a form of extortion just as if a famous journalist were to contact a subject of a story and promise to make their problem "go away for a nominal fee."

**Ja says:**
March 30, 2012 at 7:01 pm
I should never engage in a conversation about stuff I have only read a little bit about and I admit that I have not been following this story, but I think — was one of the issues here the state's shield law?

That makes it more complicated.

We have a free press. You can't stop someone from defaming you, you can only get damages from them after the fact. That's how it should be, otherwise we gag people. She is free to defame and free to be dragged back into court to pay for it until she starts to realize it doesn't pay. (I hope that is very soon)

She can also be slammed for what looks like extortion.

But the shield law is another matter. I haven't read Oregon's but they usually protect media from discovery of their inner workings, their sources, notes, interview tapes, video outtakes etc on the argument that news dissemination is so crucial to democracy that chilling it would harm citizens ability to know what their government is up to. If whistle-blowers saw reporters as agents of the government, able to be hauled in on every story to spill their notebooks, they would never go to

reporters and without that recognition by the courts (on First Amendment arguments adapted to the purpose of the press at least, in the absence of a shield law) reporters would never be able to protect a whistle-blower.

No one believes that the Wash Post should have suppressed the Watergate story — all gleaned from a confidential informant. No one believes that it would have been better for authorities to raid the Wash Post offices and take their notebooks, phone records and stop the whistle-blower that way. This is the kind of crucial reporting to a democracy that was used to justify the shield laws.

Unfortunately, it comes with a danger zone. It flirts ever so closely to defining journalists. It slides ever so easily into creating a class of semi-licensed media elites. That's why a lot of journalists say the heck with it, it's better to go to jail, not have a special law, fight each subpoena on the first amendment and so on. Purests.

I am among the purests because I am convinced the danger is too great. And I am not only a journalist, but I stared down a subpoena once too, in a state that had no shield law. It wasn't unscary.

Anyway, this Cox person is a fright. There is yellow journalism and not yellow. The extortion puts her in a whole different category, well, almost. The National Enquirer is yellow-fiction journalism. Minnesota newspapers of yesteryear were yellow and court cases involving them laid down the law against prior restraint of the press.

(For a good short book, read "Minnesota Rag")

In the old days you would hear of newspapers doing shake downs of subjects that wanted to stop bad press about themselves.

In the era of the shield law all of this is being handled differently, with more complexity and in some ways more risk to a free press.

I want to read — well I dread it actually so let's say I would have to read the whole case to learn why they could not just sue her for extortion and defamation without the shield law being invoked.

**geekhideout says:**
March 30, 2012 at 12:25 pm
Wow.. what to say about that..

Being a dad myself to two beautiful girls, both teenagers now (hence my insanity) I can say that your restraint on not committing acts of bodily harm on this batshit lunatic of the nth degree to be remarkable. Has anyone asked for a court ordered psychological examination of her brain because I'm concerned that she might be a danger to herself and others with the animosity and vitriol she is spewing forth at this stage in what could only be classified as the onset of a major mental disorder(s).

Also for someone claiming to be a journalist and a "reputation manager" you would naturally suspect that her own name with the addition of sucks would of been one of the first things she registered online, just to remove it.. you would suspect that but strangely it is still available.

Oh and DORA is great, though soon The Wiggles will be everywhere with their big red cars and hot potato songs (it's an Aussie conspiracy).. Insanity as a Dad awaits you and its fantastic ;)

**keithrl** says:
March 30, 2012 at 12:53 pm
That's about as low as it gets. What a loon.

**blueollie** says:
March 30, 2012 at 2:23 pm
Hmmm, I follow your blog but was completely unaware of all of this.

You know that you are famous when you have a xxxxsucks.blogspot.com just for you. :)

**Please enter your name here** says:
March 30, 2012 at 4:09 pm
Wow. Going after a 3-year-old.

This lady needs help. And I don't mean the legal kind.

**Ronald Pottol** says:
March 30, 2012 at 7:09 pm
Well, and stuff like this is how England got their wonderful (hah) libel laws. The tabloids were blackmail rackets, pay up, or see what we print about you. Or so Aleister Crowley wrote about their behavior around 1900 in his Autohagiography.

**Crystal Cox – Investigative Blogger? No, More Like A Scammer and Extortionist « Philly Law Blog** says:
March 30, 2012 at 9:47 pm
[…] bad that's exactly what Crystal Cox did. Twice […]

**mamamara** says:
March 30, 2012 at 10:53 pm
And this is why I was one of those who posted nice things about you, even though you have no idea who I am. That kind of smear campaign is bad for all of us and needs to be nipped in the bud by rational people.

**"Investigative Journalist" Crystal Cox's Latest Target: An Enemy's Three-Year-Old Daughter | Popehat** says:
March 31, 2012 at 1:21 am
[…] that with her email to Marc Randazza, telling him that she had already registered http://www.marcrandazza.com, and needed money, and she had […]

**Fraud Files Blog** says:
March 31, 2012 at 10:14 am
[…] work for a traditional news outlet, and was "just" a blogger. The thing is, whether a journalist or not, the defamation claim seems clear […]

**marklyon** says:
March 31, 2012 at 12:00 pm
I'm amazed she hasn't registered crystalcoxisanutjob.com or crystalcoxextortionist.com.

9/3/2020          Case 2:20-mc-00076-MWF-MRW Document 16-1 Filed 09/03/20 Page 18 of 38 Page ID
                    Case 1:20-cv-02705-ELH   Document 61-7   Filed 05/06/21   Page 19 of 39
                    #:373

**OhEmGee** says:

March 31, 2012 at 12:52 pm

this sounds like the Deb Frisch case all over again

**Defending People » Crystal Cox** says:

March 31, 2012 at 2:47 pm

[…] Cox tried to extort Marc Randazza by registering multiple domain names including his name and offering him the same […]

**dan** says:

April 1, 2012 at 6:35 am

One wonders what Cox did to the poor judge who had the nerve to find for the other side? I'm afraid to do a domain search on Judge Hernandez :(

On the bright side this is becoming more and more something that walks like RICO, quacks like RICO and has multiple predicate acts in multiple states. They may have to call it riCOX in her case

**AlphaCentauri** says:

April 1, 2012 at 1:22 pm

RICO refers to corrupt organizations. Judging from her writing and capitalization style, her brain doesn't even qualify as organized.

**Crystal Cox – Trial Theory** says:

April 1, 2012 at 7:20 pm

[…] NY Times, and thanks to an explosion in the blogosphere following Crystal Cox's attacks on First Amendment Lawyer Marc Randazza, the truth came out about what really […]

**WP** says:

April 1, 2012 at 7:56 pm

I do hope that you will make a very good example of this person about the fact that cyber bullying and identity theft (through domain registrations) is a crime!

Good luck with this case.

> **marcorandazza** says:
>
> April 2, 2012 at 8:52 am
>
> I'm not terribly interested in doing that. I'm much more interested in illustrating that extortion schemes are not journalism.

**A shield law for bloggers? OK, but not for extortionists. | Nobody's Business** says:

April 1, 2012 at 11:36 pm

[…] marcjrandazza.com, and marcjohnrandazza.com. When that didn't get her anywhere, Marc says, she registered several domain names containing "Jennifer Randazza" — Mark's […]

**Crystal Cox - NYTimes.com** says:

April 2, 2012 at 7:22 am

[…] a number of bloggers applauded the decision, including Marc Randazza, who writes The Legal Satyricon blog and had been asked to represent Ms. Cox on appeal: Hernandez was right to draw a line, and […]

**Crystal Cox is not a member of the media « Siouxsie Law** says:

9/3/2020　Case 2:20-mc-00076-MWF-MRW Document 16-1 Filed 09/03/20 ISP Page 19 of 33 Page ID
Case 1:20-cv-02705-ELH　Document 51-7　Filed 05/06/21　Page 20 of 39
#:371

April 2, 2012 at 9:26 am

[…] To read a personal and detailed account of just how Ms. Cox operates her scheme, click here. […]

**Ugly New Reputation-Smearing Tactic: Going After A Toddler's Internet Footprint - Forbes** says:

April 2, 2012 at 11:33 am

[…] via Judge rules, again, that blogger Crystal Cox is not a journalist. You know why? Because she ISN'T …. […]

**Susan Tillotson Bunch** says:

April 2, 2012 at 6:03 pm

Marc,

As usual, you never fail to impress! Tremendous article! Definitely food for thought. Also some good ideas on types to avoid at all costs ….

> **marcorandazza** says:
> April 2, 2012 at 6:07 pm
> Sometimes, you don't know that someone is a nutcase until you let them in the door…

**Mario K. Cerame** says:

April 2, 2012 at 11:41 pm

It looks like she has been a fundamentally bad person. I'm sorry for what she's done to you and yours. Sincerely.

Looking at the legal perspective, I do think the <u>opinion</u> at I.B.2 is wrong. Flat wrong. The "press" in "<u>freedom of speech and of the press</u>" is not an institutional media–it is an individual right to use a printing press, and the right to publish. It has always been understood to be coextensive with the individual right to speech, from <u>the first treatise on the Constitution</u> to <u>Citizens United</u>. 130 S. Ct. 876, 904, 906-08 (2010). I'm not saying this issue is dispositive of her case. I'm not saying she's right, or that she should win. I'm saying it doesn't matter for First Amendment purposes whether Cox is "media" or not. It matters for Oregon statutory purposes, it seems. But not under the federal constitution.

Yes, Justice Stewart advocated reading of the press clause as holding higher protections for some institutional press than what would be afforded to general individuals. Yes, some concurring opinions and dissents have as well. No majority U.S. Supreme Court opinion has ever distinguished rights of a member of the media from those offered to ordinary individuals. There have only been holdings to the contrary. Judge Hernandez's opinion doesn't rely on precedent–he apparently relies on some absence of precedent. It would be very bad for the freedom of speech and of the press if he were right. Thankfully, he is not.

At the founding, there was no institutional media or institutional press. But many individuals used the (printing) press to publish their ideas–it was cheap, efficient and convenient. Today people use the interwebs to publish their ideas for the same reason.

Again, I am not saying she is right. I am saying I.B.2 is wrong.

**» Crystal Cox's 5th Amendment Rights** says:

April 3, 2012 at 2:55 am

9/3/2020
Case 2:20-mc-00076-MWF-MRW Document 16-1 Filed 09/03/20 Page 20 of 38 Page ID
Case 1:20-cv-02705-ELH Document 61-7 Filed 05/06/21 Page 21 of 39

[…] Worse still :: Jennifer and Marc Randazza have done some :: Dangerous TO the LibertieS of Fundmental 1031 BankrupPts :: breeding … forcing Crystal Cox Investigative Cyber Extortionist to do what any hero of free speech would do … register a website in the name of their three-year old daughter :: who can be seen here now forced into pigtail-incognito. […]

**The Evolution of Crystal Cox: Anatomy of a Scammer « Philly Law Blog** says:
April 3, 2012 at 11:26 am
[…] this point, it's old news that attorney Kevin Padrick and Obsidian Financial got a $2.5m verdict against Cox when she tried the shakedown on them. In the defamation lawsuit, Padrick and Obsidian contended […]

**Anonymous Insider** says:
April 3, 2012 at 3:22 pm
>>Studebaker-DeYoung was Cox's main source of information in her attacks against Kevin Padrick. <<

Indeed, Cox wrote on December 24, 2009:

"My Blog on Obsidian Finance is based mostly on what I learned through reading Stephanie Studebaker DeYoung's Blog after it was brought to my attention by a disgruntled party." [ http://www.anonymous-insider.net/blogging-astroturfing/research/2009/1224-a.html ]

See a timeline on Studebaker-DeYoung and Cox at http://www.anonymous-insider.net/blogging-astroturfing/kevin-padrick-v-crystal-cox.html

Cheers,

AI

**Fraud Files Blog** says:
April 4, 2012 at 1:59 pm
[…] original story is about Kevin D. Padrick and Obsidian Finance, who won a $2.5 million judgment against Crystal for her defamation of them.  A jury determined that Cox indeed defamed Attorney Padrick and Obsidian Finance, and held her […]

**Scams, exploitation, adaptation and delusion « blueollie** says:
April 5, 2012 at 8:47 pm
[…] reputation services" at a steep fee. Read the details here. I was alerted to this story by Randazza, who was the subject of one of her attacks. Like this:LikeBe the first to like this […]

**Crystal Cox: Is Philly Law Blog Part of a Big Awesome Media Conspiracy, Along With Above the Law? I Sure Hope So! « Philly Law Blog** says:
April 5, 2012 at 10:51 pm
[…] declined. Cox then bought domain names involving Marc's wife and three year old child, and has engaged in an anti-Randazza campaign similar to what she did to […]

**Bloggers as journalists are entitled to shield law protection** says:
April 11, 2012 at 3:15 pm
[…] Randazza, calling on New York Attorney Scott Greenfield's comments on the ruling, makes clear it's about Cox , personally, and not whether bloggers are entitled to shield protection. Hernandez was right to […]

9/3/2020                    Judge Rules Again That Blogger Crystal Cox Is Not A Journalist. You Know...Why? Because She Isn't A Journalist. | Legal Satyricon

**Very Few Things Leave Me Speechless… this did: « Philly Law Blog** says:

May 1, 2012 at 10:33 am

[…] Cox rose to a particular level of notariety after going after Marc Randazza's three year old daughter. As you might imagine, bringing a three year old child into the mix didn't play […]

**Bloggers are not journalists. | Theresa Mark** says:

May 31, 2012 at 9:03 pm

[…] Bloggers are not journalists. […]

**Chris Mark** says:

May 31, 2012 at 9:19 pm

Thanks Marc for outlining the case. I was (until today) one of those who took offense at the findings of the case. I am ashamed to say that I had not done my own homework on the case. Thanks again.

Blog at WordPress.com.

Case 2:20-mc-00076-MWF-MRW   Document 16-1   Filed 09/03/20   Page 22 of 38   Page ID
Case 1:20-cv-02705-ELH   Document 61-7   Filed 05/06/21   Page 23 of 39
#:574

# EXHIBIT B

Kashmir Hill,

"Ugly New Reputation-Smearing Tactic:
Going After a Toddler's Internet Footprint,"

FORBES
(Apr. 2, 2012)

9/3/2020    Case 2:20-mc-00076-MWE-MRW    Document 16-1    Filed 09/03/20    Page 23 of 38    Page ID
            Case 1:20-cv-02705-ELH    Document 51-7    Filed 05/06/21    Page 24 of 39
                                                        #4 37

≡    **Forbes**    Hi, Trey ⌄    🔍

Apr 2, 2012, 12:33pm EDT

# Ugly New Reputation-Smearing Tactic: Going After A Toddler's Internet Footprint

 **Kashmir Hill** *Former Staff*
Tech
*Welcome to The Not-So-Private Parts where technology & privacy collide*

🕐 This article is more than 8 years old.

f    These days, you shouldn't worry
     just about your own online
🐦   reputation but that of your
     children should you get on the bad
in   side of a person who is willing to
     resort to ugly tactics in digital
     battles.



Crystal Cox, a Montana woman
who calls herself an "investigative
journalist," was slapped with a
$2.5-million judgment last year
for defaming an investment firm

Natalia Randazza, 3, already has
to worry about her online
reputation thanks to a blogger
targeting... [+]

and one of its lead partners. Cox had taken control of the
Google footprint of Obsidian Finance and its principal Kevin
Padrick by writing hundreds of posts about them on dozens
of websites she owned, inter-linking them in ways that made
them rise up in Google search results. It ruined Obsidian's
business due to prospective clients being put off by the firm's
seemingly terrible online reputation. After Obsidian sued
Cox, she contacted them offering her "reputation services;"
for $2,500 a month she could "fix" the firm's reputation and
help promote its business. (In some circles, we call that
"extortion.")

Nonetheless, when the outrageously high judgment came
down, some bloggers rushed to Cox's defense, in great part
because the judge declared Cox not to be a member of the
media in a poorly-written opinion that some interpreted to
mean that bloggers generally couldn't claim legal protections
for members of the press. So First Amendment-loving
lawyers, including Eugene Volokh of the Volokh Conspiracy
and Matthew Zimmerman at the Electronic Frontier
Foundation, offered Cox their services in appealing the case
and attempting to get a new trial. (They were denied this
week, with the judge clarifying that bloggers can be
journalists, but that Cox is a serial harasser, not a journalist.)
Another lawyer, Marc Randazza, had also spoken with Cox
about her case; after deciding not to work with him, Cox sent
him an email letting him know that she "needed to make
money" and was willing to offer him her reputation
management services. In fact, she had already bought his
domain name (marcrandazza.com). Randazza writes on his
blog:

Recommended For You    ⌃

What Data Are Being Collected About COVID-19 And Who Is Using It?

How Are Credit Scores Being Impacted By COVID-19?

9/3/2020
Case 2:20-mc-00076-MWF-MRW   Document 16-1   Filed 09/03/20   Page 24 of 38   Page ID
Case 1:20-cv-02705-ELH   Document 64   Filed 05/06/21   Page 25 of 39
#:378
Can Non-Estate Developers Prove a Successful Promise?

> Apparently I was not sufficiently
> threatened by this tactic, so Cox
> went on to register:
>
> fuckmarcrandazza.com,
> marcrandazzasucks.com,
> marcjrandazza.com,
> marcjohnrandazza.com
>
> She also registered a great many
> Blogger accounts bearing my name,
> including markrandazza.blogger.com.
>
> via Judge rules, again, that blogger
> Crystal Cox is not a journalist. You
> know why? Because she ISN'T a
> journalist. « The Legal Satyricon.

(For disclosure's sake, I should mention that Cox also began blogging about me repeatedly around this time using the same tactics she used on Obsidian and Padrick, because I was the first to write a critical article about her tactics. When David Carr of the New York Times followed suit he also attracted her ire. In addition to frequent blog posts about Carr she bought the url 'davidcarrsucks.com'.)

Because Randazza (like David Carr and myself) writes frequently online he had a pretty solid handle on his online reputation (unlike bankruptcy lawyer Kevin Padrick), so Cox was unable to make much headway in ruining his Google search results with her domain-name buying and blogging. So she moved on to Randazza's family members who did not have much online content associated with their names. She bought the domain name for Marc's wife, Jennifer Randazza (and has already started dominating her first page of Google results with her hyperbolic posts). When Randazza still wouldn't buy her services Cox moved on to a younger member of the family:

> When this didn't get the desired
> response, Cox turned to a place
> where even the lowest of the low
> would not stoop — she focused her
> stalkerish attention on my three-
> year-old daughter and registered
> NataliaRandazza.com.
>
> via Judge rules, again, that blogger
> Crystal Cox is not a journalist. You
> know why? Because she ISN'T a
> journalist. « The Legal Satyricon.

The search engine results for **three-year-old** Natalia Randazza are at this time dominated by content from her father, including a 'the baby has arrived' blog post with accompanying wrinkly newborn photo and a few YouTube baby videos (classics like "Natalia's first bath"). There's also a page by some confused data grabber that suggests Natalia and Marc Randazza are business associates. Perhaps due to the negative attention Cox took down the content she had started publishing on the nataliarandazza.com site.

Randazza's struggle with Cox is representative of a much larger battle being waged on the Internet pitting free speech against our rights to protect our reputations. Randazza, a lawyer who has in his career fought to protect lots of troubling speech, understands this tension more than most. Yet he writes:

> Fortunately, I had a large enough
> public reputation and the Google

9/3/2020
Case 2:20-mc-00076-MWF-MRW   Document 16-1   Filed 09/03/20   Page 25 of 38   Page ID
Case 1:20-cv-02705-ELH   Document 61-7   Filed 05/06/21   Page 26 of 39
#:317

juice to withstand her attacks.

Kevin Padrick didn't have that luxury.

Other people won't have that luxury.

My three year old daughter doesn't have that luxury...

There is no doubt that the blogging community needs as many protections as it can get, and I believe many bloggers who I read, talk to and work with would qualify for protection under Oregon's shield statute.  Crystal Cox did not, does not, and cannot advance this goal.  If the blogging community wishes to stand among those with the title of "journalist," then it must reject people like Crystal Cox, and relegate them to their own bizarre, obsessive and child-targeting corner of the Internet.

She is not one of us.

She harms us.

via Judge rules, again, that blogger Crystal Cox is not a journalist. You know why? Because she ISN'T a journalist. « The Legal Satyricon.

Cox is an outlier. Her tactics are extreme ones. But we do now live in a world where money can be made from ruining reputations and then offering to fix them. In the business world there is RipOffReport.com, a site that hosts negative reviews of businesses and offers a paid "ambassador program" to those businesses to help them improve the reviews on the site. There's also a series of sites that dig up people's mug shots from public records and post them so that they appear in those people's search results; they then offer to take them down for a fee.

How do we draw the line between speech rights and digital forms of extortion? It is not a new question for us in the Internet age, but it remains an unanswered one.

 **Kashmir Hill**

Follow

I'm a privacy pragmatist, writing about the intersection of law, technology, social media and our personal information. If you have story ideas or tips, e-mail me at khil... **Read More**

Print                                                                        Reprints & Permissions

Case 2:20-mc-00076-MWF-MRW  Document 16-1  Filed 09/03/20  Page 26 of 38  Page ID
Case 1:20-cv-02705-ELH  Document 61-7  Filed 05/06/21  Page 27 of 39
#:378

# **EXHIBIT C**

Marc Randazza,

"This Domain Name Seized from Crystal Cox,"

THE LEGAL SATYRICON
(Dec. 17, 2020)

9/3/2020 Case 2:20-mc-00076-MWF-MRW This Domain Name Seized from Crystal Cox | The Legal Satyricon Page 27 of 38 Page ID
#:579
Case 1:20-cv-02705-ELH Document 63-7 Filed 05/06/21 Page 28 of 39

# The Legal Satyricon

Occasionally irreverent thoughts on law, liberty, tech, and politics.

# This Domain Name Seized from Crystal Cox

A number of domain names, formerly registered by the well-known cyber-extortionist, Crystal Cox, now forward to this post.

On Nov. 30., the World Intellectual Property Organization awarded six of them to me in **Randazza v. Cox**, WIPO Case No. D2012-1525 (https://randazza.files.wordpress.com/2012/12/randazza-v-cox-decision-d2012-1525-highlighted.pdf). (Cox's commentary on the case is here (http://www.francisgurry.com/2012/12/open-letter-to-wipo-director-francis.html))

On Dec. 14, the United States District Court in Las Vegas issued a TRO seizing the rest. See **Randazza v. Cox**, 2:12-cv-02040 (https://randazza.files.wordpress.com/2012/12/cox-order-on-tro1.pdf) (D. Nev. Dec. 14, 2012)

I prefer not to comment much on the cases themselves, as there has been plenty of that from third party media sources. However, I have put up this post so that any of the seized domain names can point to this post. If you represent any of Cox's other victims, feel free to email me and I'll be pleased to share my pleadings in these cases.

Here are some selected press accounts of the story:

**Forbes**: Hill, Kashmir, "Ugly New Reputation-Smearing Tactic: Going After a Toddler's Internet Footprint (http://www.forbes.com/sites/kashmirhill/2012/04/02/ugly-new-reputation-smearing-tactic-going-after-a-toddlers-internet-footprint/)" Forbes.com, April 2, 2012.

**New York Times**: Carr, David, "When Truth Survives Free Speech (http://www.nytimes.com/2011/12/12/business/media/when-truth-survives-free-speech.html?pagewanted=all&_r=0)" New York Times, Dec. 11, 2011.

**Philly Law Blog**: Rushie, Jordan, "The Evolution of Crystal Cox: Anatomy of a Scammer (http://phillylawblog.wordpress.com/2012/04/03/the-evolution-of-crystal-cox-anatomy-of-a-scammer)" Philly Law Blog, April 3, 2012.

**Forbes**: Coursey, David. "Are Bloggers Really Journalists? Not If They Ask for Money (http://www.forbes.com/sites/davidcoursey/2012/03/29/are-bloggers-really-journalists-not-if-they-ask-for-money/)" Forbes.com, March 29, 2012.

9/3/2020                                              This Domain Name Seized from Crystal Cox | Randazza Legal Group

Case 2:20-mc-00076-MWF-MRW   Document 16-1   Filed 09/08/20   Page 28 of 38   Page ID
Case 1:20-cv-02705-ELH   Document 61-7   Filed 05/06/21   Page 29 of 39
                                                      #:193

**Forbes**: Hill, Kashmir. "Why An Investment Firm Was Awarded $2.5 Million After Being Defamed By Blogger (http://www.forbes.com/sites/kashmirhill/2011/12/07/investment-firm-awarded-2-5-million-after-being-defamed-by-blogger/)" Forbes.com, Dec. 7, 2011.

**PopeHat**: White, Ken. "Crystal Cox: Not a Free Speech Advocate (http://www.popehat.com/2012/04/04/crystal-cox-not-a-free-speech-advocate/)" Popehat, April 4, 2012.

**National Public Radio**: Garfield, Bob. "Combating 'Bad' Speech with More Speech (http://www.onthemedia.org/2012/apr/06/combating-bad-speech-more-speech/)" NPR, On the Media Episode on April 6, 2012.

**Photography is Not a Crime**: Miller, Carlos. "Blogger Must Act Like Journalist To Be Treated Like One (http://www.pixiq.com/article/montana-blogger-must-start-acting-like-a-journalist)" Pixiq, December 9, 2011.

I expect even more loony tunes to follow.

This entry was posted on Monday, December 17th, 2012 at 5:40 pm and is filed under misc. You can follow any responses to this entry through the RSS 2.0 feed. Both comments and pings are currently closed.


# 14 Responses to *This Domain Name Seized from Crystal Cox*

**tsaoutofourpants says:**
December 17, 2012 at 5:43 pm
Nice work, Marc! :) Beating Ms. Cox in court must be a little like taking candy from a retarded baby, but it needed to be done nonetheless!

**SA says:**
December 17, 2012 at 6:24 pm
She seems determined to prove Ken @ Popehat correct: that pro se means, roughly, "mentally unbalanced and currently unmedicated."

It'd take a LOT of medication for me to think it was a good idea to register domains in the name of WIPO higher-ups (Francis Gurry, Edward Kwakwa) in order to post rants there immediately after WIPO ruled against me.

**tsaoutofourpants says:**
December 18, 2012 at 9:59 pm
lol… I spend every day fighting the presumption that I'm mentally unbalanced and currently unmedicated. ;) It's really a shame that "pro se" is the slur that it is.

**greenerpastures says:**
December 17, 2012 at 7:42 pm
A lesson to the Crystal Coxes of the world: this is what happens when you take on someone exponentially smarter than you.

**Art H. says:**
December 17, 2012 at 9:24 pm
WTF? One day I'm minding my own business reading the fine musings at my favorite website and top bookmark, fuckmarcrandazza.com, and the next I'm here? What just happened to my world?!?

> **jackassletters.com (@jackassletters)** says:
> December 18, 2012 at 12:25 pm
> Whois data for: fuckmarcrandazza.com
>
> MARC J. RANDAZZA c.o. Randazza Legal Group
> 6525 West Warm Springs Rd
> Ste. 100
> Las Vegas, Nevada 89118
>
> I was really hoping Marc would do something more entertaining than point to a blog post.

**Jordan Rushie** says:
December 17, 2012 at 9:59 pm
One thing I'm surprised no one has mentioned… Crystal managed to beat Proskauer under what were seemingly identical facts. What happened differently here?

After reading both briefs, one thing was clear – Marc captured the narrative. Yeah, Proskauer cited a lot of law and made well reasoned arguments, but it came off like a mega law firm trying to bully a poor little internet user.

Marc's brief told the story – a stalker, an extortionist, and someone who is doing very bad things. When you read it, all you can think is "Holy shit, that is just wrong!"

Result: Proskauer loses, Randazza wins.

I'm sure there's a moral here…

**"Adam Steignbaugh" is Cybersquatting Chance Trahan « Satirical Takedown Lawyer/Hammer** says:
December 17, 2012 at 10:20 pm
[…] on his name). And as much as you hate him, perhaps you should also have a talk with Marc Randazza, who was just granted control over legitimate cybersquatting pages created by Crystal […]

**SA says:**
December 17, 2012 at 11:25 pm
Crystal's response to the initial filing in this case didn't do her any favors. It was yet another spewfest of accusations. What I found particularly amusing was that not once in the entire response did she mention the disputed domains, nor any of the specific claims.

Marc's beautiful step-by-step, point-by-point breakdown and analysis gave her a perfect platform for detailing *why* "it's not what it looks like, Judge". Yet she uses the platform to say, basically: "HE'S A LIAR AND A HORRIBLE PERSON!"

You could hardly ask for a more glaring contrast between filings. Was she this incomprehensible in the Proskauer case?

**G Thompson** says:

<u>December 18, 2012 at 4:34 am</u>

Wouldn't part (B) and (C) of the TRO also forbid Ms Cox from doing exactly what she is still doing on her own named website at crystalcox [dot] com? On one hand I would think part (B) is very wide and fraught with dangers re your own First Amendment (though I'm a foreigner who knows not of your TRO mechanisms)… but on the other hand I absolutely agree since it is the minimum I myself would expect under equity (and I can't stop smiling and saying F*** Yeah!!)

Though looking at that website (I'm loathe to call it a blog) your name as of this comment time stamp is all over the thing and even within the html title tag, etc. Or is there a leeway time period of when she has to do what the order states that I'm not getting? ie: Business hrs or some weirdness

And Jordan, WIPO is a tribunal setting where logical, quasi-emotional, equitable, and plain English briefs will always work best. They are meant to be non-adversarial hearings where the average layperson feels like they are on an even footing. and is EXACTLY why Proskauer would of come off looking like a bully.

Plus Marc's briefs are always full of awesomeness with a dash of snark and a pinch of plain old 'everyman' in them ;)

**<u>Cephas Q. Atheos</u>** says:

<u>December 18, 2012 at 8:32 am</u>

Well fought, Marc. You deserve better, personally and professionally (WRT the TRO at least), but I'm really glad you allowed us to "participate".

I think Ms. Cox has now been officially "Marced" :D

… which brings me to the most troubling thing about all this. She obviously needs medical help, and I'm not being snarky. She really, really needs someone to intervene before she does herself some real – irreversible – harm. She doesn't seem to fit the profile of a physical stalker, she's too emotive and illogical and needs instant gratification too much for that. But I've seen this exact same vocal behaviour in two ex-friends of mine (ex as in 'no longer with us', one on my watch, to my everlasting shame), and I'm wondering if there's any way she could be made to get preventative treatment before she becomes "the late Crystal Cox, cyberbully, with undiagnosed and terminal mental health issues". Or can that only happen voluntarily?

Please note, I'm not advocating some kind of fascist suppression, I'm genuinely concerned. (In the interest of full disclosure : but for modern psychological chemistry and an incredibly supportive partner, I could so easily be her).

In any case, glad you've made it with your integrity intact. Well done!

**<u>jackassletters.com</u> (@jackassletters)** says:

<u>December 18, 2012 at 12:33 pm</u>

One of the sucky things to me is this kind of tactic puts a burden on the winner. Domains cost $7 a year. We're talking a bunch of domains, so anywhere between $35 and $100 a year to renew or they go back in the pool of availability. Times this by the number of decades Marc has left to live and he's forced into spending money for defensive registrations.

9/3/2020

Case 2:20-mc-00076-MWF-MRW Document 16-1 Filed 09/08/20 Page 31 of 38 Page ID
Case 1:20-cv-02705-ELH Document 61-7 Filed 05/06/21 Page 32 of 39

This was one of the things I loved about the whole Glenn Beck thing:
http://knowyourmeme.com/memes/glenn-beck-rape-murder-hoax When Marc's client gave the
rights to that site to Beck it put poor Glenn in a position of either renewing
GlennBeckRapedAndMurderedAYoungGirlIn1990.com for perpetuity or letting someone else snatch
it up.

To some people these sums are trifling amounts and the cost of business. To me…I'd rather have a
dinner out once a year than pay to reserve fuckchristopherjorgensen.com (and others) for the rest of
my life.

**Nicholas Weaver** says:
December 18, 2012 at 4:11 pm
For those who are curious, all the filings are now archived in Recap:
http://ia601205.us.archive.org/2/items/gov.uscourts.nvd.91330/gov.uscourts.nvd.91330.docket.html

**Crystal Cox is NOT A Journalist Is This Good News? | Parents Rights Blog** says:
December 27, 2012 at 2:36 am
[…] Click here to read more >> This Domain Name Seized from Crystal Cox. […]

Blog at WordPress.com.

Case 2:20-mc-00076-MWF-MRW   Document 16-1   Filed 09/03/20   Page 32 of 38   Page ID
Case 1:20-cv-02705-ELH   Document 61-7   Filed 05/06/21   Page 33 of 39
#:584

# EXHIBIT D

Marc J. Randazza,

"Dan Snyder is butthurt,
SLAPP suit ensues, Ironymeter pegged",

THE LEGAL SATYRICON
(Feb. 6, 2011)

# The Legal Satyricon

Occasionally irreverent thoughts on law, liberty, tech, and politics.

# Dan Snyder is butthurt, SLAPP suit ensues, Irony meter pegged

By Marc J. Randazza

Washington Redskins owner, Dan Snyder, seems to have awfully thin skin for a guy who owns a sports team named after a racial insult.

Snyder filed a frivolous defamation suit (//iapps.courts.state.ny.us/fbem/DocumentDisplayServlet?documentId=tirVQewp3Wt/s2j+6wUb0A==&system=prod) against the *Washington City Paper* ("WCP") based upon an article "The Cranky Redskins Fan's Guide to Dan Snyder." (http://mirror.washingtoncitypaper.com/articles/40063/the-cranky-redskins-fans-guide-to-dan-snyder.html)

Snyder accuses the WCP of spreading "lies, half-truths, innuendo, and anti-Semitic imagery" to defame him, seeking $2 million in damages.  The amount is split between two claims, the first for defamation and the second for false light.  The "anti-semitic imagery" he complains of is a crude addition of horns, a unibrow and Anton LaVey-esque goatee to Snyder's photograph in the WCP, which can be seen here (http://mirror.washingtoncitypaper.com/articles/40063/the-cranky-redskins-fans-guide-to-dan-snyder.html).

No, your irony meter is not broken. It is actually reading 11. A guy who owns the Washington **Redskins** is complaining that someone created an allegedly racist drawing of him. And, anyone who thinks that "Washington Redskins" isn't a bigoted term, I used to think the same thing. In law school, I was in a debate with a guy I'll identify as "Steve B." I was armed with my free-speech bona fides, and ready to pwn Steve in front of the whole class for being overly politically correct. With his opening shot, Steve looked at me and said *"what would you think if they were called the 'Washington Jigaboos?' Because the way black people would feel about that is how Native Americans feel about 'Redskins'.'"*

I immediately conceded. Steve was right. The debate was over.

So, the owner of the Washington ~~Jigaboos~~ Redskins is pissy about someone supposedly using racist imagery.

On behalf of Native Americans, up yours, Dan Snyder (http://indiancountrytodaymedianetwork.com/2011/02/snyder-tackled-for-redskins-hypocrisy/). Up yours with a cactus grown in the driest part of the Navajo reservation.

(https://randazza.files.wordpress.com/2011/02/dan-snyder-as-the-devil.jpg)
Please re-calibrate your irony meters -- Dan Snyder, owner of the Washington *Redskins*; complains that this drawing is racist.

But lets get back to the issue at hand:

Dave McKenna's comprehensive compendium on Snyder's questionable reputation, which gave rise to this lawsuit, is not the first time he offended Snyder's sensibilities.  Snyder paints a paranoid picture of McKenna as a conspirator, evidenced in his November 24, 2010 letter to the WCP (https://iapps.courts.state.ny.us/fbem/DocumentDisplayServlet?documentId=tirVQewp3Ws1eN6FGDX3Pg==&system=prod)— sent less than a week after McKenna's article hit the streets.  Because McKenna mentioned Snyder within the WCP and its blog 15 times in as many months, Snyder believed McKenna was attacking him to please his new bosses at Atalaya Capital, which acquired Creative Loafing and the WCP in August 2009. (source (http://www.tbd.com/blogs/chamberlain/2011/02/dan-snyder-vs-wcp-a-rundown-of-the-lawsuit-and-how-tanya-snyder-s-name-entered-the-fray-8050.html).)

Even so, it appears McKenna gave Snyder a fair shake.  Before McKenna's article was published, Snyder's wife went to the local media to defend her husband.  In an interview, she said her husband was now surrounded by 'better people,' and that he had 'grown and he's evolved.' (source (http://www.tbd.com/blogs/chamberlain/2011/02/dan-snyder-vs-wcp-a-rundown-of-the-lawsuit-and-how-tanya-snyder-s-name-entered-the-fray-8050.html).)  The offending article (http://mirror.washingtoncitypaper.com/articles/40063/the-cranky-redskins-fans-guide-to-dan-snyder.html) even begins with the words "[w]e've been told a New Dan Snyder walks among us"!

Nevertheless, lets not forget that Dan Snyder is a wealthy man. He is a *fabulously wealthy* man. And we all know that the fabulously wealthy often believe that they are above being criticized by the rabble — and when the rabble forgets it, they need only spread their ass cheeks, let a few filthy pieces of silver fall from their milk-fed buttholes, and some swine of a lawyer will be lying underneath, mouth agape, happy to catch what might dribble from the sphincter of privilege — their oath, their ethics, and free speech be damned.

In nicer words, this is a classic SLAPP suit — not filed because it has a chance of success — but filed because the cost of defending it will be punitive enough to remind the little people that people who can afford to use helicopters as personal transportation vehicles do not like to be made fun of or criticized.

The first sign that this is a SLAPP suit? You need go no further than paragraph 1. The complaint states *"Mr. Snyder is a public figure. As such, he accepts the right of the public and the press to criticize him or to express personal dislike, whether or not such expressions are justified by the facts."*

Precisely.

In other words, Mr. Snyder is going to need to leap over the "actual malice" standard laid down in *New York Times v. Sullivan*, 376 U.S. 254 (1964). In that case, the Supreme Court held that the First Amendment required that a public official libel plaintiff must establish, through clear and convincing evidence, that the defendant acted out of "actual malice." That doesn't mean that the writer must have acted out of malicious intent, but rather that the defendant published his words "with knowledge that it was actually false or with reckless disregard of whether it was false or not." Later cases expanded this to encompass defamation suits by public figures, as well as public officials. See, e.g, *Curtis Publishing Company v. Butts*, 388 U.S. 130 (1967); *Gertz v. Robert Welch*, 418 U.S. 323, 351 (1974).

Public figures can, occasionally, prevail under this standard. However, the bar is so high that unless the case is flawless, it is unlikely to go anywhere except down the "expensive to defend" highway. Snyder knows this. His attorneys know this. But Snyder is a wealthy man, and his lawyers don't mind the taste of feces in their mouths, as long as they are licking the foul substance off of Snyder's coins.

Lets take a look at Snyder's claims under New York law. New York is very protective of free speech — especially where the news media is concerned. What constitutes a statement of opinion is broad, and can even embrace language that in other states may be defamation *per se*, such as calling another person "unprofessional." See *Amodei v. New York State Chiropractic Association*, 160 A.D.2d 279, 280 (N.Y. Sup. Ct. App. Div. 2d Dept. 1990), aff'd 571 N.E.2d 79 (N.Y. 1991); *Halegoua v. Doyle*, 171 Misc. 2d 986, 991 (N.Y. Sup. Ct. 1997); *Wait v. Beck's North America, Incorporated*, 241 F. Supp 2d 172, 183 (N.D.N.Y. 2003). ("Statements that someone has acted unprofessionally or unethically generally are constitutionally protected statements of opinion.").

Despite Snyder's melodramatic whining about McKenna's negative opinion of him, even incendiary and inflammatory criticism of a subject is protected rhetorical hyperbole. See *Greenbelt Coop. Pub. Ass'n v. Bresler*, 893 U.S. 6, 14 (1970); *Gross v. N.Y. Times Co.*, 623 N.E.2d 1163, 1167 and 1169 (N.Y. 1993). Even heavily caustic attacks on public figures are afforded the highest level of Constitutional protection. *Hustler Magazine v. Falwell*, 485 U.S. 46, 52 (1988).

The second cause of action is a bit trickier.  While the language reads like a false light claim, there's a wrinkle here: According to the Citizen Media Law Project (http://www.citmedialaw.org/legal-guide/new-york-false-light), New York doesn't recognize the tort of false light. *Costanza v. Seinfeld*, 27 Media L. Rep. 2177 (N.Y. Sup. Ct. 1999), *aff'd*, 719 N.Y.S.2d 29 (N.Y. App. Div. 2001); *Howell v. New York Post Co.*, 21 Media L. Rep. 1273 (N.Y. 1993)  That leaves Snyder with the tort of defamation by implication, which remains a form of defamation and thus subject to the same attacks set forth in the preceding paragraph.

Nonetheless, as the owner of the Redskins, Snyder has access to lawyers and the money to pay for them, and can inflict quite a lot of pain onto the defendants. Furthermore, even if the WCP fends off these claims, Snyder has made it clear that anyone smaller than the WCP had better be worried — criticizing him is not without its significant costs.

Mr. Snyder has more than sufficient means to protect his reputation. We presume that defending such litigation would not be a rational strategy for an investment fund such as yours. Indeed, the cost of litigation would presumably quickly outstrip the asset value of the Washington City Paper." (source (https://iapps.courts.state.ny.us/fbem/DocumentDisplayServlet?documentId=tirVQewp3Ws1eN6FGDX3Pg==&system=prod))

9/3/2020
Case 2:20-mc-00076-MWF-MRW Document 16-1 Filed 09/03/20 Page 36 of 38 Page ID
Case 1:20-cv-02705-ELH Document 61-7 Filed 05/06/21 Page 37 of 39

Snyder appears more butthurt than genuinely wronged. Unfortunately for him, or fortunately for us all, there still is no cause of action in the United States for intentionally butthurting a rich dude. Unfortunately for us all, win or lose, Snyder and his legal team just turned blew a cold wind across the free expression fruited plain.

*J. Malcom DeVoy contributed to this post.* Hat tip to Johnny Utah.

This entry was posted on Sunday, February 6th, 2011 at 12:26 pm and is filed under <u>ass hat</u>, <u>bigots</u>, <u>censorship</u>, <u>copyright</u>, <u>defamation</u>, <u>discrimination</u>, <u>First Amendment</u>, <u>imbeciles</u>, <u>law practice</u>, <u>parody</u>, <u>political correctness</u>, <u>SLAPP</u>, <u>sports</u>. You can follow any responses to this entry through the <u>RSS 2.0</u> feed. Both comments and pings are currently closed.

# 9 Responses to *Dan Snyder is butthurt, SLAPP suit ensues, Irony meter pegged*

### <u>Tweets that mention Dan Snyder is butthurt, SLAPP suit ensues, Irony meter pegged « The Legal Satyricon -- Topsy.com</u> says:
<u>February 6, 2011 at 12:54 pm</u>
[…] This post was mentioned on Twitter by dumbdansnyder, marcorandazza. marcorandazza said: Dan Snyder is butthurt, SLAPP suit ensues, Irony meter pegged <u>http://wp.me/p2RjS-2Wu</u> […]

### Andy G from Fairfax, VA says:
<u>February 6, 2011 at 12:58 pm</u>
I agree with your analysis. I read the complaint, and in my humble opinion, its junk.

As a Jew, I am offended by Snyder's playing the "anti-Semitic" card. Unlike the late Abe Polin, who was very much involved with local Jewish organizations, Snyder has not typically worn his Judaism on his sleeve. A lot of local Jews would consider him a "shondah" (Yiddish for "he makes us look really bad").

I am a business lawyer by profession, not a media expert. So one legal issue that jumped out at me is how in the world is he suing Atalaya? Atalaya Capital is the company that owns the corporation that publishes The City Paper in DC. Normally, people who own stock in a corporation, even a controlling interest, are not liable for claims against the corporation. If somebody who was injured at FedEx field or Six Flags tried to sue Dan Snyder personally, they'd certainly be met with that defense. If you have a problem with Microsoft, see what happens if you try to sue Bill Gates personally. Is a suit against Atalaya simply a means to get this case out of town?

Not being a New York lawyer, I can't say whether the complaint adequately pleads malice under NY rules — in Virginia this suit would go out on demurrer, maybe with leave to replead. Here in Virginia we have a statute, VA Code 8.01-271.1, similar to Federal Rule 11, where a court can award sanctions for a frivolous lawsuit. I would guess that New York has something similar. Where Snyder and his lawyers have been brazen about using the suit as a club against City Paper, I hope that sanctions await!

### McKingford says:
<u>February 6, 2011 at 2:38 pm</u>

9/3/2020　Dan Snyder is butthurt; SLAPP suit ensues; irony meter pegged | Simple Justice

Case 2:20-mc-00076-MWF-MRW　Document 16-1　Filed 09/03/20　Page 37 of 38　Page ID
Case 1:20-cv-02705-ELH　Document 61-7　Filed 05/06/21　Page 38 of 39

Not only is this clearly a SLAPP lawsuit, Snyder essentially admits as much in his demand letter you reference:

"Mr. Snyder has more than sufficient means to pretect his reputation and defend himself and his wife against your paper's concerted attempt at character assassination. We presume that defending such litigation would not be a rational strategy for an investment fund such as yours. *Indeed, the cost of litigation would presumably quickly outstrip the asset value of the Washington City Paper*.

I mean, they aren't even arguing the \*damages\* from the litigation would make retraction wise, they are specifically referencing the \*costs\* of the litigation.

**Susan says:**
February 7, 2011 at 1:56 pm
What happened to bill HR 4364? Did it die? Is someone going to reintroduce it? Please call your congressperson to get this bill passed!!

No SLAPP!!

**vaughnmgreenwalt says:**
February 7, 2011 at 8:34 pm
I would love to disagree with you and tell you you're comparing apples and oranges but this post is way too well-reasoned to try… and I know you too well to think you're concerned with being too politically correct.

**mariocerame says:**
February 8, 2011 at 12:18 pm
There's a paypal legal defense fund for this lawsuit at:

http://www.washingtoncitypaper.com/legaldefense

**Johnny Utah says:**
February 9, 2011 at 3:41 pm
Good post. Violence is the last refuge of the incompetent and all that, but I would like to fight this man, this Daniel Snyder.

**Tim says:**
February 10, 2011 at 12:28 pm
Great follow up today in the Washington City Paper about Snyder's legal team defending a libel suit in 1999. His motion to dismiss was full of gems like "The Constitution provides a sanctuary for truth," and "A reasonable reader could not understand defendant's remarks to accuse plaintiffs of any wrongdoing which would rise to the level of a defamatory harm to reputation." Hypocrite much?

http://www.washingtoncitypaper.com/articles/40399/dan-snyder-free-speech-champion

**Rep. Steve Cohen on SLAPPs « The Legal Satyricon says:**
June 20, 2011 at 10:54 am
[…] Representative Steve Cohen, the Legal Satyricon's favorite Congressman (source), provides an editorial in Roll Call on SLAPP litigation and the Dan Snyder case (prev. blogged on here). […]

9/3/2020       Case 2:20-mc-00076-MWF-MRW   Document 16-1   Filed 09/03/20   Page 38 of 38   Page ID
Case 1:20-cv-02705-ELH   Document 64-7   Filed 05/06/21   Page 39 of 39
#:590

Blog at WordPress.com.