## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

In re Application of Daniel Snyder
for an Order Directing Discovery from
Moag & Co., LLC Pursuant to
28 U.S.C. § 1782

Civil Action No. 1:20-cv-02705-ELH

**REPLY MEMORANDUM IN FURTHER SUPPORT OF PETITIONER'S
APPLICATION FOR SPOLIATION SANCTIONS AGAINST RESPONDENT
<u>MOAG & CO., LLC AND IN OPPOSITION TO RESPONDENT'S CROSS-MOTION</u>**

Petitioner Daniel Snyder ("Mr. Snyder" or "Petitioner") submits this Reply Memorandum of Law in Further Support of his Motion for Spoliation Sanctions against Moag & Co., LLC ("Respondent") (the "Motion") and in Opposition to Respondent's Conditional Cross-Motion for Leave to Take Discovery from Petitioner (the "Cross Motion").

## PRELIMINARY STATEMENT

Respondent's liability for spoliation begins from the inescapable fact that its principal – John Moag – has submitted a sworn declaration to this Court admitting that he "routinely delete[s] all text messages unless needed for business records," and that, after locating additional responsive documents nearly two months after being served with Petitioner's *subpoena duces tecum* (the "Subpoena"), he "photograph[ed] the messages" but did not preserve them.  [Dkt. 31-1 at ¶ 12]. While seeking to downplay these critical facts, Respondent cannot run from what the record unequivocally demonstrates, namely that Respondent intentionally destroyed relevant evidence after being served with the Subpoena on October 19, 2020—which Respondent concedes gave rise to a duty to preserve evidence—and which has deprived Petitioner of the ability to use that evidence in the Indian Action.  Notably, Mr. Moag failed to include a declaration in opposition to this motion explaining what steps he took to preserve messages when he located them.  The implication is clear:  he did nothing other than selectively "photograph" small portions of messages.  This does not comport with the obligations set forth in the Federal Rules of Civil Procedure.

In its opposition (the "Opposition"), Respondent argues without merit that (1) Petitioner failed to identify any evidence that was actually lost, (2) Respondent did not act with a culpable state of mind, and (3) Petitioner waived the relief requested in the Motion.  Respondent also attempts to distract the Court from its misconduct by fashioning a "Conditional Cross-Motion for

Leave to Take Discovery From Petitioner" based on what Respondent claims to be Petitioner's "improper use of the courts to harass Respondent."  Both the Opposition and the Cross-Motion are factually wrong and legally baseless.

*First*, there is no doubt that evidence has been lost due to Respondent's willful misconduct. Respondent's principal, John Moag, submitted a sworn declaration over two months after receiving the Subpoena stating that he continued to "*routinely delete all text messages unless needed for business records*."  Respondent's claims that any deleted text messages were produced as screenshots is both irrelevant and incorrect.  Screenshots contain none of the original text messages' underlying metadata and permit the person taking the screenshot to hand-pick what information to show or when to cut off a conversation.  This is precisely what happened here, as Respondent's production contains incomplete and apparently cherry-picked portions of text message conversations.  Moreover, the paucity of Respondent's production contradicts its prior admissions regarding the extent of its communications concerning Mr. Snyder, and necessarily leads to the conclusion that additional documents were destroyed beyond those produced as incomplete screenshots.  All of this material was properly sought to aid Petitioner's prosecution of his defamation claims in the Indian Action, as this Court has already held when granting Petitioner's motion to compel.  Unfortunately, that holding did not stop Respondent from attempting to relitigate the issue, which the Court should summarily decline to do.

*Second*, Respondent's culpability is clear: its principal admitted to routinely and affirmatively destroying text messages—a practice that continued well after Respondent's receipt of the Subpoena, which Respondent concedes gave rise to a duty to preserve documents.  However, rather than uniformly applying this inherently improper deletion policy, the few text messages that Respondent did produce cast doubt on the supposed "routine" nature of the deletions.  Specifically,

Respondent's production contains multiple text messages dating back to May 2020 – several months before the Subpoena was served.  If Respondent's practice truly were routine and uniformly applied, these messages would have been long since deleted; their existence suggests that the deletions were not routine, but selective and intentional.  Respondent makes no effort to address this.  Instead, Respondent argues that it was not obligated to preserve documents on Mr. Moag's personal devices—a wholly baseless argument considering that Mr. Moag is expressly captured within the scope of the Subpoena.  Further, Respondent's unverified and conclusory claim that "in all likelihood the deletions occurred before October [1]9" is demonstrably false.  Respondent took screenshots of certain text messages on December 13, 2020 – nearly two months after the Subpoena was served on October 19 – but makes no statement about any efforts to preserve those documents.  Indeed, these messages were not available during the subsequent forensic examination and, thus, were deleted well after the Subpoena was served.

*Third*, Petitioner has not waived the relief sought.  To the contrary, Petitioner reserved the right to move for spoliation sanctions by preserving his right to raise objections following a forensic examination of Mr. Moag's devices, and expressly in an agreement with Respondent's counsel.  Indeed, there would be no reason for the forensic examination of Mr. Moag's devices other than to confirm one of two things: that relevant evidence existed but was not produced (which was not the case) or, worse yet, that relevant evidence had been destroyed (which of course was the case).  Thus, this motion is the natural follow-on to the discovery of the destroyed evidence.  Further, in advance of a subsequent interview of Respondent, Petitioner's counsel explicitly reserved Petitioner's right to move for spoliation sanctions.  Respondent's counsel made no objection, as there was none to be made.  Thus, Respondent's waiver argument is a post hoc creation without any factual or legal basis.

3

*Fourth*, Respondent's conditional request for reciprocal discovery is improper and nothing more than a guise to seek harassing discovery that is wholly unrelated to the Indian Action and an attempt to shift blame for Respondent's own egregious misconduct.  Respondent's purported goal of using the requested discovery to support a potential Rule 11 or 26(g) motion against Petitioner is futile, as Petitioner has demonstrated his good faith purpose in bringing this proceeding and seeking the underlying discovery from Respondent.  This Court already has recognized that Petitioner has acted in good faith and with a legitimate purpose by enforcing the Subpoena and rejecting Respondent's baseless objections and attempts to evade its discovery obligations. Regardless, Respondent waived the right to seek any reciprocal discovery – which rarely is granted – and has not stated any valid purpose for seeking the broad ranging, wholly irrelevant and transparently harassing discovery referenced in its Opposition.  Indeed, if Respondent felt these proceedings were being used for an improper purpose, it had ample opportunity to raise that point in the multiple filings it made to the Court since October 2020 when the subpoenas were served on it.  That Respondent failed to do so until its deliberate spoliation was brought to light reveals Respondent's true intentions and confirms that this post hoc request lacks legal and factual merit.

For all of these reasons and those set forth in Petitioner's moving papers, the Motion should be granted in its entirety, and the Cross-Motion should be denied in its entirety.

## <u>ARGUMENT</u>

## I.  RESPONDENT'S INTENTIONAL DESTRUCTION OF RELEVANT EVIDENCE WARRANTS MONETARY SANCTIONS

As set forth in Petitioner's Motion, each element is satisfied to establish sanctionable spoliation:  Respondent had a duty to preserve evidence arising no later than October 19, 2020; Respondent purposefully and "routinely" destroyed evidence after that duty arose; and the evidence that Respondent destroyed was relevant to Petitioner's claims in the Indian Action.

Respondent concedes the first element—that it had an obligation to preserve evidence by no later than October 9, 2020. *See* Opp. at 21. As to the remaining elements, Respondent raises several unfounded arguments in an attempt to avoid sanctions, including that (1) Petitioner failed to identify any lost evidence; (2) Respondent did not destroy evidence with a culpable state of mind; and (3) Petitioner waived the relief requested in the Motion. These arguments all fail, as Respondent ignores the specific examples of destroyed evidence cited in the Motion and contradicts Mr. Moag's own admissions, this Court's findings, and the existing evidentiary record.

### A. Respondent Admittedly Deleted Relevant Evidence

Respondent argues that Petitioner cannot identify any lost evidence because (i) Respondent produced screenshots of the messages Petitioner claims are lost, and (ii) even if those messages are considered "lost," they do not qualify as "evidence" in the Indian Action. These arguments fail on multiple grounds.

### i. The Fact that Respondent Produced Screenshots of Certain Messages Does Not Excuse Its Spoliation

Respondent claims "no harm, no foul" because Respondent produced partial screenshots— or in some instances, heavily cropped photographs of the screen of one of Mr. Moag's devices— of a few of the text messages that were destroyed. *See* Opp. at 19. However, a partial screenshot is not an adequate substitute for the original electronic format, which would have maintained the metadata associated with the message, as well as ***all*** responsive texts in the conversation—not just the ones that Mr. Moag selectively photographed—and thereby preserved an objective record of each text conversation—when it began, how long it lasted, all of the participants, and the full content of the exchange. As it stands, the screenshots Respondent produced merely show the substance of whatever portion of the conversation Respondent saw fit to provide.

For example, one of the screenshots produced by Respondent, bearing bates stamp MOAG000125, purports to show a text conversation between Mr. Moag and Bruce Allen—the former President and General Manager of the Team—from July 17, 2020, the day after the Defamatory Articles were released.  Declaration of Jordan W. Siev, dated May 20, 2021 ("Siev Decl."), Ex. F.  As to the identity of the participants, Petitioner has only Mr. Moag's annotated representations, as the sender's name and phone number were cropped out of the image, along with additional text messages that form part of the conversation (either before or after).  Respondent's decision to produce only a portion of this text message conversation can only be intentional, as the limited texts that were produced directly addressed the Defamatory Articles and Mr. Snyder – the subject of the Indian Action.  Moreover, the screenshot shows that the text conversation continued beyond the messages captured in the screenshot and includes a partially-cropped URL image link of an individual wearing a Team hat – meaning that other responsive communications in this text chain existed but were not produced.  *See id.*

Respondent's practice of cherry-picking which relevant communications to photograph, and the "take our word for it" approach regarding the date and the parties to the communications, is simply not an adequate substitute for a complete production of the text messages with accompanying metadata, and does not excuse the intentional deletion of those original files.[1]  *See E.I. du Pont de Nemours & Co. v. Kolon Indus.,* 803 F. Supp. 2d 469, 475, 508 (E.D. Va. 2011); *see also Edwards v. Junior Am. Found.,* No. 4:19-CV-140, 2021 WL 1600282, at *7 (E.D. Tex.

---

[1] Respondent argues later that "the District Court of Colorado has already concluded in a related § 1782 proceeding" that "producing a screenshot of a text is substantial compliance with the subpoena."  Opp. at 21.  Needless to say, the findings of another District Court relating to a different parties' compliance with a different subpoena have no bearing here, especially considering that Mr. Moag has admitted to "routinely" deleting text messages and has a pattern and practice of withholding relevant and responsive documents and information from Petitioner.  Unlike here, in the McCloughan proceeding—in which no deletion or spoliation was alleged to have occurred—the District of Colorado ordered the respondent's counsel to independently verify if any further responsive documents existed.  Of course, here, that is not possible due to Respondent's irreversible deletion of documents responsive to Petitioner's request.

Apr. 23, 2021).  Indeed, under the basic principles of discovery, it is self-evident that a producing party may not selectively omit portions of a document absent a privilege claim – particularly when those omitted portions are directly responsive to the relevant document request.  *See OcÉ N. Am. v. McS Servs.*, No. WMN-10-0984, 2011 U.S. Dist. LEXIS 170200, at *27 (D. Md. Sept. 9, 2011); *S2 Automation LL v. Micron Tech., Inc.*, No. CIV 11-0884, 2012 U.S. Dist. LEXIS 120097, at *80-81 (D. N.M. Aug. 9, 2012) (a party should "err on the side of producing all messages that are part of a given electronic-mail-transmission chain" as failing to do so may be misleading).

### ii.    The Spoliated Documents Are Relevant to Petitioner's Claims in the Indian Action

Respondent next argues that even if the original text messages are lost, Petitioner has not established that the messages would have supported Petitioner's claims in the Indian Action.  *See* Opp. at 19-20.  Putting aside the illogical nature of Respondent's argument that it should be able to benefit from its own misconduct in withholding and destroying documents to which Petitioner was entitled under the Subpoena, this Court already has entertained and rejected Respondent's attempts to challenge the scope of the discovery sought by Petitioner through the Subpoena in connection with Respondent's opposition to Petitioner's motion to compel and Respondent's failed Rule 72(a) Objections.  In granting Petitioner's motion to compel, Mag. Judge Copperthite held that "after carefully reviewing the pleadings in this case, the information sought regarding the production of phone records, text messages and other communications … especially with respect to the named persons, to be within the scope of discoverable information and within the Order of this Court."   [Dkt. 23 at 2]   Judge Hollander re-affirmed those findings when rejecting Respondent's Rule 72(a) Objections—which made nearly identical arguments.  [Dkt 53].

Remarkably, Respondent ignores this Court's rulings and instead argues that these directly responsive communications are "irrelevant" simply because another District Court—in a different

matter with a different respondent, and arising out of an independent set of facts—opted to narrow the scope of (but of course not quash) a subpoena issued on behalf of Mr. Snyder. *See* Opp., at 20. This is plainly insufficient to resurrect an issue that this Court put to rest months ago.

Moreover, Respondent destroyed evidence intentionally and in bad faith. Aside from Respondent's weak attempts to feign innocence, Respondent does not dispute that, in such circumstances, the Fourth Circuit presumes that the destroyed evidence was relevant. *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995) (rejecting spoliating party's claim that intentionally destroyed evidence was not relevant); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 532 (D. Md. 2010) ("When the party alleging spoliation shows that the other party acted willfully in failing to preserve evidence, the relevance of that evidence is presumed in the Fourth Circuit."). As discussed *infra* Section I.B, Respondent possessed a culpable state of mind when it spoliated evidence; thus, relevancy is presumed.

### iii. Mr. Moag Admitted to Routinely Deleting All Text Messages, Not Just Those Produced as Screenshots

Respondent's Opposition is structured as if the only evidence that was destroyed were the text messages that had previously been produced as screenshots—a proposition that is contradicted by Mr. Moag's own testimony. Mr. Moag has admitted to an ongoing practice of "routinely delet[ing] all text messages unless needed for business records," and also concedes that text messages with Mr. Bobby Potter from July 2020 "are no longer retrievable." Declaration of Jordan W. Siev, dated April 22, 2021 ("Siev 1st Decl.") [Dkt. 59-2], Ex. D at ¶ 12. Based on Respondent's meager production, it is apparent that those deletions must have included responsive messages that were not captured as screenshots and have thus not been produced in any form. Indeed, in his interview with Petitioner's counsel—as referenced by Respondent in its Opposition—Mr. Moag admitted to receiving numerous messages concerning Mr. Snyder from friends, family, and clients.

Siev Decl., ¶¶ 5-6.  However, Respondent's production contained only a handful of text messages concerning Mr. Snyder, and all but one of those conversations was deleted by the time the forensic analysis of Mr. Moag's devices occurred.  *Id*. ¶ 7.  Thus, Respondent's attempt to avoid sanctions by suddenly reversing course and claiming that no other responsive documents existed has no merit.

Yet another indication that Respondent deleted additional text messages beyond those captured as screenshots is that Respondent's production contains only *one* text message conversation, captured in a single screenshot dated July 17, 2020, between Mr. Moag and Mr. Allen.  *See* Siev Decl. Ex. F; *id*. ¶ 4.  Mr. Moag and Mr. engaged in 87 phone calls totaling nearly 21 hours between January 9, 2020 and November 18, 2020.  *Id*. ¶ 4.  In a year dominated by the pandemic, when in-person meetings were scarce, it defies logic and reason that there is only one responsive text message between Mr. Moag and Mr. Allen during this timeframe.  Accordingly, in addition to the messages that Respondent produced as screenshots, it is apparent that additional responsive messages existed but were destroyed by Respondent and therefore not produced.  This is sanctionable spoliation.

Further, to the extent Respondent is arguing that the Motion fails because Petitioner cannot identify the precise nature of the destroyed evidence, this argument is likewise futile.  A party that destroys evidence may not then complain about the other party's inability to articulate the exact nature and relevancy of that evidence.  *See Ericksen v. Kaplan Higher Educ., LLC*, No. CV 14-3106-RDB, 2015 WL 6408180, at *5 (D. Md. Oct. 21, 2015); *Océ N. Am. v. MCS Servs. Inc.,* Civil Action No. WMN–10–0984, 2011 WL 6130542, at *3 (D. Md. Dec. 7, 2011).

In sum, Petitioner has identified scores of relevant evidence that has been lost to Respondent's spoliation, including both the original text messages that Respondent produced as

screenshots as well as additional responsive messages lost to Mr. Moag's routine deletions.

### B.  Respondent Acted Intentionally and in Bad Faith

Respondent's attempt to downplay the malicious intent underlying Mr. Moag's conduct is unavailing.  On December 28, 2020, over two months after Respondent's receipt of the Subpoena, Mr. Moag admitted that he "routinely delete[s] all text messages unless needed for business records."  Siev 1st Decl., Ex. D ¶ 12.  These deletions were done manually and selectively, and not as a result of any automated deletion process.  *Id.*  This, in and of itself, exposes Respondent to spoliation sanctions.

Moreover, as to the responsive communications that Mr. Moag located on his iPad on December 13, 2020, Mr. Moag admits that he did not take even the bare minimum of steps to attempt to preserve those complete text conversations or to prevent their deletion—such as contacting anyone, be it his counsel's IT team, Apple support or his company's IT personnel who had been assisting in locating documents for this proceeding, in order to preserve the messages. More troublingly, the messages he photographed were from months before—e.g., the Bruce Allen text chain is from July 2020—and were not deleted over these many months from his iPad when it "synced with [his] iPhone deletions."  Respondent does not even attempt to explain why these messages suddenly "synced" and disappeared after December 13 when that had not happened in at least the 5 months before that.  Rather, the record establishes that Mr. Moag photographed select portions of messages and deleted the rest intentionally.  The fact that Respondent filed its meritless and futile Rule 72(a) Objections on December 28, 2020 [Dkt. 31]—yet another attempt to avoid its discovery obligations – shortly after Mr. Moag purposefully deleted those documents seemingly confirms that Respondent was fully aware that its conduct was impermissible.

As explained in Petitioner's moving papers, Respondent's claimed "routine" deletions are rebutted by the fact that its production contains text messages dating as far back as May 2020.  *See*

Dkt. 31-1 at 9-10.  Respondent does not claim that these messages were "needed for business records" and makes no effort to explain why these messages were not deleted.  As numerous courts have found, inconsistency within a party's production and apparent deletion practices suggests that the evidence was destroyed purposefully and selectively to deprive the other party of such evidence.  *See Hugler v. Chimes Dist. of Columbia Inc.*, No. CV RDB-15-3315, 2018 WL 11201365, at *3 (D. Md. Feb. 6, 2018); *Victor Stanley, Inc.*, 269 F.R.D. at 531; *see also Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 644 (S.D. Tx. 2010).  That is precisely the case here:  if Mr. Moag's deletions were innocent and "routine," these messages would have been deleted sometime in the five months before Respondent was served with the Subpoena.  The fact that they were not suggests intentional and selective deletions, which amounts to bad faith.

While Respondent ignores the inconsistencies apparent in its explanation for the deletions, Respondent still argues that it did not destroy any evidence with a "culpable state of mind" because (i) the evidence at issue existed on Mr. Moag's personal devices, not on Moag & Co.'s servers or computers, and (ii) if any evidence was destroyed, it was destroyed before Respondent was served with the Subpoena.  Both of these arguments fail.

    **i.   Respondent Was Obligated to Preserve Evidence on Mr. Moag's Personal Devices and Waived Any Objection**

Respondent's claim that it had no preservation obligations as to documents stored on Mr. Moag's personal devices is meritless.  First, this claim is completely undercut by the Subpoena itself, which defines "Respondent," "Moag," and "You," to mean not only Moag & Co., but "all of its officers, directors, representatives, and employees … and any and all persons or entities acting or purporting to act for or on its behalf and under its control."  Siev. 1st Decl. Ex. A, at 4. As principal of Moag & Co., Mr. Moag fits squarely within this definition.

Furthermore, as established through the phone records produced by Respondent—after many rounds of motion practice—Mr. Moag's iPhone was billed to Moag & Co.'s address, and Mr. Moag used that device for both work and personal purposes.  Siev Decl., ¶ 8.  Mr. Moag further confirmed that the relevant text messages were sent and/or received primarily on his iPhone.  *See* Opp. at 13.  Accordingly, Respondent cannot plausibly argue that the devices on which the relevant text messages were stored were outside the scope of Respondent's control.

Moreover, Respondent waived any objection based upon the distinction between Moag & Co. and Mr. Moag by producing documents from his "personal" devices, and providing them for forensic imaging, without objection.  *See Ferguson v. Prince George's Cty., Maryland*, No. CV TDC-14-3613, 2016 WL 6892722, at *1 (D. Md. Nov. 22, 2016).  Respondent may not now belatedly raise the objection as a means of excusing its spoliation.

### ii.     Respondent Destroyed Evidence After Being Served with the Subpoena

Although Mr. Moag admitted to routinely deleting his text messages, Respondent's opposition states that "Mr. Moag does not recall when he deleted any particular text, but in all likelihood the deletions occurred before October [1]9."  Opp. at 21.  Tellingly, Mr. Moag does not submit any sworn statement to support this claim.  Regardless, this unverified and conclusory statement is easily refuted by Mr. Moag's own admissions in his previously submitted Declaration, in which he admits to at the very least allowing, and more likely causing, responsive documents to be deleted nearly two months after being served with the Subpoena.

There is no indication that Mr. Moag's "routine" practice of deleting text messages ceased after Respondent's receipt of the Subpoena.  To the contrary, the forensic examination, not to mention Mr. Moag's own admissions, show that this was not the case and that relevant evidence was deleted after Respondent's duty to preserve arose on October 19, 2020.

**C.  Petitioner Explicitly Reserved the Right to Move for Spoliation Sanctions**

Finally, Respondent claims that Petitioner somehow waived the relief requested in the Motion, citing to language in the parties' agreement for the forensic imaging that "document discovery in the Snyder 1782 action is concluded, and Moag & Co. has no further obligation to produce materials.  Motion for show cause order and other relief will be withdrawn by Petitioner and dismissed with prejudice."  Opp. at 22.  However, Respondent overlooks the language in that provision that expressly contemplates that Petitioner may raise objections following receipt of the forensic imaging productions.  *Id.*  That is precisely what Petitioner did, first by raising objections with Respondent's counsel as to the incomplete nature of its production, followed by extensive meet and confer email and phone communications regarding Respondent's failure to make a full and complete production and apparent deletion of documents.  After those meet and confer discussions did not result in a resolution, Petitioner brought the instant motion, which is of course based on Petitioner's objection to Respondent's inability to comply with the subpoena based on its spoliation of evidence.  Indeed, one of the primary purposes of engaging an independent vendor to conduct a forensic examination of Mr. Moag's devices was to confirm the extent of spoliation and whether any options were available to Petitioner to retrieve those documents.  Respondent's interpretation of the language in the party's agreement is thus illogical.

Furthermore, as Respondent also cites and annexes to its Opposition, counsel for the parties agreed that, as a condition to Mr. Moag's interview concerning his document retention policies proceeding, Petitioner expressly reserved the right to "move for sanctions in connection with potential spoliation issues."  [Dkt. 61-3 at p. 3].  Respondent's counsel raised no objection to this condition – which was expressed in emails between counsel a month after the forensic examination agreement cited by Respondent for the alleged "waiver" argument—and proceeded with the

interview.  *Id*. at pp. 1-3.  Thus, any waiver that may exist is solely as to Respondent's ability to object to Petitioner's motion.

In sum, Respondent has admitted in sworn statements to intentionally destroying relevant evidence and selectively producing, in incomplete form, only a fraction of the responsive materials sought through the Subpoena.  The remainder of those responsive documents are irretrievably lost due to Respondent's intentional conduct, and Petitioner's ability to prosecute his defamation claims in the Indian Action has been prejudiced as a result.  This is textbook sanctionable spoliation, and the Motion should be granted.  *See Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs.*, 872 F.2d 88, 94 (4th Cir. 1989) (sanctions granted where "[i]t has been the defendants' practice from the very beginning to ignore outright the court's orders or to submit chaotically and defectively to them").

## II.  RESPONDENT'S IMPROPER REQUEST FOR "RECIPROCAL" DISCOVERY UNRELATED TO THE INDIAN ACTION SHOULD BE REJECTED

In the face of indisputable spoliation, Respondent asks this Court for leave to serve so-called reciprocal discovery "*only if* the Court is contemplating granting [Petitioner's] Motion for Sanctions for Spoliation."  *See* Opp. at 23-26.  Respondent purports to seek a broad array of documents from Petitioner in order to conduct a fishing expedition to support its unequivocally false theory that Petitioner commenced this proceeding in bad faith and has improperly used this Section 1782 proceeding supposedly to generate negative publicity about Respondent.  Petitioner unequivocally denies any allegation of wrongdoing in connection with this, or any other, Section 1782 proceeding.  In reality, this threat is merely the latest in the long string of abusive and harassing behavior **by Respondent**, who has repeatedly used proceedings in this Court as a vehicle

for introducing wholly irrelevant, highly inflammatory and entirely defamatory claims about Petitioner, even despite some of these statements having been made by Mr. Moag under oath.[2]

Respondent's Cross-Motion is without factual or legal merit.  Respondent has waived any right to seek reciprocal discovery in this proceeding and otherwise makes no attempt whatsoever to meet the well-established criteria under Section 1782.  Accordingly, this Court should deny Respondent's attempt to shoehorn wide-ranging, harassing and baseless discovery against Petitioner, a party to the Indian Action, under the guise of "reciprocal discovery."

### A. Respondent's Last Minute Request for Reciprocal Discovery Is Improper and Untimely

"Congress purposefully engineered section 1782 as 'a one-way street.  It grants wide assistance to others, but demands nothing in return.'"  *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1097 (2d Cir. 1995).  Respondent's claim that reciprocity is appropriate to "rebut" and "fight back" against allegations of negative publicity arising out these proceedings is without basis.

Although a district court may, in its discretion, "condition relief upon that person's reciprocal exchange of information," such reciprocal exchanges are exceptions to the rule.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 262 (2004); *see also Euromepa S.A*, 51 F.3d at 1102.  Furthermore, reciprocal discovery arrangements in Section 1782 proceedings are intended to be set at the outset of the proceedings, prior to granting the petitioner's initial application – not at the eleventh hour, after months of discovery has taken place and all that remains is for Mr. Moag to be deposed.  *See In re Furstenberg Fin. SAS*, No. 16-CV-60266, 2018 WL 735670, at *8 (S.D. Fla. Jan. 10, 2018).

---

[2] Respondent's prior threats and improper conduct, which are consistent with his attitude toward his document preservation obligations, are summarized in part in Petitioner's motion to strike and for sanctions. Dkt. 35-1.  Additionally, Mr. Moag's December 28, 2020 declaration [Dkt. 31-1] – in which he admits to the destruction of relevant evidence as discussed above – is replete with false and misleading statements about Mr. Snyder, as well as Mr. Moag's supposed lack of contact with the press.

As this Court has ruled previously, Respondent failed to raise any objections, move to quash or move for a protective order after being served with the subject subpoena [Dkt. 12-2; 31] and, therefore, has waived the right to seek such relief.  Instead, Respondent has repeatedly obstructed Petitioner's requests for discovery, and now, eight months after this Court granted Petitioner's underlying Application, Respondent for the first time asks this court to permit reciprocal discovery as a means to "reward" its continued bad-faith behavior.  Respondent cites no valid authority for compelling a Section 1782 petitioner to provide reciprocity when a respondent has repeatedly failed to comply with its own obligations.  The clear absence of any legal basis for Respondent's cross-motion warrants denial.

### B. Respondent's Purported Use for the Requested Reciprocal Discovery Is Invalid

Even if Respondent had timely brought a request for reciprocal discovery, Respondent's purported goal of using the requested discovery to support a potential Rule 11 or 26(g) motion against Petitioner is futile.  This Court already has evaluated and rejected Respondent's challenges to the scope and propriety of Petitioner's discovery requests [Dkt. 23, 53], and Respondent is not entitled to a third bite at the apple through the guise of a meritless Rule 11 or 26(g) sanctions application.  Respondent has manufactured a false narrative to shift the blame for his own bad-faith and obstructive conduct in this proceeding by alleging, in wholly conclusory and speculative fashion, that Petitioner has pursued this action for an improper purpose to harass Respondent. These allegations are false, and the Court should reject these unsupported accusations.

In order to determine "improper purpose," the court must assess the conduct of a party "under an objective standard of reasonableness rather than assessing subjective intent."  *In re Kunstler*, 914 F.2d 505, 518 (4th Cir. 1990).  "[I]t is not enough that the injured party subjectively believes that a lawsuit was brought to harass, or to focus negative publicity on the injured party;

instead, such improper purposes must be derived from the motive of the signer in pursuing the suit." *Id*. at 519.  Thus, "a court must ignore evidence of the injured party's subjective beliefs and look for more objective evidence of the signer's purpose."  *Id.*; *see also Crystal VL Rivers v. United States*, No. 6:18-CV-00061, 2020 WL 4572698, at *4 (W.D. Va. Aug. 7, 2020) (movant's own subjective beliefs are insufficient to establish improper purpose).

Contrary to Respondent's claim that Petitioner commenced this proceeding "to generate favorable publicity (or to engender negative publicity for [Petitioner's] perceived enemies) rather than to vindicate rights" (Opp. at 24) – which Petitioner unequivocally denies – Petitioner has been transparent about the purpose of his request for discovery from Respondent since the outset of this proceeding: to determine what Respondent knew about the genesis, development and publication of the Defamatory Articles, how Respondent learned that information, when Respondent became privy to it, and who was responsible for sharing that information with it.  Despite Respondent's constant roadblocks and efforts to obstruct Petitioner's ability to answer these questions (including Respondent's spoliation which is the subject of Petitioner's instant motion), the discovery Petitioner obtained has ***confirmed*** that Mr. Moag communicated with numerous people about the Defamatory Articles and other negative publicity concerning Petitioner upon release or sometimes beforehand.  *See* Siev 1st Decl., Ex. E; Siev Decl., Ex. F.  Had Respondent not destroyed further responsive documents, Petitioner could have gained further clarity into the timing and origins of Respondent's advance knowledge that was confirmed by third parties.

Regardless, even from the limited documents that Petitioner has obtained, as Respondent acknowledges, Petitioner has in fact used documents obtained herein in furtherance of the Indian Action (Opp. at 25) ("Petitioner filed . . . papers in his India litigation based on documents he

received in discovery from Moag & Co.")[3]—thus fulfilling the exact purpose of Section 1782 proceedings seeking discovery in aid of a foreign litigation.[4]

Thus, far from having "bad faith" intentions in bringing his application for discovery, Petitioner has confirmed the validity of his suspicions concerning Respondent, and properly used the Section 1782 discovery process in order to support his defamation claims in the foreign jurisdiction. That is the express purpose of Section 1782.

### C. Respondent's Request for Reciprocal Discovery Does Not Meet the Requirements Under Section 1782

Finally, even if Respondent's cross-motion were not fatally defective as described above, Respondent fails to meet the requirements 28 U.S.C. § 1782, under which this proceeding was brought. As the Court is aware, 28 U.S.C. § 1782 authorizes district courts to order discovery if the following requirements are met: "(1) the person from whom discovery is sought resides or is found in the [District of Maryland]; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the application is made by a foreign or international tribunal or 'any interested person.'" *DiGiulian v. Johns Hopkins Health Sys. Corp.*, No. 8:19-CV-02213-PX, 2019 WL 5064672, at *1 (D. Md. Oct. 9, 2019). Once the statutory requirements of 28 U.S.C. § 1782 are

---

[3] For the avoidance of doubt, Petitioner's filing in the Indian Action that made reference to discovery obtained from Respondent was not "highly misleading," as Respondent claims, nor has Respondent even attempted to explain that theory in a declaration or otherwise. Opp. at 25.

[4] Petitioner's ongoing efforts to obtain targeted discovery relevant to the Indian Action and his ultimate use of those documents in aid of that action distinguish the present situation from Respondent's cited cases. For example, unlike here, the court in *In re Kunstler*, 914 F.2d 505 (4th Cir. 1990), found that the plaintiff's decision to voluntarily discontinue proceedings shortly after filing a complaint and publicizing its commencement – and before any significant discovery had taken place – suggested that the plaintiff did not have a good faith intention of pursing the relief requested therein. *Id.*, 914 F.2d at 519. Mr. Snyder's steadfast efforts to obtain the requested discovery in this proceeding notwithstanding Respondent's refusal to comply – and his subsequent use of that discovery in the Indian Action – renders the facts in *In re Kunstler* diametrically opposed. There is also nothing in *In re Kunstler* that supports Respondent's requested far-reaching discovery demands.

met, the district court then must evaluate the following discretionary factors: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the foreign proceeding, and the receptivity of the foreign court to federal-court assistance; (3) whether the application conceals an attempt to circumvent foreign proof-gathering restrictions of a foreign country; and (4) whether the application is unduly intrusive or burdensome. *See Intel*, 542 U.S. at 264-65; *DiGiulian*, 2019 WL 5064672, at *1.

Respondent fails the threshold criteria as it (i) admits that the requested discovery is not "for use" in the Indian Action; (ii) is not a party to the Indian Action; and (iii) seeks oppressive, harassing and vexatious discovery that is not proportional or relevant to the claims in the Indian Action. *First*, the requested discovery plainly is not "for use" in the Indian Action. Respondent bases its requests for information on unfounded and baseless allegations "that Petitioner is purposely and improperly sending his filings to favored reporters for the purpose of generating publicity." Opp. at 25. Indeed, Respondent seeks information that is far afield from Petitioner's requests and wholly irrelevant to claims asserted in the Indian Action. Specifically, Respondent requests documents and deposition testimony relating to the publication of information about the Section 1782 proceedings, "plans to rebut, minimize or divert attention from actual or anticipated stories in the media that accuse [Petitioner] or WFT of sexual misconduct or acquiescing in sexual misconduct," and "[a]ll filings" by Petitioner in the Indian Action which refer to any information obtained by Petitioner in any Section 1782 proceeding. Opp. at 26. It is simply inconceivable how Respondent would "use" this broad-ranging and irrelevant reciprocal discovery even if the Court granted the request. "[A] request for discovery under § 1782 that is plainly irrelevant to the foreign proceeding . . . must be denied." *In re Schlich*, 893 F.3d 40, 52 (1st Cir. 2018).

*Second*, Respondent is a non-party to the Indian Action, and thus, has no ability to request

discovery or introduce evidence in that proceeding.  Respondent does not have any existing role in the Indian Action and has failed to demonstrate that it has a right to submit evidence to the foreign tribunal in question.  Significantly, Respondent admits that it "is not a party in India and does not consent to jurisdiction there," Opp. at 24, fn. 2, and therefore, reciprocal discovery would not bring any parity to the Indian Action.  *See Deposit Ins. Agency v. Leontiev*, 2018 U.S. Dist. LEXIS 122705, at *34 (S.D.N.Y. July 23, 2018).  Accordingly, Respondent is not an interested party in the context of the Indian Action and its request for reciprocal discovery is unwarranted.

*Third*, Respondent's "reciprocal" discovery requests are facially harassing, oppressive and overly burdensome.  Indeed, the discovery on which Respondent would have this Court condition its order sweeps far more broadly than the discovery Petitioner properly sought herein.  Respondent's motive for seeking reciprocal discovery is clear: to embark on a disingenuous fishing expedition in a blatant effort to continue to generate negative publicity and paint Petitioner in a negative light outside the bounds of this proceeding.  Significantly, Respondent's request for reciprocal discovery is *conditioned* on this Court's granting of Petitioner's Application for Spoliation, and is a thinly veiled attempt to bully Petitioner into withdrawing his meritorious Application.  Petitioner therefore tacitly admits that the discovery it seeks has no relevance to the Indian Action and is merely a ruse to improperly use these Section 1782 proceedings as vehicle to continue its baseless and harassing attacks on Petitioner.  Respondent stretches the word "reciprocal" beyond its breaking point.  Accordingly, the Court should deny Respondent's requested relief.

## CONCLUSION

Accordingly, Petitioner requests the Court to grant his Motion for Sanctions against Respondent for its intentional spoliation of evidence and deny Respondent's Cross-Motion for Leave to Take Discovery From Petitioner.

Dated:  May 20, 2021                                  Respectfully Submitted,

                                                      REED SMITH LLP


                                                      By: /s/ Andrew C. Bernasconi
                                                          Andrew C. Bernasconi (MD Bar No. 15780)
                                                          1301 K Street NW
                                                          Suite 1000, East Tower
                                                          Washington, DC 20005
                                                          Tel: (202) 414-9200
                                                          abernasconi@reedsmith.com

                                                      *Attorneys for Petitioner Daniel Snyder*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 20th day of May 2021, a copy of the foregoing was electronically filed with the Court and served upon all counsel of record.

<u>/s/Andrew C. Bernasconi</u>
Andrew C. Bernasconi